Thomas E. Perez
Assistant Attorney General
Steven H. Rosenbaum (NY Bar #1901958)
Jonathan M. Smith (DC Bar #396578)
R. Tamar Hagler (CA Bar #189441)
Christy E. Lopez (DC Bar #473612)
Eric W. Treene (NY Bar #2568343)
Lori K. Wagner (VA Bar #39446)
Sean R. Keveney (TX Bar #24033862)
Jessica C. Crockett (NY Bar #4694972)
Anika Gzifa (DC Bar #495394)
Matthew J. Donnelly (Ill Bar #6281308)
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Northwestern Building, 7th Floor
Washington, D.C.  20530
Facsimile: (202) 514-1116
E-mail: lori.wagner@usdoj.gov
Phone: (202) 305-3107

Attorneys for Plaintiff United States of America

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | ) |
| Plaintiff, | ) ) ) |
| | ) Civil No. |
| v. | ) ) |
| Town of Colorado City, Arizona; | ) **COMPLAINT** |
| City of Hildale, Utah; Twin City Power; | ) |
| and Twin City Water Authority, Inc., | ) |
| | ) |
| Defendants. | ) ) |

## INTRODUCTION

1. This action is brought to enforce the Fair Housing Act, Title VIII of the Civil Rights

Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C.

§§ 3601 *et seq*; Title III of the Civil Rights Act of 1964, 42 U.S.C. § 2000b; and

pursuant to 42 U.S.C. § 14141.

2. The Town of Colorado City, Arizona ("Colorado City"), and the City of Hildale, Utah ("Hildale") (collectively, "Cities"), and two utility agencies under the Cities' control (collectively, "Defendants") have engaged in and continue to engage in a pattern or practice of conduct that deprives persons of rights, privileges, or immunities secured or protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution and the laws of the United States.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3614.  Venue is proper under 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred in the District of Arizona.

## NATURE OF ACTION

4. Defendants have engaged in a pattern or practice of illegal discrimination against individuals who are not members of the Fundamentalist Church of Jesus Christ of Latter-day Saints ("FLDS").  The Cities' public officials, the Colorado City/Hildale Marshal's Office ("the Marshal's Office"),[1] and utility entities have acted in concert with FLDS leadership to deny non-FLDS[2] individuals housing, police protection, and access to public space and services.  Furthermore, the Defendants have denied non-

---

[1] The Marshal's Office is a subdivision of the municipal governments of both Defendant Colorado City and Defendant Hildale.

[2] Throughout this Complaint, the term "non-FLDS" includes:  1. individuals who were never members of the FLDS; 2. individuals who were members of the FLDS but left the Church; and 3. individuals who were told that they "lost priesthood," were told to "repent from a distance," or were otherwise excommunicated by Warren Jeffs and/or his followers.

2

FLDS members access to housing in the Cities, and they have coerced, intimidated, threatened, and interfered with the housing rights of non-FLDS members. The Marshal's Office has inappropriately used its state-granted law enforcement authority to enforce the edicts of the FLDS, to the detriment of non-FLDS members. In addition, the Cities' officials have misdirected and misused public resources in the service of the FLDS.

5. For at least 20 years, the Cities have operated as an arm of the FLDS, in violation of the Establishment Clause of the First Amendment of the United States Constitution. The Cities' governments, including the Marshal's Office, have been deployed to carry out the will and dictates of FLDS leaders, particularly Warren Jeffs[3] and the officials to whom he delegates authority. For decades, officials of the Cities have, by operating at the direction and for the benefit of the FLDS, abdicated their official duties to protect the rights of all citizens equally and to administer governmental functions consistently with the Establishment Clause of the United States Constitution.

## DEFENDANTS

6. Defendant Colorado City is a local unit of government organized under the laws of the State of Arizona.

7. Defendant Hildale is a local unit of government organized under the laws of the State of Utah.

---

[3] On August 4, 2011, Jeffs was convicted of two counts of child sexual assault against a twelve year-old girl and a fifteen year-old girl in San Angelo, Texas. He is now serving a life plus twenty-year prison sentence. Jeffs remains the head of the FLDS while in prison.

3

8. Defendant Twin City Water Authority, Inc. ("TCWA") is a non-profit corporation organized under the laws of the State of Utah. It is responsible for the provision of water services in Colorado City and Hildale. It operates under the actual or apparent authority of Defendant Colorado City and Defendant Hildale.

9. Defendant Twin City Power is or was an intergovernmental entity of Defendant Colorado City and Defendant Hildale. At all times relevant to this action until July 2009, it was responsible for the provision of electric power in Colorado City and Hildale. It operated under the actual or apparent authority of Defendant Colorado City and Defendant Hildale.

## FACTUAL BACKGROUND

10. The adjoining communities of Colorado City and Hildale are populated primarily by members of the FLDS who are followers of the self-proclaimed prophet Warren Jeffs. Non-FLDS residents also live in the Cities, but they are a distinct minority.

11. Members of the FLDS traditionally contribute a significant portion of their money, property, and time to a trust called the United Effort Plan Trust ("UEP Trust" or "Trust"). The UEP Trust is a registered charitable trust in the State of Utah. Until 2005, the Trust was controlled by the FLDS Church.

12. Much of the land, and many of the improvements thereto, in Colorado City and Hildale, including most of the Cities' residences, belong to the UEP Trust. Residents who live in Trust-owned homes typically have signed occupancy agreements with the Trust.

13. In 2005, a Utah court determined that the UEP Trustees had violated their legal duties in administering the Trust, including duties relating to former members of the FLDS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Church who are beneficiaries of the Trust.  The court appointed Bruce Wisan, who is not affiliated with the FLDS Church, as Special Fiduciary of the UEP Trust ("Special Fiduciary") to administer the Trust's assets and operations.

14. In 2006, the court reformed the UEP Trust.  Bruce Wisan continues to serve as the court-appointed Special Fiduciary.  The stated purpose of the Trust is "providing for the just wants and needs of the beneficiaries which purpose is beneficial to the community."

## **ALLEGATIONS**

15. Defendants have allowed the FLDS Church or its agents to direct or unlawfully influence their actions regarding policing services, housing, and access to public facilities, in violation of the First, Fourth and Fourteenth Amendments, the Fair Housing Act, and Title III of the Civil Rights Act of 1964.

### *Unconstitutional Policing*

16. The Marshal's Office has failed to provide policing services to non-FLDS individuals on the basis of religion.  The Marshal's Office fails to protect non-FLDS individuals from victimization by FLDS members, fails to investigate crimes against non-FLDS individuals and their property, and refuses to arrest FLDS individuals who have committed crimes against non-FLDS individuals.  These crimes and actions include destroying crops on a non-FLDS-operated farm, vandalizing property in the control of the UEP Trust, returning at least one underage bride to a home from which she had fled, and trespassing on property occupied by non-FLDS individuals.

17. The Marshal's Office selectively enforces laws and regulations against non-FLDS individuals on the basis of religion.  Instances of selective enforcement include

5

arresting non-FLDS individuals for trespass but not arresting similarly situated FLDS individuals, and citing non-FLDS individuals for traffic violations but not citing FLDS individuals for similar infractions.

18. Non-FLDS individuals experience the hardship and mental and physical stress resulting from the knowledge that the Marshal's Office will not come to their aid in time of need. For example, in January 2012, a woman who was, in effect, excommunicated by the FLDS, fled her home in the Cities with her six young daughters after learning that FLDS leaders demanded that she sever all contact with five of her six children. This woman believed, based on its policies and previous actions, that the Marshal's Office would not come to her assistance to protect her parental rights if she complained about the FLDS edict separating mothers from their children. She decided, as many other non-FLDS members have done, to flee with her children under cover of darkness to safety outside of the Cities. The failure and refusal of the Marshal's Office to protect all citizens without regard to religion has given rise to an "underground railroad," composed of non-FLDS members who provide safe havens and a means of egress for individuals abandoned by law enforcement.

19. The Marshal's Office effectively serves as the enforcement arm of the FLDS Church. Since at least 1990, the Marshal's Office has assisted the FLDS Church in its surveillance and investigation of non-FLDS members because of religion. This activity includes providing training and resources to FLDS members to aid their surveillance of non-FLDS members. The Marshal's Office provides law-enforcement information, including but not limited to, information about emergency calls to the Marshal's Office for assistance, directly to FLDS security personnel. In addition, the

Cities obtain information from FLDS Church security-service members about vehicles traveling in the Cities, run license-plate checks to determine whether such vehicles are owned and/or operated by non-FLDS members in the Cities, and convey the results of the license-plate checks to the FLDS Church.

20. The Marshal's Office has conducted traffic stops on multiple occasions in response to FLDS church members' requests that they find out the identity of the occupants of a vehicle.

21. The Marshal's Office deploys its resources to enforce FLDS religious edicts.  Such conduct includes dispatching Marshal's Deputies in official vehicles to confront persons about their alleged disobedience to FLDS rules and instructing such persons to report to FLDS leadership.

22. In one instance, in 2000, Jeffs issued an order for a then-FLDS member to return an underage bride, who had fled her new husband's home, to FLDS leaders.  Unaware that the then-FLDS member had already complied, three Marshal's Deputies confronted him demanding that he return her to FLDS leaders.  The Deputies drove official Marshal's Office vehicles when they aggressively confronted the then-FLDS member.  One of the Marshal's Deputies involved in this incident remains employed by the Marshal's Office, and another was the Marshal who resigned in or around April 2012.

23. In 2001, Jeffs issued an edict that all domestic dogs would be banned from the Cities.  Less than one month later, in compliance with Jeffs's edict, Marshal's Deputies went to each household in the Cities and asked residents to turn over any dogs that they had in the home to the Officers.  The Marshal's Deputies then shot and killed the dogs in a

slaughter pit a short distance from the Cities.  Two of the Marshal's Deputies involved in this incident remain employed by the Marshal's Office.

24. The Marshal's Office fails to cooperate with other law enforcement offices in investigating crimes against non-FLDS individuals or crimes committed by FLDS individuals.  Since 2003, Arizona has decertified six officers employed by the Marshal's Office, and a seventh officer resigned after having been decertified by Utah officials.  Three were decertified for failure to comply with state law-enforcement efforts, including refusing to testify at a grand jury proceeding.

25. In October 2005, Fred J. Barlow, during the time he served as Marshal, wrote a letter to then-fugitive Jeffs, stating in relevant part,

> I rejoice in the peace that comes over me when I follow the
> directives that you have sent to me through [FLDS member] Uncle
> William [Jessop]. I have felt a unity between the peace officers.
> They have all stated to me their desire to follow the directives that
> are placed before us. . . . I want to fill the position that you would
> have me fill and do the job the way that you would like it done. . . .
> We will continue with that directive unless you would like us to do
> something different.

Three out of the current six Marshal's Deputies were either employed by the Marshal's Office or finishing the required police training for the Marshal's Office at the time Marshal Barlow wrote this letter to Jeffs.

26. Marshal Barlow was later decertified as a peace officer by the Arizona Peace Officers Standards and Training Board ("AZPOST") for failing to comply with an Arizona

Attorney General investigation. On August 7, 2007, an administrative law judge, in reviewing AZPOST's decertification decision, determined that Barlow "displayed bias in favor of Warren Jeffs and the FLDS, in derogation of his oath to neutrally enforce the law."

27. On at least one occasion, in July 2011, the then-Marshal and Marshal's Deputies participated in the building of fences on UEP Trust property that the FLDS had illegally occupied without permission of the UEP Trust.

28. Since the UEP trust was reformed in 2006, the Marshal's Office has consistently disregarded the validity of Trust-signed occupancy agreements and of legal rulings that guarantee the rights of non-FLDS Trust beneficiaries. For example, in December 2011, Marshal's Deputies refused to enforce the occupancy agreement held by a non-FLDS individual for a property known as the Holm School Building, located at 1055 Carling Street, Hildale, Utah. Several FLDS members entered the building and locked out the rightful non-FLDS occupants of the building. The FLDS members occupying the building refused to allow the rightful non-FLDS occupants to retain possession of the Holm School Building. Those non-FLDS individuals contacted county law enforcement to remove the FLDS trespassers on or about December 20, 2011. At the request of County officials, Marshal's Deputies also arrived at the Holm School later that day. The Marshal's Deputies refused to remove the FLDS trespassers, and the County Sheriff's Deputies were forced to ensure the removal of the trespassers in light of the Marshal's Officers' failure to take any affirmative steps. One of the Marshal's Deputies not only refused to assist the Sheriff's deputies, but left the scene. On another occasion, in August 2008, then-Marshal Jonathan Roundy, responded to a property

9

dispute between an FLDS member and a non-FLDS individual.  The Special Fiduciary and his agent informed Marshal Roundy that the non-FLDS member had permission, and therefore a right, to occupy the property.  Nonetheless, Marshal Roundy sided with the FLDS member based on religious affiliation.  In announcing his decision, Marshal Roundy stated, "[the FLDS member] says this is his property, and we are going to honor him because he is a member of the Church, and he has asked [the non-FLDS] to leave, and that is where I am going to stand as Chief of the Police."

29. Additionally, on February 8, 2012, the Marshal's Office responded to a report that FLDS members were building an illegal fence that encroached onto property validly occupied by a non-FLDS individual.  A representative of the Special Fiduciary informed a Marshal's Officer that the fence was being built without permission and should be stopped immediately.  The Marshal's Officer failed to act to stop the FLDS members from putting up the fence.

30. The Marshal's Office uses its authority to aid the FLDS Church by facilitating the unlawful evictions of non-FLDS residents and refusing to permit non-FLDS individuals to move into properties for which they have occupancy agreements.

31. The Marshal's Office arrests non-FLDS individuals without probable cause on the basis of religion.  Specific incidents include arresting non-FLDS individuals for trespass on properties that they had the right to enter, arresting non-FLDS individuals without probable cause for theft of services, and holding an adult non-FLDS woman in jail overnight without probable cause on the alleged ground of being a minor in possession of alcohol.

32. The Marshal's Office has seized the property of non-FLDS individuals without due process of law. For example, in April or May 2010, the Marshal's Office departed from its normal procedures in handling a stud horse who escaped from its non-FLDS owner. The Marshal's Office caused the horse to be euthanized without contacting the owner. Members of the Marshal's Office knew or should have known the stud horse, which had distinct markings, and they knew or should have known the identity of the horse's owner. This action was taken on the basis of the owner's religious affiliation.

33. The actions and omissions of the Marshal's Office constitute an impermissible delegation of decision-making and authority to the FLDS, an entanglement of religious and civil functions, a fusion of government power and religious authority, and have the purpose and effect of the Cities impermissibly advancing religion. Because of these actions and omissions, there is no effective means of guaranteeing that the Cities' governmental power is neutrally employed.

34. The states of Utah and Arizona have taken steps to address the unlawful policing practices in the Towns, including in early 2012, when the state legislatures of Arizona and Utah each introduced bills that would have had the effect of disbanding the Marshal's Office. Both bills failed to pass.

35. The actions and omissions of the Marshal's Office constitute a pattern or practice of discriminatory policing against non-FLDS individuals on the basis of religion, an impermissible preference for the FLDS church in the implementation of its law-enforcement responsibilities, and treatment of those who are not members of the FLDS as outside of the full and equal status as citizens.

*Housing Discrimination*

36. Defendants Colorado City, Hildale, TCWA, and Twin City Power have treated non-FLDS individuals differently than FLDS residents because of religion by making housing unavailable to non-FLDS residents.  In addition to the conduct described above, which resulted in violations of federally protected housing rights of non-FLDS, Defendants have, since approximately 2008, denied or unreasonably delayed water and electric service to non-FLDS individuals, refused to issue them building permits, and otherwise prevented non-FLDS individuals and the Trust from constructing new housing or occupying existing housing, all on the ground of religion.

37. When non-FLDS residents have requested water service at new properties, TCWA has denied their requests.  The Cities and TCWA claim that they cannot provide water service to new properties because of a water shortage, while at the same time FLDS residents have received such services.  In fact, there is no water shortage in the Cities that would justify these denials.

38. The Cities and TCWA have refused to permit non-FLDS individuals or the Trust to build new housing or improve existing housing on Trust-owned land.  In some circumstances, the Cities and TCWA cite a water shortage as the reason for their refusals.  In other circumstances, they claim that the Trust or non-FLDS individuals have no right to occupy or control the land.

39. During the same period in which Defendants Colorado City, Hildale, and TCWA denied non-FLDS residents water service, they have provided water service to new properties occupied or managed by FLDS residents.  In some instances they have

1

2

installed such connections at night; at other times they have installed the connections in

putative exchange for water rights of far lesser value.

3

40. The Cities have refused requests from the Trust to subdivide Trust property into

4

5

smaller lots.  The Cities' refusal to permit subdivision has prevented the Trust from

6

transferring the deeds of those smaller lots to non-FLDS Trust beneficiaries.

7

41. Prior to July 2009, Defendants Colorado City, Hildale, and Twin City Power delayed

8

providing electric connections to non-FLDS individuals or refused to provide such

9

10

connections at all.  During the same period, they provided electric connections to

11

similarly situated FLDS individuals and entities.  Since July 2009, the Cities have

12

delayed providing necessary information regarding non-FLDS-occupied properties to

13

Garkane Energy, the Cities' current electricity provider, resulting in a delay before

14

non-FLDS residents and entities receive electricity at their properties.

15

16

*Denial of Access to Public Facilities*

17

42. Beginning in approximately 2008, the Cities have denied non-FLDS individuals equal

18

utilization of public facilities on the basis of religion.

19

20

43. Cottonwood Park ("the Park") and Cottonwood Zoo ("the Zoo") are owned, operated,

21

or managed by or on behalf of the Cities.

22

44. The United States has received signed written complaints of discrimination against

23

non-FLDS individuals at the Zoo and the Park by the Cities.

24

25

45. On or about May 18, 2010, a group of non-FLDS children attempted to play at the

26

Park.  A Marshal's Deputy told the children that they could not play at the Park and

27

threatened them with arrest if they continued to play.

28

13

46. In addition, beginning in approximately 2008, members of the Marshal's Office and other officials of the Cities have told other non-FLDS individuals that they may not play at the Park.

47. The Marshal's Office allows FLDS individuals to play at the Park.

48. Beginning in approximately 2008, members of the Marshal's Office have harassed non-FLDS individuals who were lawfully on the Zoo premises.

49. Beginning in approximately 2008, the Marshal's Office withdrew police protection from the Zoo when its occupancy agreement was taken over by a non-FLDS individual.  When non-FLDS individuals presented the Marshal's Office with evidence that FLDS individuals had been vandalizing the Zoo, the Marshal's Office refused to act on those allegations.

50. The Assistant Attorney General for the Civil Rights Division of the United States Department of Justice, on delegation from the Attorney General, has certified that all requirements specified in 42 U.S.C. § 2000b have been met.  The Certificate of the Assistant Attorney General is appended to this Complaint and is incorporated herein.

### FIRST CAUSE OF ACTION

51. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

52. The First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides, in pertinent part, that:  "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ."

53. The Fourth Amendment to the United States Constitution provides:

14

The right of the people to be secure in their persons, houses, papers,

and effects, against unreasonable searches and seizures, shall not be

violated, and no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the

place to be searched, and the persons or things to be seized.

54. Section I of the Fourteenth Amendment to the United States Constitution provides:

All persons born or naturalized in the United States, and subject to

the jurisdiction thereof, are citizens of the United States and of the

State wherein they reside.  No state shall make or enforce any law

which shall abridge the privileges or immunities of citizens of the

United States; nor shall any State deprive any person of life, liberty,

or property, without due process of law; nor deny to any person

within its jurisdiction the equal protection of the laws.

55. By the actions set forth above, Defendants Colorado City and Hildale have engaged in

and continue to engage in a pattern or practice of conduct that deprives persons of

rights, privileges, or immunities secured or protected by the First, Fourth, and

Fourteenth Amendments to the United States Constitution and the laws of the United

States.  These actions constitute violations of 42 U.S.C. § 14141.

56. Persons who are subject to Defendants' conduct are suffering, and will continue to

suffer irreparable harm in the absence of relief.

## SECOND CAUSE OF ACTION

57. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the

paragraphs above.

15

58. By the actions set forth above, Defendants have:

    a.  Refused to negotiate for the sale of housing, denied housing, or otherwise made housing unavailable because of religion, in violation of 42 U.S.C. § 3604(a);

    b.  Discriminated in the terms, conditions, or privileges of rental of a dwelling because of religion, in violation of the Fair Housing Act, 42 U.S.C. § 3604(b); and

    c.  Coerced, intimidated, threatened, or interfered with a person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, a right granted or protected by the Fair Housing Act, in violation of the Fair Housing Act, 42 U.S.C. § 3617.

59. Defendants' actions described above constitute:

    a.  A pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619; or

    b.  A denial to a group of persons rights granted by the Fair Housing Act, which raises an issue of general public importance, in violation of the Fair Housing Act, 42 U.S.C. § 3614(a).

60. There are persons who have been injured by Defendants' discriminatory actions and practices who are aggrieved persons as defined in 42 U.S.C. § 3602(i).  These persons have suffered damages as a result of Defendants' discriminatory actions and practices described above.

61. Defendants' conduct described above was intentional, willful, and taken in disregard for the rights guaranteed under the Fair Housing Act.

16

## THIRD CAUSE OF ACTION

62. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

63. By the actions set forth above, Defendants Colorado City and Hildale have deprived individuals of, or threatened individuals with the loss of, the right to the equal protection of the laws on account of religion by denial of equal utilization of a public facility which is owned, operated, or managed by or on behalf of Defendants Colorado City and Hildale, in violation of 42 U.S.C. § 2000b.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court:

    a. Enter a judgment declaring that the Defendants' conduct, as alleged herein, violates the Fair Housing Act, Title III of the Civil Rights Act of 1964, the First, Fourth, and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 14141;

    b. Enter an order enjoining the Defendants from:

        i. Refusing to negotiate for the sale of housing, denying housing, or otherwise making housing unavailable because of religion, in violation of 42 U.S.C. § 3604(a);

        ii. Discriminating in the terms, conditions, or privileges of rental of a dwelling because of religion, in violation of 42 U.S.C. § 3604(b); and

        iii. Coercing, intimidating, threatening, or interfering with a person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person

17

in the exercise or enjoyment of, a right granted or protected by Section

804 of the Fair Housing Act, in violation of 42 U.S.C. § 3617;

c.  Enter an order enjoining Defendants Colorado City and Hildale, including but

not limited to their law enforcement officers, from violating the rights of

individuals on the ground of religion in violation of the First, Fourth, and

Fourteenth Amendments to the United States Constitution and the laws of the

United States, and 42 U.S.C. § 14141;

d.  Enter an order enjoining Defendants Colorado City and Hildale from depriving

individuals of or threatening individuals with the loss of the right to the equal

protection of the laws on account of religion by denial of equal utilization of a

public facility which is owned, operated, or managed by or on behalf of

Defendants Colorado City and Hildale, in violation of 42 U.S.C. § 2000b;

e.  Enter an order enjoining Defendants from failing or refusing to take such

affirmative steps as may be necessary to prevent the recurrence of any

discriminatory or otherwise unlawful conduct in the future and to eliminate, to

the extent practicable, the effects of Defendants' discriminatory or otherwise

unlawful conduct;

f.  Award compensatory and punitive damages, pursuant to 42 U.S.C.

§ 3614(d)(1)(B) to all persons harmed by the Defendants' discriminatory

practices;

g.  Assess a civil penalty against each defendant in an amount authorized by

18

42 U.S.C. § 3614(d)(1)(C), to vindicate the public interest; and

h.  Order any such additional relief as the interests of justice may require.

Dated:  June 21, 2012

ERIC HOLDER
Attorney General

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief, Housing and Civil
Enforcement Section
Civil Rights Division

JONATHAN M. SMITH
Chief, Special Litigation Section
Civil Rights Division

R. TAMAR HAGLER
Deputy Chief
ERIC W. TREENE
Special Counsel
LORI K. WAGNER
SEAN R. KEVENEY
JESSICA C. CROCKETT
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530
Phone: (202) 305-3107;
Facsimile: (202) 514-1116
E-mail: lori.wagner@usdoj.gov

CHRISTY E. LOPEZ
Deputy Chief
ANIKA GZIFA
MATTHEW J. DONNELLY
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Patrick Henry Building, 5th Floor
Washington, D.C. 20530
Phone: (202) 305-3216
Facsimile: (202) 514-0212
E-mail: anika.gzifa@usdoj.gov

19