WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

UNITED STATES OF AMERICA,                )
                                          )
                          Plaintiff,      )
                                          )
            vs.                           )
                                          )
TOWN OF COLORADO CITY, ARIZONA;           )
CITY OF HILDALE, UTAH; TWIN CITY          )
POWER; and TWIN CITY WATER                )
AUTHORITY, INC.,                          )
                                          )        No. 3:12-cv-8123-HRH
                          Defendants.     )        (Prescott Division)
_____   )

O R D E R

Motion for Sanctions for Spoliation of Evidence

        Plaintiff moves for sanctions against the Town of Colorado City for spoliation of

evidence.[1]   This motion is opposed.[2]   Oral argument was requested but is not deemed

necessary.

_____

        [1]Docket No. 353.

        [2]Docket No. 361.

Background

On June 21, 2012, plaintiff, the United States of America, commenced this action against defendants The Town of Colorado City, Arizona; City of Hildale, Utah; Twin City Power; and Twin City Water Authority, Inc.  Plaintiff alleges that "[d]efendants have engaged in a pattern or practice of illegal discrimination against individuals who are not members of the Fundamentalist Church of Jesus Christ of Latter-day Saints ("FLDS")."[3] Plaintiff alleges that defendants "have acted in concert with FLDS leadership to deny non-FLDS individuals housing, police protection, and access to public space and services."[4] Plaintiff further alleges that the municipalities' joint police department, the Colorado City Marshal's Office (CCMO), "has inappropriately used its state-granted enforcement authority to enforce the edicts of the FLDS, to the detriment of non-FLDS members."[5]

Plaintiff contends that during the course of discovery in this case it has learned of three categories of evidence that have been destroyed or altered. First, plaintiff contends that Colorado City has admitted that it deleted the recordings of two dispatch calls from February 21, 2013.  On that evening, CCMO officers responded to an alleged break-in at Eco Alliance, a local business, and an alleged home invasion at 340 East Johnson Avenue in Colorado City.

---

[3]Complaint at 2, ¶ 4, Docket No. 1.

[4]Id. (footnote omitted).

[5]Id. at 3, ¶ 4.

Two of the persons involved in these incidents were Sam Steed and Willie Jessop, both of whom, according to plaintiff, are non-FLDS members.  Allegedly, Steed and Jessop took items from Eco Alliance's safe and were attempting to retrieve items from a safe in the residence at 340 East Johnson Avenue where Steed's sister lived.  At some point in the evening, officers from Mohave County were also called to the scene at East Johnson Avenue. Plaintiff contends that the events of February 21, 2013 indicate that the CCMO was operating to protect the interests of the FLDS church.  In its First Request for Production, which was served on Colorado City in April 2013, plaintiff requested that Colorado City produce "[a]ll police reports, citations, incident reports, dispatch records (including computer-aided dispatch calls), records of calls and conversations, field contact reports/cards, and any related audio or video recordings between January 1, 2010, and the present."[6]  In addition, on October 30, 2013, plaintiff's counsel wrote to Colorado City's counsel to "confirm that your litigation holds are preserving all 911 calls, dispatch calls, and the like.... I'm envisioning that we may do a RFP for some of these soon, including some days in February 2013."[7]  Colorado City's counsel responded that "Colorado City is preserving these items."[8]  A CCMO "call log

---

[6]Request for Production No. 32, Exhibit 1 at 11-12, United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 353.

[7]Email from Matt Donnelly to Jeff Matura and Blake Hamilton, Exhibit 10, United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 353.

[8]Email from Jeff Matura to Matt Donnelly, Exhibit 10, United States' Motion for
(continued...)

report" for the night in question shows that five calls were received in connection with the events at Eco Alliance and 340 East Johnson Avenue, two calls to dispatch and three 911 calls.[9]  Colorado City has produced recordings of the 911 calls but has not produced recordings of the two dispatch calls.  After receiving the 911 calls but not the dispatch calls, plaintiff served Colorado City with an interrogatory which asked Colorado City to

> [e]xplain in detail all the reasons why Colorado City has not produced to the United States copies of recordings of all calls made to and from dispatch between the hours of 3:00 a.m. and 7:00 a.m. on February 21, 2013, including (1) a call made to dispatch at approximately 3:14 a.m. by Morley Barlow, and (2) a call from dispatch to Josephine Steed at approximately 4:05 a.m.[10]

Colorado City responded that "[t]he system automatically recorded over these calls after 24 hours."[11]

The second category of evidence that is the subject of the instant motion is police reports.  Plaintiff contends that it has learned that Colorado City has altered police reports prior to producing these reports to plaintiff.  This contention is based on the April 2014

---

[8](...continued)
Sanctions for Spoliation of Evidence, Docket No. 353.

[9]Exhibit 9, United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 353.

[10]Interrogatory No. 23, Exhibit 2 at 3, United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 353.

[11]Id. at 4.

deposition testimony of Helaman Barlow, the chief of CCMO.  Helaman Barlow was asked

if "David Darger [the city manager] or anybody else in city government altered any ... police

reports, after the United States made a discovery request in this case?"[12]  Helaman Barlow

responded "yes" and stated that he did not know how many reports had been "altered."[13]

He then explained that by "altered" he meant

> there were times where there was an incomplete report or a
> report with the wrong call for service on it.  Like for ... instance,
> it was called a "burglary," when it ... was an alarm that went off.
> And those reports — then both myself and David Darger
> reviewed, and I ... or Dave would take them back to the officer
> and say, "Hey, we need to give this to the Department of Justice,
> I want you to either finish it or correct it."[[14]]

Helaman Barlow was also asked if "David Darger, at any point while you were working on

producing police reports to the Department of Justice, suggest[ed] having a report altered

because the report would make the marshal's office look bad?"[15]  Helaman Barlow answered

that "I think both Dave and I would ... agree on some of the reports that just didn't ... match

the ... call type and that we felt like, 'Well, that makes us look bad.'"[16]  Helaman Barlow also

---

[12]Deposition of Helaman Barlow at 119, lns. 7-10, Exhibit 8, United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 353.

[13]Id. at lns. 11-15.

[14]Id. at 119, ln. 21 - 120, ln. 6.

[15]Id. at 120, lns. 18-22.

[16]Id. at 120, ln. 24 - 121, ln. 3.

testified that there were reports where he asked the officer to go back and put in a narrative.[17]

Helaman Barlow further testified that some of the reports that he and David Darger gave

back to officers to "alter" had already been finalized.[18]  At his April 2014 deposition,

Helaman Barlow also produced his police report for a December 18, 2013 incident and a copy

of the report with changes made by David Darger.[19]

The third category of evidence is minutes from CCMO officer meetings.  Plaintiff

contends that Colorado City has failed to produce minutes from certain CCMO officer

meetings.  Colorado City has produced notes of officer meetings for December 23, 2005 to

September 22, 2007; September 15, 2008 to December 29, 2008; January 6, 2009 to December

18, 2009; January 4, 2010 to December 27, 2010; and January 3, 2013 to March 25, 2013.  But,

Colorado City has not produced any officer meeting notes for the time period of June 17,

2006 to September 4, 2006;  September 23, 2007 to September 14, 2008; and November 1, 2011

to February 26, 2012.[20]  Colorado City has advised plaintiff that "there were no meetings

---

[17]Id. at 121, lns. 20-23.

[18]Id. at 120, lns. 7-13.

[19]Exhibits 1-2, Reply in Support of United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 370.

[20]Plaintiff seems unconcerned that Colorado City has not produced officer meeting notes for the first ten months of 2011 and the last ten months of 2012.

during the timeframes that there are no minutes" and that "actual minutes themselves are only saved for two years."[21]

Finally, plaintiff contends that it is possible that Colorado City destroyed some evidence on April 22, 2014. Plaintiff completed its second deposition of Helaman Barlow on that day, during which Barlow made numerous complaints about David Darger. On the afternoon of April 22, 2014, Willie Jessop avers that he "saw a small group of what appeared to be teen-aged boys taking white bankers boxes from the door of the Colorado City dispatch center and load[ing] them in [a] white SUV. The boys appeared to be working under the direction of town manager David Darger."[22] Plaintiff states that it is concerned that evidence may have been being removed or destroyed, given the timing of the event and David Darger's involvement.

Plaintiff now moves for sanctions as a remedy for Colorado City's spoliation of evidence.

## Discussion

"'The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences.'" Surowiec v.

---

[21]Email from Jeffrey Matura to Sean Keveney, Exhibit 17 at 1, United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 353.

[22]Declaration of Willie R. Jessop at 1, ¶ 5, Exhibit 23, United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 353.

<u>Capital Title Agency, Inc.</u>, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (quoting <u>Thompson v.</u>

<u>U.S. Dep't of Housing & Urban Dev.</u>, 219 F.R.D. 93, 100 (D. Md. 2003)).  "Spoliation is the

destruction or material alteration of evidence, or the failure to otherwise preserve evidence,

for another's use in litigation."  <u>Id.</u>

Colorado City disputes that any police reports were "altered."  First of all, Colorado

City suggests that Helaman Barlow, on whose testimony plaintiff is relying, has no

credibility.  Colorado City points out that Helaman Barlow has admitted that he lied in his

first deposition in this case, that he lied to Utah POST during an investigation, and that he

lied on the stand in another federal case.[23]  Thus, Colorado City contends that there is no

reason to believe that Helaman Barlow is now telling the truth.  But, even if he is, Colorado

City argues that his testimony does not establish that police reports were "altered."  Rather,

Colorado City contends that Helaman Barlow testified that his and David Darger's intent

was to make sure accurate and complete reports were produced and thus they requested that

officers complete and/or "correct" their reports.  As for the report by Helaman Barlow that

David Darger edited, Helaman Barlow testified that David Darger never told him "directly"

to change the report, but rather Darger "red lined it and said ... he would like me to do it."[24]

---

[23]Helaman Barlow Deposition at 178, ln. 17- 180, ln. 9, Exhibit 7, Colorado City's Response to the United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 361.

[24]<u>Id.</u> at 211, lns. 18-22.

Helaman Barlow also testified that David Darger wanted to make sure the report was factually accurate based on a video of the incident in question.[25]  Colorado City contends that courts have declined to find spoliation where records were supplemented, but not destroyed, and the alterations were not significant.  See, e.g., In re Tenet Healthcare Corp. Securities Litig., Case No. CV 02-8462-RSWL (RZx), 2007 WL 5673884, at *3 (C.D. Cal. 2007) ("KPMG's conduct of supplementing its workpapers did not amount to spoliation because there was no destruction of documents, and there is no showing that the additions to the workpapers were sufficiently significant alterations").  Colorado City insists that Helaman Barlow's testimony shows that any alterations were not significant but rather were merely to make the reports more accurate and complete.

The two copies of Helaman Barlow's police report, which were produced at his April 2014 deposition, are evidence that material alterations were made to police reports.  The changes David Darger made to Helaman Barlow's report were significant and thus it is reasonable to assume that the "alterations" made to other police reports were likewise material.  This is not a situation in which documents were "supplemented" after they had been originally produced.  Rather, the police reports were altered prior to being produced.  Plaintiff has presented sufficient evidence that police reports were altered after plaintiff had requested them and prior to them being produced.

---

[25]Id. at 214, lns. 2-23.

Colorado City also argues that it has not destroyed any officer meeting notes.  It contends that it has searched its records for officer meeting notes and produced all it can find.  Colorado City contends that the only evidence the United States has to suggest that minutes were destroyed is Helaman Barlow's deposition testimony that there were officer meetings every month, but Colorado City again suggests that Barlow's credibility is questionable.

If Helaman Barlow did in fact testify that there were officer meetings every month and if his testimony can be believed, then it is reasonable to infer that Colorado City has destroyed some officer meeting minutes.  In particular, it seems implausible that there were no officer meetings from November 2011 through February 2012, given that plaintiff gave Colorado City notice of this lawsuit on November 22, 2011.

Colorado City also contends that no evidence was being destroyed on April 22, 2014.  To support this contention, Colorado City offers the affidavit of Lyman Barlow, who avers that he is a "CPR/First Aid Instructor for the Colorado City Fire Department" and that on April 22, 2014, he was conducting a CPR/First Aid class in Colorado City's council meeting room.[26]  Lyman Barlow further avers that after the training was complete,

> three people helped me remove several boxes of CPR/First Aid training materials and supplies from the meeting room.  The boxes were transported in a GMC Yukon back to Fire Station #3.

---

[26]Declaration of Lyman Barlow at ¶ 3, Exhibit 8, Colorado City's Response to the United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 361.

>The boxes contained CPR and First Aid training materials belonging to the Colorado City Fire Department, and were not the property of the Town of Colorado City.[27]

Lyman Barlow further avers that "David Darger was not involved in any part of the training class. He also was not involved at all in moving or placing the boxes of training material into the vehicle."[28]  Lyman Barlow's declaration is sufficient to establish that no evidence connected to this case was being destroyed on April 22, 2014.

However, Colorado City had admitted that the two dispatch calls were not preserved. The evidence also suggests that some police reports were materially altered prior to being produced.  And, the possibility may exist that Colorado City destroyed some officer meeting minutes after it had notice of this lawsuit.  Thus, the court must consider whether plaintiff is entitled to sanctions for any of this conduct.

>"A party seeking sanctions for spoliation of evidence must prove the following elements: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence [.]"

Surowiec, 790 F. Supp. 2d at 1005 (quoting Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 509 (D. Md. 2009)).

---

[27]Id. at ¶ 4.

[28]Id. at ¶ 5.

Duty to preserve

Colorado City had a duty to preserve evidence relevant to this case since November 22, 2011, the date on which plaintiff notified Colorado City that it intended to file this lawsuit.[29] See Krause v. Nevada Mut. Ins. Co., Case No. 2:12–cv–00342–JCM–CWH, 2014 WL 496936, at *7 (D. Nev. Feb. 6, 2014) ("the duty to preserve begins when a party reasonably should have known that the evidence is relevant to anticipated litigation").  Colorado City should have known that the February 21, 2013 dispatch calls were relevant.   In the November 22, 2011 notice letter, plaintiff alleged that the CCMO "has engaged in and continues to engage in a pattern or practice of conduct against non-FLDS members...."[30] This was sufficient to put Colorado City on notice that events involving interaction between CCMO officers and non-FLDS members were relevant.  But even if plaintiff's November 22, 2011 letter did not put Colorado City on notice, plaintiff's response to a motion to dismiss,[31] which was filed prior to February 21, 2013, should have.  In that response, plaintiff alleged that the CCMO " (3) serves as the enforcement arm of the Church; (4) enforces FLDS edicts; (5) fails to cooperate with law enforcement efforts by other offices investigating crimes by

---

[29]See Letter from Thomas E. Perez, Assistant Attorney General, Civil Rights Division, to Mayor George M. Barlow, Town of Colorado City at 2, Exhibit 24, United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 353.

[30]Id.

[31]Docket No. 27.

FLDS members; (6) arrests non-FLDS individuals without probable cause; [and] (7) deprives individuals of property without due process[.]"[32]  These allegations were sufficient to put Colorado City on notice that the events that occurred on February 21, 2013 would be relevant to this case, if for no other reason than that Mohave County officers were involved in the incident at East Johnson Avenue and there was an attempt to arrest a non-FLDS member. Plaintiff had no duty to amend its complaint to bring the February 21, 2013 incident within the scope of its "pattern and practice" allegations and it did not have to make any specific request for production before Colorado City's duty to preserve this evidence was triggered. A duty to preserve evidence arises not out of the receipt of a discovery request but arises once a party "should reasonably know that evidence may be relevant to anticipated litigation." Surowiec, 790 F. Supp. 2d at 1005 (citation omitted).

Colorado City also had a duty to preserve officer meeting notes after it received plaintiff's notice letter.  Thus, it had a duty to preserve any notes from November 22, 2011 to February 26, 2012, if notes for that time period ever existed, but it did not have a duty to preserve the 2006 notes.

Culpable state of mind

Plaintiff argues that Colorado City has destroyed or altered evidence with a culpable state of mind.  As evidence of intent, plaintiff first points to Helaman Barlow's testimony that

---

[32]Id. at 2.

-13-

some of the alterations of the police reports were done because the reports made Colorado City look bad.  Plaintiff also points out that Colorado City acknowledged that it had a duty to preserve the dispatch calls and claimed that it was preserving them, but then later informed plaintiff that the calls had been deleted.  Plaintiff also contends that the circumstances surrounding the missing officer meeting notes are sufficient for the court to infer culpable intent.  Plaintiff contends that the timing of the gaps in minutes is notable because the first gap was in and around the time Warren Jeffs was arrested and the third gap was right after plaintiff gave notice of the instant lawsuit.  Moreover, plaintiff contends that Helaman Barlow has testified that there was never a time when more than a month went by without an officer meeting.[33]

Most of the foregoing evidence is not sufficient to establish that Colorado City acted with a culpable state of mind.  Helaman Barlow's comment about the police reports looking bad  was based on them not being complete, not that they contained information that was adverse to Colorado City.  The missing 2006 notes are not evidence of a culpable state of mind, even though it seems odd that Colorado City produced some notes for 2006, but not all of the 2006 notes.  But, Colorado City contends that it found some of the officer meeting notes by searching officers' emails so it is possible that an officer had a set of notes attached to an email, even though those notes had officially been purged.  But, the fact that there are

---

[33]Plaintiff cited to Helaman Barlow's April 2014 deposition but the pages to which it cited are not attached as an exhibit to the instant motion.

no officer meeting notes from November 1, 2011 to February 26, 2012, which is in and around the time plaintiff gave notice of this lawsuit, may create an inference of a culpable state of mind, if Helaman Barlow did in fact testify that officer meetings were held every month.  In addition, the fact that the recordings of the two dispatch calls were recorded over may create an inference that Colorado City acted with a culpable state of mind.

Plaintiff also argues that Colorado City's refusal to issue a written litigation hold is evidence of a culpable state of mind.  See Surowiec, 790 F. Supp. 2d at 1007 (quoting Pension Committee of Univ. of Montreal Pension Plan v. Banc of America Sec., 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010)) ("'At least one court has concluded that, once the duty to preserve is triggered, the failure to issue a written litigation hold constitutes gross negligence per se and prejudice may be presumed 'because that failure is likely to result in the destruction of relevant information.'").  In its November 22, 2011 notice letter, plaintiff advised Colorado City that it had an obligation to preserve any and all documents relating to plaintiff's allegations of religious discrimination between January 1985 and the present.[34]  Plaintiff stated that "written confirmation of your agreement to maintain intact all such records is a precondition to any pre-suit negotiations."[35]  Plaintiff provided a proposed certification

---

[34]Notice Letter at 2, Exhibit 24, United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 353.

[35]Id.

"reflecting that agreement...."[36]  On December 16, 2011, defense counsel advised plaintiff's

counsel that they had "discussed with our clients the necessity of preserving all documents

and electronic data" but that "we are not willing to sign your proposed certification."[37]  On

December 21, 2011, defense counsel advised that their clients could not provide plaintiff with

written assurances about their obligation to preserve documents "unless their respective

governing bodies approve such action."[38]  Plaintiff also emphasizes that Helaman Barlow

testified at his first deposition that prior to the lawsuit actually being filed, he was not told

that he had a duty to preserve CCMO records,[39] which plaintiff suggests creates an inference

that Colorado City had taken no steps to preserve evidence once it was aware of this lawsuit.

Colorado City's failure to sign plaintiff's incredibly broad certification is not evidence

of a culpable state of mind, particularly given the evidence that suggests that Colorado City

imposed its own internal litigation hold.  Vance Barlow, the town clerk of Colorado City,

was asked "[s]ince the United States sent its notice letter of this case to Colorado City, have

---

[36]Id. at 3.

[37]Letter from R. Blake Hamilton, Stirba & Assocs., to Lori K. Wagner, U.S. Dept. of Justice, at 1, Exhibit 25, United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 353.

[38]Letter from defense counsel to Sean R. Keveney, Trial Attorney, U.S. Dept. of Justice at 1, Exhibit 26, United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 353.

[39]Helaman Barlow Deposition at 155, ln. 19 - 157, ln. 7, Exhibit 27, United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 353.

you directed the IT department to take steps to preserve e-mails?"[40]   Vance Barlow

responded that he directed them to do "[t]he same as the records, nothing gets destroyed or

retentioned out, et cetera, without personal clearance from me, and I won't do it without a

thorough review from the Town Manager and legal council."[41]   In addition, David Darger,

the town manager, testified that "if there's any records that fall within the ... purview of the

litigation, then they wouldn't have been [purged].  If there's something that's totally

unrelated, then it could have been."[42]  David Darger also testified that he discussed with the

town clerk and the marshal the need to preserve documents.[43]

In sum, plaintiff has offered some slight evidence that Colorado City acted with a

culpable state of mind.  But, most of the evidence that plaintiff has cited to does not support

a conclusion that Colorado City intentionally destroyed evidence.

Relevance of evidence

Plaintiff has the burden "'to establish a reasonable possibility, based on concrete

evidence rather than a fertile imagination, that access to the lost material would have

---

[40]Vance Barlow Deposition at 127, lns. 15-17, Exhibit 2, Colorado City's Response to the United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 361.

[41]Id. at lns. 20-23.

[42]Deposition of David Darger at 130, lns. 15-19, Exhibit 3, Colorado City's Response to the United States' Motion for Sanctions for Spoliation of Evidence, Docket No. 361.

[43]Id. at 131, lns. 8-14.

produced evidence favorable to [its] cause.'" Sampson v. City of Cambridge, Md., 251 F.R.D. 172, 180 (D. Md. 2008) (quoting Gates Rubber Co. v. Bando Chem. Indus., Ltd., 167 F.R.D. 90 (D. Colo. 1996)).  Although much of the instant motion seems to be based on plaintiff's suspicions rather than concrete evidence, the evidence in question probably has some relevance to this case.

Sanctions requested

"Because spoliation is considered an abuse of the judicial process, courts may impose sanctions as part of their inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Surowiec, 790 F. Supp. 2d at 1008 (internal citations omitted).  "'Sanctions that a federal court may impose for spoliation include assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment.'" Id. (quoting Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 533 (D. Md. 2010)). "While the court has discretion to impose spoliation sanctions, it must determine which sanction best (1) deters parties from future spoliation, (2) places the risk of an erroneous judgment on the spoliating party, and (3) restores the innocent party to their rightful litigation position." Id. (internal citations omitted).  "Ultimately, the choice of appropriate spoliation sanctions must be determined on a case-by-case basis, and should be commensurate to the spoliating party's motive or degree of fault in destroying the evidence."

Apple Inc. v. Samsung Electronics Co., 888 F. Supp. 2d 976, 992-93 (N.D. Cal. 2012).  To

justify an adverse jury instruction, the spoliating party's degree of fault and the resulting

prejudice to the other party must be significant.  Id. at 993.

Plaintiff requests that the following sanctions be imposed.  First, plaintiff requests that

Colorado City be ordered "to provide an accounting for all documents or items removed

from Colorado City government property, including the Colorado City town hall, CCMO

offices, or the dispatch center on April 22, 2014[.]"[44]  Second, plaintiff requests that Colorado

City be ordered to identify all police reports that were altered and to explain how they were

altered.  Third, plaintiff requests that Colorado City be ordered to issue a written, litigation-

hold memorandum to all its agents and employees.  And finally, plaintiff requests that the

following instruction be given at trial:

> The Defendant, Colorado City, has intentionally altered or
> destroyed relevant evidence in this case, including (1) phone
> calls to dispatch; (2) notes of officer meetings; and (3) CCMO
> police reports.   There is, therefore, evidence that was not
> available to be presented to you during this trial.  You should
> infer that such evidence would have been unfavorable to
> Colorado City.[[45]]

Colorado City has already complied with plaintiff's first request for sanctions by

providing an explanation for the boxes that were being removed on April 22, 2014.  It being

---

[44]United States' Motion for Sanctions for the Spoliation of Evidence at 17, Docket No.
353.

[45]Id.

clear that some police reports have been "altered", plaintiff is entitled to its second request, which is a list of all police reports that have been altered and how they have been altered, or copies of the unaltered reports.  As for plaintiff's third request, there is no point at this late stage in making Colorado City issue a written litigation hold.  Finally, plaintiff is not entitled to an adverse jury instruction because any prejudice that plaintiff will suffer from not having the two dispatch calls is minimal as is any prejudice from the lack of officer meeting notes from November 1, 2011 to February 26, 2012, given that plaintiff has made no showing that there were in fact officer meetings during that time for which minutes or notes would have been prepared.

## Conclusion

Plaintiff's motion for sanctions for spoliation of evidence[46] is granted as to plaintiffs' first request, with which Colorado City has already complied, and as to plaintiffs' second request but is denied as to plaintiff's third and fourth requests.  Colorado City shall provide plaintiff with the list of altered police reports and how they were altered, or copies of the unaltered reports, on or before August 18, 2014.

DATED at Anchorage, Alaska, this 28th day of July, 2014.

/s/ H. Russel Holland
United States District Judge

---

[46]Docket No. 353.

-20-