Steven H. Rosenbaum (NY Bar #1901958)
Jonathan M. Smith (DC Bar #396578)
R. Tamar Hagler (CA Bar #189441)
Christy E. Lopez (DC Bar #473612)
Eric W. Treene (NY Bar #2568343)
Sean R. Keveney (TX Bar #24033862)
Jessica C. Crockett (NY Bar #4694972)
Matthew J. Donnelly (IL Bar #6281308)
Attorneys
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Phone: (202) 305-4838
Facsimile: (202) 514-1116
E-mail: sean.keveney@usdoj.gov

Attorneys for the United States

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA**

United States,

Plaintiff;

v.

Town of Colorado City, Arizona, *et al.*,

Defendants.

No. 3:12cv8123-HRH

**UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON COLLATERAL ESTOPPEL**

The United States moves for partial summary judgment, based on the doctrine of collateral estoppel, on its federal Fair Housing Act ("FHA") claim because a material factual issue supporting this claim has been established in separate litigation in this court. As of September 4, 2014, the allegation pled in the United States' complaint that Defendants Colorado City, City of Hildale, Twin City Water Authority, Inc., and Twin City Power, Inc. (collectively, "Defendants") engaged in a pattern or practice of housing discrimination – specifically, a "pattern or practice of resistance to the full enjoyment of rights granted by the [FHA]" – has been established as fact by the court in *Cooke v. Town*

*of Colorado City*, No. 3:10-cv-08105 (D. Ariz.). Statement of Facts in Support of Motion for Partial Summary Judgment ("SOF") at ¶ 2.[1] The court reached this factual finding after an 8-week trial, during which the Cooke family and the Arizona Attorney General's Office presented evidence that these Defendants, along with Hildale-Colorado City Utilities, engaged in the same discriminatory practices with respect to housing alleged in the United States' Complaint in this matter. Because the issue of whether Defendants engaged in this pattern or practice of housing discrimination was previously determined in a final judgment, the United States is entitled to judgment as a matter of law on its pattern-or-practice claim under the FHA. The United States, therefore, respectfully requests that this Court grant summary judgment in its favor with respect to Defendants' liability under the FHA.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

### A. Procedural History

In December 2011, the State of Arizona, together with Ronald and Jinjer Cooke (the "Cookes"), filed a Joint Second Amended Complaint against the Town of Colorado City, Arizona, the City of Hildale, Utah, Twin City Water Authority, Twin City Power, and Hildale-Colorado City Utilities. *See* Joint Second Amended Complaint, *Cooke*, No. 3:10-cv-08105 (D. Ariz. Dec. 12, 2011), ECF No. 169 ("*Cooke* Complaint"). That Complaint alleged, among other things, that Defendants violated the FHA, 42 U.S.C. §§ 3601-3619, and that they engaged in a pattern or practice of discrimination on the basis of religion in violation of the Arizona Fair Housing Act ("AFHA"), Ariz. Rev. Stat. § 41-1491.35. *Id.* at ¶¶ 143, 144. The *Cooke* Complaint alleged that Defendants denied utility services on the basis of religion and used an alleged water shortage as a pretext for

[1] The Court subsequently amended this Order and judgment; however, it did not change the factual finding that Defendants engaged in a pattern or practice of housing discrimination. *See* Order, *Cooke v. Town of Colorado City*, No. 3:10-cv-8105 (D. Ariz. Nov. 25, 2014), ECF No. 722; Amended Judgment and Permanent Injunction, *Cooke v. Town of Colorado City*, No. 3:10-cv-8105 (D. Ariz. Nov. 26, 2014), ECF No. 723.

discrimination in housing on the basis of religion. *See id.* at ¶¶ 25-26, 38-43, 54-64. The *Cooke* Complaint also alleged that Defendants retaliated against the Cooke's in violation of the FHA. *See id.* at ¶¶ 107-08. It further alleged that these defendants used the building-permit process to discriminate in housing on the basis of religion. *See id.* at ¶¶ 65-73. And, it alleged that the Defendant municipalities are controlled by the FLDS Church. *See id.* at ¶ 25 ("Defendants allow the FLDS, and members thereof, to influence and affect the availability of utility services . . . as a method of preserving religious domination . . . .").

The United States initiated the instant action on June 21, 2012, alleging that Defendants have engaged in a long-standing pattern or practice of discrimination on the basis of religion. *See* Complaint ¶¶ 2, 4-5.[2] With regard to housing discrimination, the United States alleged that Defendants denied residential water and utility service to non-FLDS individuals on the basis of religion, refused to issue building permits on the basis of religion, and used an alleged water shortage as a pretext for discrimination in housing on the basis of religion in violation of the FHA, 42 U.S.C. §§ 3601-3619. *See id.* at ¶¶ 36-40. The United States' Complaint names the same Defendants named in the *Cooke* case, with the exception of Hildale-Colorado City Utilities, which is a defendant in the *Cooke* case but not named here.

Because of the similarities between the allegations in the United States' case and the allegations made in the *Cooke* case, the United States moved to transfer the instant case. That motion was denied on the grounds that transfer would not be economical. *See* Order at 4, ECF No. 35. Specifically, the court found that the United States' case raises "factual and legal issues that [were] not likely to be raised in the Cooke case," and that "the two cases [were] in such different stages in the litigation." *Id.* In denying the motion to transfer, however, the court recognized the overlap between the *Cooke* case and the

---

[2] The United States also alleged that Defendants violated the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141(a).

United States' case, noting that the cases arise from the same transactions or events. *Id.* The court further found that the cases are against the same defendants and arise from Defendants' alleged pattern of discrimination. *Id.*

The State of Arizona and the Cookes prevailed in their case against Defendants. On March 20, 2014, a jury "returned a verdict in favor of Plaintiffs Ron and Jinjer Cooke . . . and Plaintiff-Intervenor the State of Arizona (the 'State')." SOF at ¶ 1. Among other things, "the jury found by a preponderance of the evidence that Defendants violated the Arizona Fair Housing Act by engaging in a pattern or practice of resistance to the full enjoyment of any right granted by the Act." *Id*. at ¶ 2. The court then adopted that finding as its own. *Id*. On November 26, 2014, the United States District Court for the District of Arizona entered an amended judgment in favor of the State of Arizona, awarding civil penalties to the State based on its claim that Defendants engaged in a pattern or practice of discrimination on the basis of religion in violation of the AFHA. *Id.* at ¶ 3.

B. Overlapping Evidence of a Pattern or Practice of Housing Discrimination

The evidence that the United States will present in support of its pattern-or-practice claim substantially overlaps with the evidence that the State presented and that the jury concluded supported a finding that Defendants engaged in a pattern or practice of housing discrimination on the basis or religion.

In the *Cooke* case, the State presented evidence that, from 2007 to the present,[3] the FLDS Church controls Defendants, *see* Proposed Judgment at 11-16, *Cooke*, No. 3:10-cv-08105 (D. Ariz. June 16, 2014), ECF No. 687-1, and "dominated the employee and appointed positions of the Defendants over the past two decades." *Id.* at 16. The State presented evidence that Defendants refused to cooperate with the United Effort Plan Trust (the "UEP") and the UEP's efforts to make "housing on UEP land available to qualified

[3] *See Cooke* Complaint at ¶ 34 (noting that the Cookes first began looking for housing in "late 2007 or early 2008"), and ¶ 143 (stating that Defendants, as of the filing of the State's complaint, "are engaged" in a pattern or practice of housing discrimination).

trust participants regardless of their religious affiliation." *Id.* at 17. The State presented evidence that the Colorado City Marshal's Office ("CCMO") was controlled by the FLDS Church, *id.* at 18-20, and interfered with housing rights by refusing "to issue citations or seek prosecution of FLDS Church members involved in trespassing on UEP Trust lands" to the detriment of "non-FLDS Church members," *id.* at 21. The State presented evidence that the CCMO "was used as a tool in the discriminatory conduct [involving housing] at the behest of the FLDS Church and the FLDS Church-controlled Defendants." *Id.* at 23. The State presented evidence that Defendants "took actions to frustrate the ability of non-FLDS members to enjoy UEP Trust leases or occupancy agreements, particularly with regard to unfinished housing." *Id.* at 32. Finally, the State presented evidence that Defendants "conspired with the FLDS Church to use culinary water issues" to deny housing on the basis of religion. *Id.* at 36-44.

The United States' will present identical evidence that covers a nearly identical time period. *See* Complaint ¶ 36 ("since approximately 2008, [Defendants] have denied or unreasonably delayed" utility services), and ¶ 2 (alleging that Defendants' pattern or practice of discrimination is continuing). The United States will present evidence to establish that Defendants "acted in concert with FLDS leadership to deny" non-FLDS individuals housing. *Id.* at ¶ 4. Specifically, the United States will present evidence that Defendants "operated as an arm of the FLDS [Church]," *id.* at ¶ 5; that Defendants denied water services to non-FLDS members, *id.* at ¶ 36; that Defendants refused to issue non-FLDS members building permits, *id.*; and used an alleged water shortage as a pretext for discrimination, *id.* at ¶ 37. *See also* United States' Motion to Compel Against Defendants' Under Rule 37(a) at 6, ECF No. 470 (noting that the United States will present evidence of Defendants' "decision to institute a policy that resulted in denying non-FLDS individual's access to water."). Finally, the United States will present evidence that CCMO interferes with housing rights by, among other things, "arresting non-FLDS individuals for trespass on properties that they had a right to enter." *Id.* at ¶ 31.

## II.     LEGAL STANDARD FOR SUMMARY JUDGMENT

A party may move for summary judgment as to particular claims, or a "part of each claim," and "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Here, there is no genuine dispute that Defendants engaged in a pattern or practice of housing discrimination, as this issue has been determined, in a final judgment, by this Court.  The sole remaining issue with respect to Defendants' liability under the United States' FHA claim is a legal one – whether collateral estoppel applies in this case.  Because that doctrine applies and there is no genuine issue of material fact with respect to it, this Court can and should find that the United States is entitled to judgment as a matter of law with respect to its FHA claim.

## III.    ARGUMENT

The *Cooke* court's conclusion that Defendants engaged in a pattern or practice of resistance to the full enjoyment of rights granted by the AFHA is entitled to preclusive effect in this case.  The doctrine of offensive non-mutual collateral estoppel "prevents a defendant from relitigating the issues which a defendant previously litigated and lost against another plaintiff." *Syverson v. IBM*, 472 F.3d 1072, 1078 (9th Cir. 2007) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979) (internal quotations omitted)). *See also Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003).

The Ninth Circuit has determined that offensive non-mutual collateral estoppel applies where "(1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action." *Syverson*, 472 F.3d at 1078 (internal citations omitted). A court should also consider additional factors to ensure that applying collateral estoppel against the defendant is fair. *See Syverson*, 472 F.3d at 1079. All of the prongs of collateral estoppel are met here, and applying collateral estoppel

against Defendants would not be unfair in this case. As such, the Court should grant summary judgment on Defendants' liability under the FHA in the United States' favor.

A. <u>Defendants Had a Full and Fair Opportunity in the *Cooke* Case to Litigate the Identical Issue of Whether They Engaged in a Pattern or Practice of Housing Discrimination.</u>

As noted above, for nonmutual issue preclusion to apply, the party against whom the doctrine is asserted must have been afforded a "full and fair opportunity to litigate the identical issue in the prior action." *Syverson*, 472 F.3d at 1078. An issue is "identical" for purposes of issue preclusion where: (1) there is "substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first;" (2) "new evidence or argument involve[s] the application of the same rule of law as that involved in the prior proceeding;" (3) "pretrial preparation and discovery related to the matter presented in the first action [could] reasonably be expected to have embraced the matter sought to be presented in the second;" and (4) the claims involved in the two proceedings are "closely related." *See Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995).

The requirement that the issues be identical is satisfied here. At issue in both the United States' case and the *Cooke* case is the existence *vel non* of a pattern or practice of housing discrimination on the basis of religion. Both the United States and the State of Arizona alleged, in almost identical language, that Defendants engaged in a pattern or practice of resistance to the full enjoyment of rights granted by the AFHA or the FHA based on religion. *Compare Cooke* Complaint ¶ 143, *with* Complaint ¶ 59. That the State's claim in *Cooke* was based on the AFHA is of no import. The AFHA and the FHA are substantially equivalent, and courts look to cases interpreting the FHA to interpret the AFHA. *See Canady v. Prescott Canyon Estates Homeowners Ass'n*, 60 P.3d 231, 233 n. 3 (Ariz. Ct. App. 2002); *Cooke v. Town of Colorado City*, Case No. 3:10-cv-08105 (D. Ariz. Nov. 25, 2014), ECF No. 722, at 8 ("Because the Arizona legislature intended the AFHA to mirror the FHA, cases interpreting the latter are persuasive as to the interpretation of the

former."). As such, for purposes of issue preclusion, the claims involved in both cases are identical. *See United States Commodities Futures Trading Comm'n v. Am. Bullion Exch. ABEX Corp.*, No. SACV 10-01876, 2014 WL 3896023, at *12 (C.D. Cal. Aug. 7, 2014) (applying offensive non-mutual collateral estoppel even though the two cases at issue involved different, but nearly identical, statutes).

As explained in detail above, there is also a substantial overlap in the evidence in the United States' case and the *Cooke* case. Both cases involve proof that Defendants are controlled by the FLDS Church and have used municipal control over water service and building permits to deny housing to individuals who are not members of the FLDS Church. Additionally, because the AFHA and the FHA supply the same legal standard for establishing a pattern or practice of discrimination, it is clear that any new evidence the United States may present would involve the application of the same rule of law that was involved in the *Cooke* case, namely the existence of a pattern or practice of resistance to rights granted by the FHA. Similarly, because the same legal standard and evidence are at issue, it is clear that pretrial preparation and discovery related to the United States' fair housing claim substantially overlapped with, and embraced similar issues to, pretrial discovery pursued in the *Cooke* case. Accordingly, the first collateral-estoppel prong is met here.

B. <u>The Issue of Whether Defendants Engaged in a Pattern or Practice of Housing Discrimination Was Actually Litigated in the *Cooke* Case.</u>

The United States can also meet the second prong – that the issue was actually litigated in the prior action. *See Syverson*, 472 F.3d at 1078. Courts within the Ninth Circuit have also required that the issue decided in the previous case was necessary to support the judgment. *See, e.g.*, *McCoy v. Foss Mar. Co.*, 442 F. Supp. 2d 1103, 1106-07 (W.D. Wash. 2006); *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 975 (N.D. Cal. 2012).

Here, the parties litigated, and the jury found, that Defendants engaged in a pattern or practice of housing discrimination. *See* SOF at ¶ 2. The court in the *Cooke* case then

adopted the jury's verdict in its finding of facts. *Id.* The determination that Defendants engaged in a pattern or practice of housing discrimination was also necessary to support the judgment. Without this finding, the court could not have awarded civil penalties against Defendants. Arizona Revised Statute Section 41-1491.35(B)(3) states that a court, in a pattern-or-practice case, may assess a civil penalty against a defendant for such conduct. Under the AFHA, as is true under the FHA, a court may not award a civil penalty in a case brought by the respective Attorneys General without a pattern or practice claim. *See* Ariz. Rev. Stat. § 41-1491.34(C); 42 U.S.C. §§ 3612(o)(3), 3613(c). As such, the issue of whether Defendants engaged in a pattern or practice of housing discrimination was actually litigated and necessary to support the judgment in the *Cooke* case.

C. The *Cooke* Court Found in a Final Judgment that Defendants Engaged in a Pattern or Practice of Housing Discrimination.

The issue of whether Defendants engaged in a pattern or practice of housing discrimination was determined in a final judgment in the *Cooke* case. For an issue to be decided in a final judgment, it must be a judgment upon a decision or an order rendered by the court at the conclusion of a judicial proceeding. *See Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 883 (9th Cir. 2007). In this case, the factual finding that Defendants engaged in a pattern or practice of housing discrimination was made as part of an order following the jury's verdict that set forth the bases for the equitable relief that the court granted in the State of Arizona's favor. *See* Order at 1-5, *Cooke*, No. 3:10-cv-08105 (D. Ariz. Sept. 4, 2014), ECF No. 703. The court filed this Order contemporaneously with a final judgment, which it subsequently amended, awarding civil penalties to the State of Arizona based on its pattern or practice claim. Judgment and Permanent Injunction, *Cooke*, No. 3:10-cv-08105 (D. Ariz. Sept. 4, 2014), ECF No. 704; Amended Judgment and Permanent Injunction, *Cooke*, No. 3:10-cv-08105 (D. Ariz. Nov. 26, 2014), ECF No. 723. As such, the factual finding reached by the *Cooke* court that Defendants engaged in a pattern or practice of housing discrimination was part of a final judgment.

D. Each of the Defendants in this Action Were Also Defendants in the *Cooke* Case.

For collateral estoppel to apply, courts also require that the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior action. *See Syverson*, 472 F.3d at 1078; *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006). Here, Defendants Colorado City, Hildale, Twin City Water Authority, and Twin City Power were all defendants in the *Cooke* case. The only defendant not in common between to the two cases – Hildale-Colorado City Utilities – is not a defendant in this action but was one in the *Cooke* case. This factor therefore is met here as all of the defendants in this case have been found to have engaged in a pattern or practice of housing discrimination.

E. Application of Collateral Estoppel Would Not Be Unfair to Defendants.

Courts also consider additional factors when determining whether to apply collateral estoppel against a defendant. The Ninth Circuit has concluded that a court may decline to apply this doctrine "if indices of unfairness" exist. The Court recognized that "indices of unfairness" include whether:

> (1) The plaintiff had the incentive to adopt a 'wait and see' attitude in the hope that the first action by another plaintiff would result in a favorable judgment which might then be used against the losing defendant; (2) the defendant had the incentive to defend the first suit with full vigor, especially when future suits are not foreseeable; (3) one or more judgments entered before the one invoked as preclusive are inconsistent with the latter or each other, suggesting that reliance on a single adverse judgment would be unfair; and, (4) the defendant might be afforded procedural opportunities in the later action that were unavailable in the first and that could readily cause a different result.

*Syverson*, 472 F.3d at 1079 (citing *Parklane Hosiery*, 439 U.S. at 330-31; 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice And Procedure § 4465 (2002)) (internal quotations omitted).

Here, the United States did not adopt a 'wait and see' attitude with respect to this case. Indeed, the United States filed suit in June 2012, long before the *Cooke* trial or before the court reached its final judgment. Additionally, this is not a case where the United States could have joined in the *Cooke* case. *See Parklane Hosiery*, 439 U.S. at 332 (concluding that issue preclusion should not be applied where it would reward a party who could have joined in the previous action . . . "). At the time the United States filed its case, it would have been impractical for the two actions to be consolidated or for the United States to intervene in that case so that the two actions could have been resolved simultaneously. As Judge Teilborg recognized in *Cooke*, while "these cases are related and do generally arise from the same transactions or events," there are differences, including that the United States' case asserts a police misconduct claim involving the Colorado City Marshal's Office and the parties in the *Cooke* case had recently completed discovery at the time of the United States' filing. Order at 4, ECF No. 35. As such, the United States did not simply wait on the resolution of the *Cooke* case before proceeding with its action and did not improperly avoid joining that litigation.

Second, Defendants had the incentive, and did, vigorously defend the allegations in the *Cooke* case. They filed motions for summary judgment on the plaintiffs' fair housing claims, numerous motions *in limine* prior to trial, cross-examined all 15 of the plaintiffs' witnesses at trial, and called 17 of their own witnesses. Third, there are no other judgments entered that would conflict with the *Cooke* judgment. Lastly, because the AFHA is "virtually identical" to the FHA, there are no procedural opportunities available here that were not available in the *Cooke* case. *See Canady*, 60 P.3d at 233 n.3.

In addition to these considerations, the Court should also consider that applying collateral estoppel here would make trial more efficient. *See Parklane Hosiery*, 439 U.S. at 326 (finding that collateral estoppel has the dual purpose of "protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of

promoting judicial economy by preventing needless litigation.”).[4] As this Court is aware, this case presents numerous factual issues and will involve presenting the testimony of a large number of witnesses. To date, the parties have collectively identified over 100 fact and expert witnesses that may testify at trial in this case. By resolving this factual issue at the outset, it is likely that the parties may not need to call several witnesses. While the United States would still need to call witnesses who have incurred damages as a result of Defendants’ discriminatory housing practices, witnesses who will establish that Defendants’ conduct was intentional or taken in reckless disregard of federally-protected rights, and other witnesses that demonstrate that the United States is entitled to injunctive relief with respect these practices, it would not need to call witnesses to demonstrate solely that Defendants’ housing practices were discriminatory. For example, both the United States and Defendants have identified a total of four water experts, two of whom testified at the *Cooke* trial, to testify at trial about the legitimacy (or pretextual nature) of Defendants’ water policies. It is likely that these witnesses would no longer be necessary if liability is already established. As such, fairness and efficiency factors weigh in favor of applying collateral estoppel in this case.

[4] Although collateral estoppel is intended to promote judicial economy, there is no requirement that preclusion result in *significant* judicial economy. *See Hynix Semiconductor*, 897 F. Supp. 2d at 974 (applying collateral estoppel even though both actions had been litigated and, as a result, finding that preclusion did not result in any significant judicial economy).

**IV. CONCLUSION**

For the foregoing reasons, the United States respectfully that this Court grants this Partial Motion for Summary Judgment Based on Collateral Estoppel.

Respectfully submitted,

STEVEN H. ROSENBAUM
Chief
Housing and Civil Enforcement Section

JONATHAN M. SMITH
Chief
Special Litigation Section

R. TAMAR HAGLER
CHRISTY E. LOPEZ
Deputy Chiefs

ERIC W. TREENE
Special Counsel

*/s/ Jessica Clarke Crockett*
SEAN R. KEVENEY
JESSICA C. CROCKETT
MATTHEW J. DONNELLY
Attorneys
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Phone: (202) 305-4013
Facsimile: (202) 514-1116
E-mail: jessica.crockett@usdoj.gov

December 22, 2014

**CERTIFICATE OF SERVICE**

I certify that on December 22, 2014, I caused a copy of the foregoing to be sent via the Court's ECF system to the following:

Jeffrey C. Matura
Asha Sebastian
Graif Barrett & Matura, P.C.
1850 North Central Avenue, Suite 500
Phoenix, Arizona 85004
*Attorneys for Defendant Town of Colorado City*

R. Blake Hamilton
Ashley M. Gregson
Durham Jones & Pinegar
111 East Broadway, Suite 900
Salt Lake City, Utah 8411
*Attorneys for Defendants City of Hildale, Twin City Water Authority, and Twin City Power*

*/s/ Jessica Clarke Crockett*
JESSICA CLARKE CROCKETT
Attorney for the United States