Jeffrey C. Matura, State Bar No. 019893
Asha Sebastian, State Bar No. 028250
**Graif Barrett & Matura, P.C.**
1850 North Central Avenue, Suite 500
Phoenix, Arizona 85004
Telephone: (602) 792-5700
Facsimile: (602) 792-5710
jmatura@gbmlawpc.com
asebastian@gbmlawpc.com

Attorneys for Defendant Town of Colorado City, Arizona

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Town of Colorado City, Arizona; City of Hildale, Utah; Twin City Power; and Twin City Water Authority, Inc.,<br><br>Defendants. | Case No. CV-12-8123-PCT-HRH<br><br>**DEFENDANT TOWN OF COLORADO CITY'S MOTION FOR SUMMARY JUDGMENT ON COUNT I**<br><br>**– AND –**<br><br>**MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT II REGARDING DAMAGES**<br><br>**(Oral Argument Requested)** |

Defendant Town of Colorado City, Arizona requests that this Court enter an order granting summary judgment in its favor and against the United States on Count I of the Complaint (42 U.S.C. § 14141) and partial summary judgment regarding damages that the United States seeks on behalf of "aggrieved persons" in connection with Count II (Fair Housing Act).[1] Summary judgment is proper for the following reasons:

- No evidence exists that the police conduct at issue in Count I involved religious discrimination.

- The First and Fourth Amendments do not apply to a claim under

---

[1] This Court previously dismissed Count III (42 U.S.C. § 2000b) [Doc. 39].

42 U.S.C. § 14141.

- The United States failed to disclose a computation of the damages sought for the "aggrieved persons" in Count II, as required by Federal Civil Procedure Rule 26(a).
- No evidence exists that 10 of the 16 identified "aggrieved persons" suffered any identifiable injury or compensable damages due to Colorado City's conduct.

For these reasons, the requested relief is appropriate. This motion is brought pursuant to Federal Civil Procedure Rule 56 and is supported by the Court's file, a separate statement of facts, and the following memorandum of points and authorities.[2]

### **MEMORANDUM OF POINTS AND AUTHORITIES**

Two questions are presented: first, is Colorado City entitled to judgment as a matter of law on Count I when no evidence exists that the police conduct at issue involved religious discrimination; and second, is Colorado City entitled to judgment as a matter of law when the United States failed to disclose any evidence that the "aggrieved persons" suffered any damages related to Colorado City's conduct? The answer to both is "yes." To get to these answers, some background information is first necessary.

**I.    FACTUAL BACKGROUND.**

This Court is familiar with this case. On June 21, 2012, the United States filed a Complaint against Colorado City and the other defendants.[3] In Count I, the United States alleges that the defendants "engaged in and continue to engage in a pattern or practice of conduct that deprives persons of rights, privileges, or immunities secured or protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution and the laws of the United States. These actions constitute violations of 42 U.S.C. § 14141."[4] In

---

[2] Colorado City also joins, and incorporates into this motion, all the arguments raised in the City of Hildale's motion for summary judgment and statement of facts, which were filed contemporaneously with this motion.
[3] See Complaint [Doc. 1].
[4] Id. at ¶ 56.

2

Count II, the United States alleges that the defendants engaged in "a pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619; or [a] denial to a group of persons rights granted by the Fair Housing Act, which raises an issue of general public importance, in violation of the Fair Housing Act, 42 U.S.C. § 3614(a)."[5]  The United States also alleges that, as a result of the defendants' violation of the Fair Housing Act, "[t]here are persons who have been injured by Defendants' discriminatory actions and practices who are aggrieved persons as defined in 42 U.S.C. § 3602(i).  These persons have suffered damages as a result of Defendants' discriminatory actions and practices described above."[6]

Colorado City – and all the defendants – denied the United States' allegations.[7] The parties then engaged in substantial discovery, and fact discovery ended in August 2014.  Based upon the information the United States disclosed during discovery and, in some instances, did not disclose, it becomes clear that no evidence exists that the police incidents at issue in Count I involved religious discrimination.  It also becomes clear that the "aggrieved persons" in Count II did not suffer damages due to Colorado City's conduct and, in fact, several testified under oath that they do not even seek any damages.  For these reasons, summary judgment on Count I and partial summary judgment on damages sought in Count II is appropriate.

**II.  THIS COURT SHOULD DISMISS COUNT I BECAUSE NO EVIDENCE EXISTS THAT THE POLICE CONDUCT AT ISSUE INVOLVED RELIGIOUS DISCRIMINATION.**

In Count I, the United States alleges that Colorado City violated 42 U.S.C. § 14141.  This statute is part of the Violent Crime Control and Law Enforcement Act of 1994, and states the following:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement

---

[5] Id. at ¶ 59.
[6] Id. at ¶ 60.
[7] See Colorado City's Answer [Doc. 42].

3

officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.[8]

To establish a violation, the United States must prove that Colorado City engaged in "pattern or practice" of misconduct. The United States also alleges that the defendants engaged in a pattern or practice of misconduct by violating the First, Fourth, and Fourteenth Amendments of the United States Constitution.[9]

### A. No Evidence Exists Regarding Religious Discrimination.

The fundamental problem with Count I is that the United States has not presented evidence that the police conduct at issue involved <u>religious</u> discrimination. And, for some of the incidents, no evidence exists that officers from the Colorado City and Hildale City Marshal's Department were even involved.

The United States' Complaint contains broad allegations. The defendants asked during discovery for details of each allegation contained within the Complaint. The following chart compares some of the United States' allegations with the evidence uncovered regarding the police conduct at issue:

| ALLEGATION | EVIDENCE |
| --- | --- |
| In January 2012, a woman fled her home after learning that FLDS leaders demanded that she sever all contact with her children and she believed that the Marshal's Department would not protect her.[10] | Suzette Steed is the woman identified in this allegation. She testified that a representative from the FLDS Church told her to leave the area and that this representative did not work for the Marshal's Department.[11] She also testified that she is friends with Officer Sam Johnson, considers him a good officer, and does not believe he or the other officers |

---

[8] 42 U.S.C. § 14141(a).
[9] See Complaint [Doc. 1], at ¶¶ 52 – 55.
[10] Id., at ¶ 18.
[11] See Colorado City's Statement of Facts ("SOF"), at ¶ 1.

4

| | |
|---|---|
| | perform functions on behalf of the FLDS Church.[12] |
| In 2000, officers from the Marshal's Department, in compliance with an order from Warren Jeffs, demanded that an FLDS member return an underage bride who had fled her husband's home.[13] | Ruby Jessop is the "underage bride" identified in this allegation. She testified that she did not flee her husband's home, but rather loved her husband and made her own decision to leave.[14] She also testified that Officer Sam Johnson received a trespass call, stopped a car in which she was a passenger, and told the driver not to trespass upon the property of Ruby Jessop's husband, but did not issue any citation.[15] She also testified that a Mohave County Sheriff's Officer responded and told her that she could not take any action without a Court order.[16] |
| In 2001, officers from the Marshal's Department, in compliance with an edict from Warren Jeffs, shot and killed dogs in a slaughter pit.[17] | The United States identified Steven Bateman as the individual with knowledge about this allegation. Mr. Bateman testified that his father released his dog into the wild when he was about 13 years old because the dog killed their farm animals.[18] He also testified that he was not aware of any edict from Warren Jeffs to kill dogs.[19] He also testified that he believes Officer Shem Jessop spoke to his father about his dog, but he was not part of the conversation, did not hear what was discussed, and has no proof that the |

---

[12] Id., at ¶ 2.
[13] See Complaint [Doc. 1], at ¶ 22.
[14] SOF, at ¶ 3.
[15] Id. at ¶ 4.
[16] Id., at ¶ 5.
[17] See Complaint [Doc. 1], at ¶ 23.
[18] SOF, at ¶ 6.
[19] Id., at ¶ 7.

5

| | |
|---|---|
| | Marshal's Department was even involved.[20] Finally, he testified that he has no personal knowledge that any officer from the Marshal's Department carried out any edict from the FLDS Church to get rid of dogs.[21] |
| In 2008, then-Marshal Jonathan Roundy sided with an FLDS member in a property dispute and stated "[the FLDS member says this is his property, and we are going to honor him because he is a member of the Church, and he has asked [the non-FLDS] to leave, and that is where I am going to stand as Chief of the Police."[22] | Jonathan Roundy testified that he did not make any statement that he would honor someone's property claim based upon their religious status.[23] He also testified that he worked as an officer for the Marshal's Department for almost 20 years and never made a decision based upon what a religious leader said or treated anyone differently because of their religion; rather, he went out of his way to take special care of those who he believed were not FLDS because of the scrutiny he knew the Department was under.[24] |
| The Marshal's Department uses its authority to aid the FLDS Church by facilitating the unlawful evictions of non-FLDS residents and refusing to permit non-FLDS individuals to move into properties for which they have occupancy agreements.[25] | The United States identified Jerold Williams as the individual with knowledge about this allegation. Jerold Williams testified that when his family prevented him from entering a house, he broke through a window to gain entry.[26] He also testified that, after his family called the Marshal's Department for help, he refused multiple orders from the officer to leave the residence.[27] He also testified that the officer told him that the city prosecutor recommended that the officer arrest him if |

---

[20] Id., at ¶ 8.
[21] Id., at ¶ 9.
[22] See Complaint [Doc. 1], at ¶ 28.
[23] SOF, at ¶ 10.
[24] Id., at ¶ 11.
[25] See Complaint [Doc. 1], at ¶ 30.
[26] SOF, at ¶ 12.
[27] Id., at ¶ 13.

6

| | he refused to leave, and after Jerold Williams still refused to leave, the officer arrested him for trespassing.[28] |
|---|---|
| In 2010, the Marshal's Department euthanized a stud horse because it knew the owner was non-FLDS.[29] | Randy Servis, an Officer with the Arizona Department of Agriculture, investigated this issue and testified that he did not believe religion had anything to do with how the Marshal's Department handled the stud horse.[30] |

The United States' Complaint makes broad allegations about religious discrimination, but the evidence tells quite a different story, as shown in these examples.

The United States has not come forward with evidence to show that any police incident at issue in this case involved <u>religious</u> discrimination. It makes sweeping allegations, but allegations are insufficient to maintain a claim under 42 U.S.C. § 14141. This Court should therefore enter judgment in Colorado City's favor on Count I.

**B.   The First And Fourth Amendments Do Not Apply To A Claim Under 42 U.S.C. § 14141.**

Even if this Court does not enter judgment on Count I due to the United States' failure to present admissible evidence of religious discrimination, it should still enter judgment in Colorado City's favor and limit the scope of Count I to only the Fourteenth Amendment.

The United States includes the First and Fourth Amendments as part of Count I.[31] The First Amendment precludes any law "prohibiting the free exercise" of religion, whereas the Fourth Amendment protects against "unreasonable searches and seizures."[32] The United States then brought a single claim under 42 U.S.C. § 14141, which requires a

---

[28] Id., at ¶ 14.
[29] See Complaint [Doc. 1], at ¶ 32.
[30] SOF, at ¶ 15.
[31] See Complaint [Doc. 1], at ¶¶ 52 – 53.
[32] U.S. Const., Amendments I and IV.

7

"pattern or practice" of misconduct. The United States therefore alleges that the defendants engaged in a pattern or practice of misconduct by treating people differently due to religion.[33] This is a Fourteenth Amendment argument, not the First and Fourth Amendments. In other words, the mechanism to object to the alleged pattern or practice of discriminatory application of the First and Fourth Amendments is through the Equal Protection Clause of the Fourteenth Amendment. See e.g., Whren v. United States, 517 U.S. 806, 813 (1996) ("We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment."); see also United States v. Johnson, 2014 WL 2807568 at *12 (M.D. North Carolina June 20, 2014) (holding that "[t]o be sure, any lack of a legal basis for a stop may be evidence of unlawful ethnic targeting under the Fourteenth Amendment. However, to the extent the Government is challenging a *pattern* of allegedly discriminatory individual traffic stops [under 42 U.S.C. § 14141], Johnson is correct that the Equal Protection Clause, not the Fourth Amendment, applies.") (emphasis in original). The statutory history of 42 U.S.C. § 14141 also confirms that the Fourteenth Amendment is the proper mechanism to bring a pattern or practice claim, not the First or Fourth Amendment. See United States v. City of Columbus, Ohio, 2000 WL1133166 at * 6 – 9 (S.D. Ohio August 3, 2000) (discussing the history of 42 U.S.C. § 14141 and concluding that it is a "proper exercise of congressional authority under § 5 of the Fourteenth Amendment.").[34]

Because any claim related to a pattern or practice of misconduct under 42 U.S.C. § 14141 falls solely within the Fourteenth Amendment, this Court should enter judgment in Colorado City's favor on the First and Fourth Amendment components contained within

---

[33] See Complaint [Doc. 1], at ¶ 55.

[34] Colorado City has not located any case law interpreting the "pattern or practice" component of 42 U.S.C. § 14141 in the context of alleged religious discrimination; however, Colorado City has also not located any case holding that the analysis would differ between race and religion.

Count I. The practical impact would be to preclude the United States from arguing to the jury or presenting any evidence that Colorado City or the other defendants violated the First or Fourth Amendments. Instead, the United States would have to present all arguments and evidence within the Fourteenth Amendment.

### III. PARTIAL SUMMARY JUDGMENT ON COUNT II IS PROPER BECAUSE THE UNITED STATES FAILED TO DISCLOSE ANY DAMAGES AND NO EVIDENCE EXISTS THAT THE "AGGRIEVED PERSONS" SUFFERED DAMAGES DUE TO COLORADO CITY'S CONDUCT.

In Count II, the United States alleges that Colorado City and the other defendants engaged in a pattern or practice of conduct that violates the Fair Housing Act, including 42 U.S.C. §§ 3604(a), (b), and 3617.[35] The United States also alleges that the defendants' conduct raises an issue of general public importance in violation of 42 U.S.C. § 3614(a). Finally, the United States alleges that certain "aggrieved persons," as defined in 42 U.S.C. § 3602(i), have suffered damages due to the defendants' conduct, and that the United States seeks damages on their behalf pursuant to 42 U.S.C. § 3614(d)(1)(B).[36]

Colorado City seeks partial summary judgment on the United States' request to obtain damages on behalf of the "aggrieved persons." To obtain these damages, the United States must disclose them and also come forward with evidence to show a link between those damages and the defendants' conduct. The United States failed on both accounts.

#### A. The United States Failed To Disclose Any Computation Of Damages For The "Aggrieved Persons."

Federal Civil Procedure Rule 26 governs a party's disclosure obligations. Rule 26(a)(1)(A)(iii) covers the disclosure of damages, and requires the following:

> A <u>computation</u> of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privilege or protected from disclosure, on which

---

[35] See Complaint [Doc. 1], at ¶¶ 58 – 61.
[36] Id., at ¶ 60 and pg. 18, subsection f.

9

each computation is based, including materials bearing on the nature and extent of injuries suffered.[37]

Rule 26(e) also places a mandatory requirement on a party to supplement its disclosures if new information is learned. If a party fails to disclose or supplement, Rule 37(C)(1) precludes that party from using the non-disclosed information in a motion, at a hearing, or at a trial.

The United States disclosed 16 "aggrieved persons."[38] The only disclosure of damages is two general statements. The first says that the United States "may seek damages on their behalf pursuant to 42 U.S.C. § 3614(a)."[39] The second states that "[t]he United States will be seeking monetary relief for aggrieved persons, including compensatory damages they suffered as a result of Defendants' discriminatory actions, including their out-of-pocket and economic costs, lost housing opportunities, and emotional distress, embarrassment and humiliation."[40] Nowhere in either statement, however, does the United States disclose any computation of damages, as Rule 26(a)(1)(A)(iii) requires. Instead, and in an apparent disregard for Rule 26(a)(1)(A)(iii), the United States says that "[t]he precise amount needed to compensate aggrieved persons for the emotional distress they suffered will be determined by the jury."[41] Rule 26(a) requires more, and even this placeholder statement only applies to "emotional distress," but not any other damages, thereby leaving Colorado City to guess at the computation of the full damages for each "aggrieved person." The United States also represented that it would "continue to evaluate the evidence in this case to determine the identity of aggrieved persons as well as the monetary damages amounts sought on their behalf, and

---

[37] Rule 26(a)(1)(A)(iii) (emphasis added).
[38] SOF, at ¶ 16 (the United States' disclosure statement is redacted to prevent the disclosure of any witness' personal information, as required under this Court's protective order).
[39] Id., at ¶ 17 (emphasis added).
[40] Id., at ¶ 18 (emphasis added).
[41] Id., at ¶ 19.

will supplement these responses accordingly,"[42] but it never supplemented its disclosures to identify any "monetary damages" or "amounts."

After two-years of discovery, about 75 depositions, hundreds of thousands of documents, and eleven supplemental disclosure statements from the United States, the United States failed to disclose a single computation of damages that it seeks for even one "aggrieved person." Is it $1.00 or $1 million? Is it the same for everyone? How much is for out-of-pocket costs versus emotional distress versus lost housing opportunities versus embarrassment and humiliation? Colorado City is left to guess, which is exactly what Rule 26 and Rule 37 are intended to avoid. This Court should therefore grant summary judgment to Colorado City regarding the United States' request for damages for every "aggrieved person" under Count II.

### B. No Evidence Shows That The "Aggrieved Persons" Suffered Damages Due To Colorado City's Conduct.

Even if this Court gives the United States a free pass on its disclosure failures, it should still enter judgment in Colorado City's favor on damages for 10 of the 16 "aggrieved persons" because the United States has not come forward with any evidence to show that these "aggrieved persons" suffered damages due to Colorado City's conduct. And, for some, they admit that they do not even seek damages.

To establish an individual as an "aggrieved person" under the Fair Housing Act, that individual "must demonstrate that [he or she] suffered a concrete injury in fact or that one is actual and imminent; that such injury is fairly traceable to Defendants' allegedly illegal actions; and that it is likely that such injury will be redressed by a favorable decision." Savanna Club Worship Services, Inc. v. Savanna Club Homeowners' Ass'n, Inc., 456 F.Supp.2d 1223, 1226 (S.D. Fla 2005). A causal connection must also exist "between the injury and the conduct complained of – the injury has to be 'fairly trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Lujan v. Defenders of

---

[42] Id., at ¶ 20 (emphasis added).

11

1  Wildlife, 504 U.S. 555, 560-61 (1992).  And with respect to emotional damages, "a court
2  may not presume emotional distress from the fact of discrimination.  A plaintiff must
3  actually prove that he suffers from emotional distress and that the discrimination caused
4  that distress."  U.S. v. Balistrieri, 981 F.2d 916, 931 (7th Cir. 1996); see also Biggs v.
5  Village of Dupo, 892 F.2d 1298, 1305 (7th Cir. 1990) (holding that plaintiff was required
6  to show "'*demonstrable* emotional distress,' not just point to circumstances of the
7  constitutional violation which might support an inference of such injury.") (emphasis in
8  original).

9        The United States identified 16 "aggrieved persons."  With respect to 10, this Court
10  should grant summary judgment as to damages.  Each of these 10 is discussed below.

### 1. John Cook.

12        Despite his inclusion as an "aggrieved person," John Cook testified that he had
13  never spoken to anyone from the United States until the day before his deposition.[43]  He
14  also testified that he had no knowledge about any discriminatory treatment by Colorado
15  City or the other defendants against non-FLDS members.[44]  When the defendants tried to
16  cure the United States' disclosure failures and asked John Cook what type of damages he
17  sought as an "aggrieved person," he responded: "I do not have any knowledge of that."[45]

### 2. Charles (Ross) and Lori Chatwin.

19        Ross Chatwin also did not know that the United States identified him as an
20  "aggrieved person" until just before his deposition in May 2013.[46]  He testified about a
21  single incident that occurred in 2004, in which he claims that the Marshal's Department
22  falsely arrested him.[47]  He was sharing a residence with his brother and believed that a
23  Court had granted him a life estate.  He therefore changed the locks to his brother's area

---

[43] Id., at ¶ 21.
[44] Id., at ¶ 22.
[45] Id., at ¶ 23.
[46] Id., at ¶ 24.
[47] Id., at ¶ 25.

of the residence, but did so before the Court issued an order granting him a life estate.[48] To change the locks, he climbed through a window to where his brother lived.[49] When his brother's family returned, they called the Marshal's Department for help.[50] Officer Fred Barlow requested that Ross Chatwin provide the keys to the new locks to his brother, but he refused.[51] Ross Chatwin was then arrested for trespass.[52] The next day, the Court issued the order granting Ross Chatwin a life estate in the residence and he was released, but not until the Court warned him that "what [he] had done was a very serious crime."[53]

When asked about damages he sought as an "aggrieved person," Ross Chatwin testified: "I don't know about that. Without being advised, I don't know."[54] When follow-up questions were asked to obtain as much information about damages as possible, the United States' attorney objected and instructed Ross Chatwin <u>not</u> to answer the questions.[55] Therefore, not only did the United States fail to disclose any computation of damages for Ross Chatwin, and not only did Ross Chatwin testify that he did not know about any damages, but the United States prevented the defendants from inquiring into any damages.[56]

### 3. Christopher and Jesseca Jessop.

Jesseca Jessop testified about a single incident that occurred in April 2013. It

---

[48] Id., at ¶ 26.
[49] Id., at ¶ 27.
[50] Id., at ¶ 28.
[51] Id., at ¶ 29.
[52] Id., at ¶ 30.
[53] Id., at ¶ 31.
[54] Id., at ¶ 32.
[55] Id., at ¶ 33.
[56] The statute of limitations also prevents Ross Chatwin from seeking damages as an "aggrieved person." The Fair Housing Act contains a 2-year limitation period for seeking damages (42 U.S.C. § 3613(a)), and even though the United States tries to invoke the continuing-violations doctrine, "if an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violations doctrine." Hipp v. Libert Nat. Life Ins. Co., 252 F.3d 1208, 1222 (11th Cir. 2001). Because the incident involving Ross Chatwin occurred 8 years before the United States filed this lawsuit, he is precluded by the statute of limitations from obtaining any damages as an "aggrieved person." At a minimum, this Court should therefore enter judgment in Colorado City's favor on Ross Chatwin.

13

involved a property dispute between her and Penny Barlow regarding who had the right to occupy a residence.[57] Officer Hyrum Roundy from the Marshal's Department responded to a call at the scene, spoke to Jesseca Jessop and Penny Barlow, and told Jesseca Jessop to obtain an eviction order from the Court to remove Penny Barlow.[58] Jesseca Jessop admitted that she did not obtain an eviction order.[59] When asked about whether she was seeking any damages as an "aggrieved person," she provided the following testimony:

> Q: Do you understand, ma'am, we've heard the term said a few times today by Mr. Keveney, do you understand that you are identified as an aggrieved party in this case?
>
> A: Sort of.
>
> Q: Have you heard that term before, other than today?
>
> A: No.
>
> Q: No. Okay. Are you seeking anything?
>
> A: No.
>
> Q: Do you want anything out of this case personally?
>
> A: No.
>
> Q: And let me just maybe clarify a little bit. You're not looking for money, are you?
>
> A: No.[60]

This testimony could not be any clearer – Jesseca Jessop does not seek any damages as an "aggrieved person."

### 4. Willie R. Jessop.

The United States disclosed that Willie Jessop would testify about "the FLDS

---

[57] SOF, at ¶ 34.
[58] Id., at ¶ 35.
[59] Id., at ¶ 36.
[60] Id., at ¶ 37.

1  Church's control over the Twin Cities, the Cities' assistance to the FLDS Church in its
2  surveillance of non-FLDS members, the coordination of Church security personnel and
3  the CCMO, the CCMO's failure to provide police services with respect to housing, and
4  related matters."[61]  None of this has anything to do with any denial of the sale or rental of
5  a residence under the Fair Housing Act.  Willie Jessop also did not testify about any
6  discrimination related to housing, did not recall signing a document agreeing to be a
7  witness for the United States, did not testify about any damages he seeks, and did not even
8  know that he was listed as an "aggrieved person."[62]

### 5.  Ron Rohbock.

Ron Rohbock testified about a single incident that occurred in August 2013, in which he obtained an occupancy agreement for a residence that someone else already occupied.[63]  He also testified that he did not want to spend the time or money to obtain an eviction order.[64]  Accordingly, Sergeant Sam Johnson, who responded to a call at the scene on behalf of the Marshal's Department, could not remove the current residents.[65]  Ron Rohbock eventually filed an unlawful detainer action and obtained the right to occupy the residence.[66]  He now lives in that residence and has utilities.[67]  Regarding damages, Ron Rohbock testified that he had not thought about compensation, but that he would gladly take something for his "50 years of what I would call back breaking slave labor for a religion that I got nothing from."[68]

Based upon this testimony, Ron Rohbock does not have any damages against Colorado City or any other defendant, but would like compensation from the FLDS Church, if possible.

---

[61] Id., at ¶ 38.
[62] Id., at ¶ 39.
[63] Id., at ¶ 40.
[64] Id., at ¶ 41.
[65] Id., at ¶ 42.
[66] Id., at ¶ 43.
[67] Id., at ¶ 44.
[68] Id., at ¶ 45.

### 6.     Jerold Williams and Elizabeth Wayman.

Jerold Williams testified about a single incident that occurred in July 2012 when he broke into a window to enter a residence where his family was staying.[69] After his family called the Marshal's Department, Officer Curtis Cooke responded, asked Jerold Williams to leave on multiple occasions, spoke to the Town Prosecutor about how to handle the situation, and then arrested Jerold Williams for trespassing when he still refused to leave.[70] Jerold Williams also testified that a Mohave County Sheriff's Officer confirmed what Officer Cooke told him regarding the insufficiency of his occupancy agreement and that he needed to get a Court order to enforce his rights, but that he never obtained any Court order.[71] When asked about damages related to his status as an "aggrieved person," Jerold Williams testified that he was not seeking any money.[72]

### 7.     Isaac Wyler.

The United States did not disclose that Isaac Wyler suffered any discrimination or damages related to the sale or rental of a residence under the Fair Housing Act.[73] The only possible relevant disclosure is that the Marshal's Department arrested Isaac Wyler for criminal trespass in 2009 while he was inspecting houses for the United Effort Plan Trust. The Judge later found Isaac Wyler guilty of criminal trespass, sentenced him to 2 years of probation, and required him to pay a monetary fine.[74] If the Judge found Isaac Wyler guilty, it was impossible for the Marshal's Department to have arrested him due to some religious discrimination. And none of this has anything to do with violations of Isaac Wyler's rights under the Fair Housing Act. He therefore has no damages, and the United States has not provided evidence of any damages.

These 10 "aggrieved persons" cannot demonstrate that they suffered a concrete

---

[69] Id., at ¶ 46.
[70] Id., at ¶ 47.
[71] Id., at ¶ 48.
[72] Id., at ¶ 49.
[73] Id., at ¶ 50.
[74] Id., at ¶ 51.

16

injury traceable to Colorado City or the other defendants. They also cannot establish a causal connection between any injury and the defendants' conduct. Partial summary judgment in Colorado City's favor is therefore appropriate.

## IV. CONCLUSION.

This case has been a long and hard fight. But now that discovery is over, it becomes clear that no evidence shows that the police conduct at issue in Count I involved religious discrimination. The officers could have made a bad decision or even acted incorrectly on some particular issue, but the United States must show that the officers engaged in a pattern or practice of <u>religious</u> discrimination to support a claim under 42 U.S.C. § 14141. It has not done so; therefore, summary judgment in Colorado City's favor is proper on Count I.

The United States also failed to comply with its most basic obligation in this case. It failed to disclose a computation of damages for the "aggrieved persons" on Count II. Its failure violated Rule 26(a) and, pursuant to Rule 37, it is precluded from offering any evidence of damages at trial. Similarly, for 10 of the 16 "aggrieved persons," no evidence exists that any damages are related to Colorado City's conduct, or that the "aggrieved persons" even seek any damages. Partial summary judgment regarding damages for the "aggrieved persons" within Count II is therefore also proper.

For these reasons, Colorado City requests that this Court grant it summary judgment on Count I and partial summary judgment on Count II regarding damages.

Dated this 22nd day of December 2014.

                                              GRAIF BARRETT & MATURA, P.C.

By:   /s/ Jeffrey C. Matura
      Jeffrey C. Matura
      Asha Sebastian
      1850 North Central Avenue, Suite 500
      Phoenix, Arizona 85004
      Attorneys for Defendant Town of Colorado City, Arizona

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of December 2014, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF system for filing and transmittal of Notice of Electronic filing to the following CM/ECF registrants:

R. Tamar Hagler
Eric W. Treene
Sean R. Keveney
Jessica C. Crockett
Matthew J. Donnelly
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Attorneys for Plaintiff United State of America

R. Blake Hamilton
Durham Jones & Pinegar
111 East Broadway, Suite 900
Salt Lake City, Utah 84111
Attorneys for Defendants City of Hildale, Utah,
Twin City Water Authority, and Twin City Power


/s/ Carolyn Harrington
4849-3978-9600

18