Steven H. Rosenbaum (NY Bar #1901958)
Jonathan M. Smith (DC Bar #396578)
R. Tamar Hagler (CA Bar #189441)
Christy E. Lopez (DC Bar #473612)
Eric W. Treene (NY Bar #2568343)
Sean R. Keveney (TX Bar #24033862)
Jessica C. Crockett (NY Bar #4694972)
Matthew J. Donnelly (IL Bar #6281308)
Attorneys
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Phone: (202) 305-4838
Facsimile: (202) 514-1116
E-mail: sean.keveney@usdoj.gov

Attorneys for the United States

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States,<br><br>Plaintiff;<br><br>v.<br><br>Town of Colorado City, Arizona, *et al.*,<br><br>Defendants. | No. 3:12cv8123-HRH<br><br>**UNITED STATES' RESPONSE TO HILDALE DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT** |

Defendants City of Hildale, Twin City Power ("TCP"), and Twin City Water Authority ("TCWA") moved for partial summary judgment on the United States' claim, brought under Section 3614(a) of the Fair Housing Act ("FHA"), 42 U.S.C. § 3614(a), that they engaged in a pattern or practice of housing discrimination. The City of Hildale's motion and TCWA's motion are without merit and should be denied.[1]

---

[1] Twin City Power's ("TCP") motion is also without merit, but the United States does not oppose that motion.

1

## I. BACKGROUND

The United States initiated this action on June 21, 2012, alleging that Defendants engaged in a long-standing pattern or practice of discrimination on the basis of religion. *See* Compl. ¶¶ 2, 4-5, ECF No.1. With regard to the FHA claim, the United States alleged, among other things, that Defendants denied residential water and utility service to non-FLDS individuals on the basis of religion, refused to issue building permits on the basis of religion, and used an alleged water shortage as a pretext for discrimination in housing on the basis of religion. 42 U.S.C. §§ 3601-3619. *See* Compl. ¶¶ 36-40.

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the evidence and evidentiary inferences are to be viewed in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Furthermore, in cases such as this, where the United States relies on "the *Arlington Heights* factors to demonstrate discriminatory intent through direct or circumstantial evidence, the [United States] need provide 'very little such evidence . . . to raise a genuine issue of fact . . . ; any indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by a fact-finder.'" *Pacific Shores Properties v. City of Newport Beach*, 730 F.3d 1142, 1158-59 (9th Cir. 2013), *cert. denied*, 135 S.Ct. 436 (U.S. Nov. 3, 2014) (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996)); *see also Save Our Valley v. Sound Transit*, 335 F.3d 932, 962 (9th Cir. 2003) ("Discovering discriminatory intent [ ] is a fact-intensive process . . . .").

### III. THE UNITED STATES' REQUEST FOR INJUNCTIVE RELIEF IS NOT MOOT.

#### A. The *Cooke* Injunction Does Not Moot the United States' Request for Injunctive Relief.

The Hildale Defendants claim that the entry of the *Cooke* injunction renders the United States' request for injunctive relief moot. That claim is without merit. The United States seeks broad injunctive relief to remedy a long-standing pattern or practice of discrimination by a public institution. The *Cooke* injunction does not moot that demand.

A case becomes moot where "changes in the circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *West v. Sec'y of the Dep't of Transp.*, 206 F.3d 920, 925 n.4 (9th Cir. 2000) (internal citations omitted). There are no changed circumstances here that moot the United States' request for injunctive relief.

The Hildale Defendants' argument on this point is premised entirely on the notion that the *Cooke* injunction is coterminous with the injunctive relief the United States seeks here. That premise is false. *See* Defendants' Motion at 4 ("[T]he relief requested by [the United States] in the present case is identical to the injunctive relief already granted in *Cooke* . . . ."). The Hildale Defendants misapprehend the relief requested in the United States' complaint. Thus, in support of their argument, they quote paragraphs (b)(i) through (iii) of the United States' prayer for relief, which request an order enjoining the Defendants from violating three specific provisions of the FHA, namely Sections 3604(a) and (b) and Section 3617. *See* Compl. ¶¶ 17-18. They then compare that request for relief to the *Cooke* injunction and contend the two are identical. Defendants' Motion at 4. What the Defendants fail to point out is that the United States also seeks an order that requires the Defendants to take specific steps to remedy the effects of past discriminatory conduct. Specifically, the United States asked for an order:

> [E]njoining Defendants from failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory or otherwise unlawful conduct in the future and to eliminate, to the extent practicable, the effects of Defendants' discriminatory or otherwise unlawful conduct.

Compl.¶ 18. Such a request goes beyond the relief granted in the *Cooke* injunction. The *Cooke* injunction is strictly proscriptive, directing the Defendants to avoid violating provisions of the FHA. The United States, on the other hand, seeks an injunction that is both proscriptive and prescriptive, directing the Defendants not only to avoid future violations of the FHA, but also to take specific steps necessary to remedy years of discriminatory conduct and to establish procedures that will guard against repeated violations. Moreover, the United States was not a party to the *Cooke* case, and does not have standing to enforce the injunction entered in *Cooke*.

In requesting an injunction that remedies past discrimination and prevents future discrimination, the United States seeks detailed and comprehensive relief that goes beyond what was ordered in the *Cooke* case. Such relief is appropriate in civil rights cases,[2] and has been used to redress civil-rights violations in the areas of education,[3] voting,[4] and prisons,[5] as well as housing. *See Groome Res. Ltd., L.L.C. v. Parish of Jefferson*, 234

---

[2] *See, e.g.*, *Young v. Pierce*, 640 F. Supp. 1476, 1483 (E.D. Tex. 1986) (requiring HUD to dismantle the system of racial segregation in publicly funded housing in East Texas), *vacated and remanded on other grounds*, 822 F.2d 1368 (5th Cir. 1987); *Paralyzed Veterans of America v. Ellerbe Becket Architects & Engineers*, 950 F. Supp. 393, 405 (D.D.C. 1996) (ordering the production of a retrofit plan under the Americans with Disabilities Act).

[3] See *Milliken v. Bradley*, 433 U.S. 267 (1977).

[4] See *United States v. Blaine County*, 363 F.3d 897, 901 (9th Cir. 2004).

[5] *See, e.g.*, *Brown v. Plata*, 131 S. Ct. 1910, 1931 (2011) (noting, in a PLRA case, that "[w]hen a court attempts to remedy an entrenched constitutional violation through reform of a complex institution, such as [a] prison system, it may be necessary in the ordinary course to issue multiple orders directing and adjusting ongoing remedial efforts."); *Glover v. Johnson*, 138 F.3d 229, 234 (6th Cir. 1998).

F.3d 192, 197 (5th Cir. 2000) (affirming a district court injunction issued pursuant to the FHA); *see also, e.g.*, *Green v. McKaskle*, 788 F.2d 1116, 1123 (5th Cir. 1986) (collecting cases and noting that district courts possess the authority to "develop[ ] the broad remedial decrees often necessary in civil rights actions"). Indeed, "the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 126–7 (5th Cir. 1973). In the context of the FHA, courts may award affirmative injunctive relief even when there is no showing of current FHA violations. *See United States v. DiMucci*, 879 F.2d 1488, 1499 (7th Cir. 1989). Therefore, the appropriate point for the United States to elaborate on, and for the Court to consider, a request for proscriptive remedial relief is after a finding of liability under the FHA. *See United States v. Collier*, No. 08CV686, 2010 WL 3881381, at *14 (W.D. La. Sept. 28, 2010) (addressing the Government's request for injunctive relief, including "mandatory education," after making a finding of liability).

None of the cases cited by the Hildale Defendants—*Eggers*, *Hood*, or *Krinks*—suggests that the United States' request for broad injunctive relief to remedy a pattern or practice of discrimination is mooted by the existence of an earlier, more limited injunction. None involved a civil-rights enforcement action brought by the United States seeking a broad injunction to prohibit future discrimination by an institutional defendant.

In *Hood v. Keller*, 229 F. Appx. 393 (6th Cir. 2007), the Sixth Circuit affirmed the dismissal as moot of a claim that a state permitting ordinance was unconstitutional where the Sixth Circuit had earlier concluded that the ordinance violated the First Amendment. The plaintiff, however, was not seeking broad, affirmative relief, but simply an order prohibiting state officials from applying the ordinance against him in the future. *Id.* at 398-99. *Eggers* is also distinguishable. *See Eggers v. City of Key West, Fla.*, No. 05CV10093, 2008 WL 5070261 (S.D. Fla. Nov. 25, 2008). In concluding that a state-court injunction prohibiting the defendant's conduct mooted the plaintiff's request for a

5

federal-court injunction, the *Eggers* court did reject the argument that the claim survived because the plaintiff sought an order compelling the Defendant to take "affirmative remedial steps." *Id.* at \*6-7. *Eggers*, however, did not involve a pattern-or-practice action by the United States to remedy years of institutionalized, discriminatory behavior. *Id.* at \*7. Finally, in *Krinks v. Haslam*, No. 12CV01095, 2013 WL 1873344 (M.D. Tenn. May 3, 2013), the plaintiffs challenged rules governing public assembly that had already been enjoined by the district court. *Id.* at \*3. The *Krinks* plaintiffs did not request further broad, affirmative relief designed to prohibit similar future conduct. Indeed the *Krinks* court, in holding that the plaintiffs did not have standing to pursue injunctive relief, specifically noted that they had not alleged a pattern of constitutional violations by the Defendant. By contrast, the United States has alleged the Hildale Defendants have engaged in a pattern or practice of housing discrimination and have done so intentionally and in willful disregard of the rights granted by the FHA. *See* Compl. ¶¶ 59, 61. The United States has not yet had an opportunity to present to this Court all the evidence it has gathered to date or to formulate a specific request for detailed, affirmative injunctive relief. In short, none of the cases that the Hildale Defendants cite compels the conclusion that the United States' request for injunctive relief here is moot.

B. <u>There Are Disputed Issues of Fact Regarding Irreparable Harm.</u>

The Hildale Defendants also claim that the United States is not entitled to injunctive relief because it cannot establish irreparable harm. *See* Defendants' Motion at 4. The Hildale Defendants misapprehend both the required showing of irreparable harm in a fair-housing case and their burden on a motion for summary judgment.

To obtain a permanent injunction, a plaintiff must "demonstrate: (1) . . . an irreparable injury; (2) that remedies at law are inadequate to compensate for that injury; (3) a remedy in equity is warranted in light of the balance of hardships between the parties; and (4) that granting a permanent injunction is not contrary to the public interest."

*Alpha Phoenix Indus., LLC v. SCInternational, Inc.,* 12CV1848, 2013 WL 5814850, at *1 (D. Ariz. Oct. 29, 2013).[6] Irreparable harm, however, is presumed where there is a finding of liability under the FHA. *See Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) ("We have held that where a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation."); *Rogers v. Windmill Pointe Village Club Ass'n*, 967 F.2d 525, 528 (11th Cir. 1992) (quoting *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984)) (the showing of irreparable injury to support an injunction "may be presumed from the fact of discrimination and violations of fair housing statutes.").[7] Thus, whether an injunction is warranted under the FHA is an issue to be decided only after a finding of liability. Indeed, upon a finding of liability under the FHA, the burden shifts to the Defendant to establish that an injunction is not appropriate. *See United States v. Balistrieri*, 981 F.2d 916, 934-35 (7th Cir. 1992) (holding that once the United States establishes a pattern or practice of housing discrimination, there is a "presumption that an injunction is appropriate; the defendant can rebut this presumption 'by showing that such relief is not necessary because there is little or no danger of current violations.'"); *see also DiMucci,* 879 F.2d at 1498 (same). The City of Hildale has not moved for summary judgment on the United States' claim that it is liable under the FHA

---

[6] "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).

[7] *See also United States v. Hayes Int'l Corp.*, 415 F.2d 1038, 1045 (5th Cir. 1969). There is some question, following the Supreme Court's holding in *Winter v. Nat'l Resources Def. Council, Inc.*, 555 U.S. 7 (2008), whether this presumption applies in the context of a motion for a *preliminary* injunction. *See Doe v. Samuel Merritt Univ.*, 921 F. Supp. 2d 958, 963 n.2 (N.D. Cal. 2013). The Ninth Circuit, however, has nowhere indicated that the presumption established in *Silver Sage Partners* does not continue to apply where the plaintiff seeks an injunction after establishing liability under a civil rights statute.

for engaging in a pattern or practice of discrimination in violation of 42 U.S.C. § 3614(a). It is therefore both legally inaccurate and premature for Hildale to claim that the United States cannot, at this stage in the litigation, establish irreparable harm.

Furthermore, even if the issue of the appropriateness or scope of an injunction were at issue at summary judgment, the Hildale Defendants have not established that they are entitled to summary judgment on this issue. When bringing a motion for summary judgment, the movant bears the burden of pointing out alleged undisputed facts. *See* Fed. R. Civ. P. 56(c)(1). The movant must point to specific facts, considered undisputed, that establish that the movant is entitled to summary judgment. *See Prof'l Programs Group v. Dep't of Commerce*, 29 F.3d 1349, 1354 (9th Cir. 1994) ("[T]he moving party bears the burden of showing there is an absence of evidence to support an element that the nonmoving party must prove at trial.").[8] The Hildale Defendants cannot meet this burden.

The Hildale Defendants fail to point to undisputed material facts that would show the absence of a dispute of material fact on the issue of irreparable harm. Indeed, as noted above, the Hildale Defendants do not claim that they did not engage in a pattern or practice of discrimination in violation of the FHA. Nor can they. As discussed below and set forth in the attached Statement of Facts, there is substantial evidence that the Defendants engaged in a long-standing pattern or practice of violating the FHA. *See* Part V, *infra*; *see also* United States Statement of Facts in Opposition to Summary Judgment ("US SOF"). Indeed, as the United States pointed out in its motion for partial summary judgment, a jury already concluded that the Hildale Defendants engaged in a pattern or practice of violating the Arizona Fair Housing Act, and as such, Defendants' liability under the FHA should be established in this case as well. *See* United States' Motion for

---

[8] *See also Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); s*ee also* Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by [ ] citing to particular parts of materials in the record . . . .").

8

Partial Summary Judgment at 4, ECF No. 541. The Hildale Defendants advance only the conclusory allegation that the United States "cannot demonstrate that there is a threat of continuing irreparable harm." Defendants' Motion at 5. Without more—without reference to specific, allegedly undisputed material facts—this allegation is insufficient to support summary judgment on the issue of injunctive relief.

### IV. TCWA'S DISSOLUTION DOES NOT EXTINGUISH THE UNITED STATES' FHA CLAIM.

The Hildale Defendants, without citing any legal authority, also move for summary judgment on the United States' claim under the FHA against TCWA on the grounds that TCWA has been dissolved. This argument is also without merit.[9]

It is undisputed that: (1) TCWA is "a non-profit corporation organized under the laws of Utah to operate and maintain the water system in the Cities [of Hildale, Utah, and Colorado City, Arizona];" Hildale Defendants' Answer and Jury Demand at ¶7, ECF No. 44; and (2) that TCWA has been voluntarily dissolved. TCWA's voluntary dissolution, however, is of no import. The United States' claim against TCWA is not extinguished by reason of TCWA's dissolution.

Utah's Revised Non-Profit Corporation Act specifically provides that "[d]issolution of a nonprofit corporation does not . . . abate or suspend a proceeding pending by or against the nonprofit corporation on the effective date of dissolution." Utah Code § 16-6a-1405.[10] The dissolution of TCWA, which took place after the filing of this lawsuit, *see*

---

[9] As noted above, the United States does not oppose TCP's motion for summary judgment. The individuals injured by TCP's conduct have been fully compensated. Furthermore, the United States concedes that its demand for injunctive relief against both TCP and TCWA is rendered moot by the dissolution of those entities. As explained below, however, the United States' claim against TCWA under the FHA, and the related demand for damages and a civil penalty are not moot and survive summary judgment.

[10] Utah law further provides that a claim may be enforced against a dissolved, non-profit corporation "to the extent of its undistributed assets" and "if the assets have been distributed in liquidation, against any person, other than a creditor of the nonprofit

9

Defendants' Statement of Facts at ¶8 ("Hildale SOF"), ECF No. 549, therefore, has no legal effect on the United States' pending claim. Each Defendant was properly named; each may be found liable; and each one is potentially liable to pay a civil penalty under the FHA, s*ee* 42 U.S.C. § 3614(d)(1)(C). TCWA should not be dismissed based on its voluntary dissolution.[11] *Cf. United States v. High Cntry. Broadcasting, Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (citing the Arizona corporate dissolution law for the proposition that a claim survives dissolution).

## V. SUMMARY JUDGMENT ON THE UNITED STATES' FHA CLAIM AGAINST TCWA IS NOT APPROPRIATE.

Finally, the Hildale Defendants assert that TCWA is entitled to summary judgment on the United States' claim that TCWA engaged in a pattern or practice of discrimination in violation of 42 U.S.C. § 3614(a). This argument too is without merit.

### A. The United States Is the Only Plaintiff and Has Brought a Single FHA Claim.

First, the Hildale Defendants misapprehend the nature of the United States' claim. They argue that the *Cooke* judgment moots the "claims" of identified aggrieved persons. *See* Defendants' Motion at 6. Individual aggrieved persons, however, are not parties to this action and do not have legal "claims" in this lawsuit. This case involves a single FHA claim by the United States.

The United States has brought a single claim, pursuant to 42 U.S.C. § 3614(a), alleging that the Defendants, including TCWA, engaged in a pattern or practice of

---

corporation, to whom the nonprofit corporation distributed its property." Utah Code §16-6a-1408.

[11] To the extent the United States prevails on its damages demand on behalf of identified, aggrieved persons pursuant to 42 U.S.C. § 3614(d)(1)(B) (authorizing the Attorney General to seek monetary damages for aggrieved persons), no Defendant will be "fined twice" with respect to that damages award. The Defendants' liability for any damages award under the FHA is joint and several. *See Meyer v. Holley*, 537 U.S. 280, 285 (2003) (holding that a claim under the FHA sounds in tort and that traditional tort-related rules therefore apply); *Phillips v. Hunter Trails Commn'y Assn.*, 685 F.2d 184, 190 n.5 (7th Cir. 1982) (FHA defendants are jointly and severally liable); *Whyte v. Alston Mgmt. Inc.*, No. 10CV81041, 2012 WL 11789773, at *1 (S.D. Fla. Apr. 11, 2012) ("joint and several liability can apply in FHA cases").

violating Sections 3604(a)[12] and (b)[13] and Section 3617[14] of the FHA on the basis of religion. *See* Compl. ¶ 59; *see also United States v. Hurt*, 676 F.3d 649, 652 (8th Cir. 2012) (holding that a pattern-or-practice FHA claim by the United States is a single claim). The United States may prevail on that claim by showing either (1) that TCWA engaged in a pattern or practice of discrimination on the basis of religion; or (2) that TCWA denied rights granted by the FHA to a group of persons, which denial raises an issue of general public importance. *See* 42 U.S.C. § 3614(a).[15] The United States may then seek to recover damages on behalf of individual "aggrieved persons,"[16] who were injured by the Defendants' discriminatory conduct.[17] Indeed, this Court has previously recognized that the United States is the only party asserting causes of action in this case. *See* Order at 1 (Nov. 29, 2012), ECF No. 38.

    B. <u>Summary Judgment is not Appropriate Because There Are Disputed Issues of Material Fact Regarding TCWA's Liability under the FHA.</u>

Summary judgment is also inappropriate on the United States' FHA claim against TCWA because there are numerous disputed issues of material fact.

As an initial matter, TCWA has not carried its burden under Rule 56(c)(1). It has failed to point to specific facts, considered undisputed, establishing that the United States

---

[12] 42 U.S.C. § 3604(a) (prohibiting the denial of housing, or the making of housing unavailable, because of religion).

[13] 42 U.S.C. § 3604(b) (prohibiting discrimination in the terms, conditions, or privileges of the sale or rental of a dwelling because of religion).

[14] 42 U.S.C. § 3617 (prohibiting coercing, intimidating, or interfering with a person on account of his exercising, or encouraging another to exercise, a right protected by the FHA).

[15] *See United States v. Hunter*, 459 F.2d 205, 218 n.17 (4th Cir. 1972) (holding that a Section 814(a) claim may be based on violation of rights granted by the FHA to a group of persons); *United States v. Northside Realty Assocs.*, 474 F.2d 1164, 1168 (5th Cir. 1973) (holding that what constitutes an issue of general public importance under the FHA is a question reserved to the executive branch).

[16] *See* 42 U.S.C. § 3602(i) (defining aggrieved persons).

[17] *See id.* at § 3614(d)(1)(B) (authorizing the court to award monetary damages to "persons aggrieved")

11

cannot prove TCWA's liability for a pattern or practice of housing discrimination. *See* Fed. R. Civ. P. 56(c)(1); *see also Professional Programs Group*, 29 F.3d at 1354. Although TCWA makes the conclusory allegation that the United States "has produced no evidence that [it] [has] engaged in a pattern or practice of religious discrimination," Defendants' Motion at 6, it focuses its entire argument on the issue of damages for certain aggrieved persons. TCWA nowhere points to the absence of specific disputed material facts on the elements necessary to establish of a violation of 42 U.S.C. § 3614(a). As noted above, conclusory allegations are insufficient to support a motion for summary judgment. Given that TCWA has been found liable in a related case for a pattern or practice of housing discrimination, this omission is not surprising. *See* United States' Motion for Partial Summary, ECF No. 541.

In any event, there is ample evidence that TCWA engaged in a pattern or practice of religious discrimination. To establish that TCWA engaged in a pattern or practice of discrimination, the United States must show that TCWA's conduct was not just an isolated event or an accidental, unintentional occurrence, but a regular practice or policy to engage in actions in violation of the FHA. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 n.16, 360-62 (1977) (Title VII) (a pattern or practice is established where there is evidence that discrimination was the defendant's standard operating procedure); *Balistrieri*, 981 F.2d at 929. The United States can do this by showing a series of incidents where TCWA engaged in intentional discrimination in violation of the FHA, or that TCWA maintained a discriminatory policy. Indeed, evidence that the Defendant maintained a discriminatory policy alone is sufficient to establish a pattern or practice of discrimination. *See United States v. Garden Homes Mgmt. Corp.*, 156 F. Supp. 2d 413, 423 (D.N.J. 2001) ("Proof that a party adopted a discriminatory policy satisfies the Fair Housing Act's pattern and practice requirement.").[18] Finally, to establish that TCWA's

---

[18] *See also United States v. City of Chicago Heights*, 161 F. Supp. 2d 819, 842–43 (N.D. Ill. 2001) ("The Attorney General may demonstrate the existence of a 'pattern or practice' of discrimination [under the FHA] by showing the existence of a discriminatory policy alone."); *United States v. City of Parma*, 494 F. Supp. 1049, 1095 (N.D. Ohio 1980) ("The existence of a discriminatory policy, statute, or ordinance is itself a discriminatory pattern or practice."); *United States v. Hughes Mem'l Home*, 396 F. Supp.

actions or its adoption of a policy was motivated by intent to discriminate on the basis of religion, the United States may rely on "such circumstantial and direct evidence of intent as may be available" to prove TCWA's discriminatory intent. *Village of Arlington Heights* v. *Metro. Hous. Dev. Corp.*, 429 U.S. 252, 255-56 (1977).

The Supreme Court in *Arlington Heights* set forth a non-exclusive, multi-factor guideline for helping determine whether a defendant's actions were motivated by discriminatory intent. Under *Arlington Heights*, a court analyzes "whether the defendant's actions were motivated by a discriminatory purpose by examining (1) statistics demonstrating a 'clear pattern unexplainable on grounds other than' discriminatory ones, (2) '[t]he historical background of the decision,' (3) '[t]he specific sequence of events leading up to the challenged decision,' (4) the defendant's departures from its normal procedures or substantive conclusions, and (5) relevant 'legislative or administrative history.'" *Pacific Shores Properties*, 730 F.3d at 1158-59 (quoting *Arlington Heights*, 429 U.S. at 266).

As explained below, there is substantial evidence that TCWA engaged in a pattern or practice of violating the FHA on the basis of religion. TCWA adopted and enforced a moratorium on granting new water connections that had the purpose and effect of denying culinary water service to individuals who were not members of the FLDS religion. Such conduct violates the FHA. *See Middlebrook v. City of Bartlett*, 341 F. Supp. 2d 950 (W.D. Tenn. 2003) (actions that result in denial of residential water service on the basis of a protected class violate the FHA).[19]

The provision of municipal services in the Cities takes place against the backdrop of the presence of the FLDS Church and the United Effort Plan Trust. Indeed, there is

---

544, 551 (W.D. Va. 1975) ("The demonstrated existence of a policy of discrimination is sufficient to constitute the pattern and practice . . . ."); *cf. United States v. Gregory*, 871 F.2d 1239, 1243 (4th Cir. 1989) (holding, in Title VII case, that "if the admissions [of a policy of discrimination] are credited, the . . . violation has been proven.").

[19] *See also United Farmworkers of Florida Hous. Project v. City of Delray Beach*, 493 F.2d 799 (5th Cir. 1974) (failure to provide water and sewer hookup may violate the FHA); *Kennedy Park Homes Ass'n, Inc. v. City of Lackawanna*, 436 F.2d 108, 114 (2d Cir. 1970) (municipality's refusal to permit sewer hookup violated the FHA).

evidence that the municipal functions of the City of Hildale and the Town of Colorado City are controlled, in large part, by the FLDS Church. *See* US SOF ¶¶ 1-4.

As explained in the attached Statement of Facts, the majority of the residential housing subject to the Cities' jurisdiction is located on real property held by the United Effort Plan Trust ("UEP Trust" or "the Trust"). *See id.* ¶¶ 5-6. Prior to 2006, the UEP Trust was controlled by the FLDS Church. *See id.* ¶ 10. In 2006, however, a Utah probate court reformed the Trust and placed it in the control of a court-appointed Special fiduciary charged with administering it without regard to religion. *See id.* ¶ 11. That Special Fiduciary began efforts to develop and allocate housing in the Cities, located on Trust property, for qualified, non-FLDS beneficiaries of the Trust. *See id.* ¶ 12. Those efforts were opposed by Warren Jeffs, by the FLDS Church, and by Church members, many of whom, while also serving as City officials, signed a declaration stating their opposition to the reformation of the Trust. *See id.* ¶¶ 9, 12-14, 20.

In July of 2007 the Cities, acting through TCWA, adopted a new, unwritten water policy under which TCWA refused to provide a new culinary water connection unless the applicant provided additional water to the Cities' supply. *See id.* ¶ 17, 21. The Cities did not put their water policy in writing or adopt it as a municipal ordinance until three years later and after they were sued by the State of Arizona. *See id.* ¶ 22.

Adopting such an ordinance—an effective moratorium on new water connections—is a drastic measure. *See id.* ¶ 23. There was no actual water shortage in the Cities that would justify such a moratorium. *See id.* ¶ 24. Indeed, rather than basing their moratorium on an actual water shortage, there is direct evidence, provided by a former high-ranking FLDS official, that the Defendants adopted this policy as part of a conspiracy with the FLDS Church to use culinary water connections as a pretext for preventing non-FLDS individuals from receiving water connections. *See id.* ¶¶ 16-20. When the Mayor of Colorado City was confronted with this specific allegation in his deposition in this case, he refused to answer based on the Fifth Amendment. *See id.* ¶¶ 18-19. When the Mayor was asked whether a water shortage ever existed in the Cities

14

from 2005 to the present, he again pleaded the Fifth Amendment. *See id.*[20] Even setting this evidence aside and assuming, *arguendo*, that there was an actual shortage, the Cities and TCWA made no significant efforts to address the shortage by developing new water sources until after they were found liable in the *Cooke* case. *See id.* ¶¶ 32, 36-40.

Moreover, even if the moratorium was necessary, which it was not, the Defendants and TCWA implemented it in a discriminatory manner. During the time period between when TCWA allegedly adopted a new water policy in 2007 and when the Defendants were found liable in the *Cooke* case, the Defendants, acting through TCWA and citing their water moratorium, refused to provide a water connection to non-FLDS members Ronald and Jinjer Cooke, John Cook, Patrick Barlow, and Richard Holm. *See id.* ¶¶ 25-27. At the same time, the Cities and TCWA approved water connections to (1) twelve apartments; (2) three large homes; and (3) a large warehouse and distribution center. *See id.* ¶¶ 28, 30. The developer of these properties, Twin City Improvement Association ("TCIA"), was closely associated with the FLDS Church. *See id.* TCIA, however, failed to comply with the provisions of the water policy that the Cities and TCWA imposed on the non-FLDS individuals seeking water. *See id.* ¶ 31.

This evidence, particularly when all inferences from it are drawn in the United States' favor, indicates that there are disputed issues of material fact regarding the existence of a pattern of conduct establishing that TCWA intended to discriminate on the basis of religion by denying water to non-FLDS individuals. First, the effect of the Cities' 2007 water policy and 2010 ordinance fell primarily on individuals receiving housing benefits under the reformed Trust, individuals likely to be non-FLDS members. *See* US SOF ¶¶ 9, 12-13. Second, the historical background of the municipal governments and TCWA indicates that they were controlled by the FLDS Church. Third, the timing of the water moratorium, coming after the reformation of the Trust and after FLDS Church directives to oppose the Trust, indicates that TCWA's conduct was likely directed by the

---

[20] An adverse inference may be drawn in civil litigation against a party who relies on the Fifth Amendment to refuse to answer questions and where there is independent evidence of the fact to which an individual refuses to answer. *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.2d 1258, 1264 (9th Cir. 2000); *see also Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 F. App'x 444, 446 (5th Cir. 2013).

15

FLDS Church and motivated by discriminatory intent. Fourth, it is clear that the Cities and TCWA departed from normal procedures in adopting and implementing their moratorium: (1) there was no clear justification for the water moratorium; (2) the Defendants waited until they were sued by the State of Arizona, three years after they adopted the moratorium, to put their policy in writing and adopt it as an ordinance; and (3) they made no reasonable efforts to address the alleged shortage that prompted such extraordinary municipal action. *See, e.g.,* US SOF at ¶¶ 22-24, 38-43. Finally, as noted above, there is direct evidence that the alleged water shortage and resulting moratorium was developed as a pretext for discrimination. *Id.* at ¶ 17. In other words, there is substantial evidence that TCWA engaged in a pattern or practice of violating the FHA by discriminating on the basis of religion.

Rather than pointing to the alleged absence of material facts regarding TCWA's liability for a pattern or practice of discrimination, TCWA focuses its motion for summary judgment on the allegation that not all the aggrieved persons identified by the United States suffered damages as a result of TCWA's conduct. Initially, whether the United States can establish a pattern-or-practice claim does not depend on a showing that each aggrieved person's harm is related to TCWA's conduct. As set forth above, there is substantial disputed evidence to support a pattern-or-practice claim. Indeed, even if there were no aggrieved persons, the United States would be entitled to a civil penalty upon proving a pattern or practice of discrimination.

Contrary to defendants' sweeping assertion, however, damages incurred by five of the identified aggrieved are directly attributable to the discriminatory denial of water services: Ronald and Jinjer Cooke,[21] Patrick Barlow, John Cook, and Richard Holm all suffered damages, including nominal damages and emotional-distress damages, because of TCWA's conduct.[22] Thus, contrary to TCWA's motion, there are disputed issues of

---

[21] Ronald and Jinjer Cooke were fully compensated for their injuries as a result of the judgment entered in *Cooke v. Town of Colorado City, et al.*, 2:10-cv-0810 (D. Ariz.), and the United States no longer intends to seek monetary damages for them at trial in this case.

[22] The United States does not dispute that of the identified aggrieved persons, 8 suffered injuries not directly attributable to the denial of culinary water service. Andrew

16

material fact regarding whether, and to what extent each of these individuals is entitled to compensation as a result of the denial of municipal water services. As set forth in the attached Statement of Facts, each of these individuals was denied a water connection or overcharged for water for at least some period of time and each suffered damages as a result. *See* US SOF ¶¶ 25-27.

Finally, TCWA claims that the United States is not entitled to recover damages for Patrick Barlow, John Cooke, and Richard Holm on the grounds that each of these individuals' current need for a water connection was resolved through the final judgment in the *Cooke* case. This argument is also without merit. That these three individuals either received or no longer require water connections does not preclude the United States from recovering monetary damages to compensate them for the discrimination they suffered.

It is well established that a demand for monetary damages is not rendered moot even where the underlying harmful practice or policy has ceased. *See Boag v. MacDougall*, 454 U.S. 364, 364 (1982); *Memphis Light, Gas, and Water Div. v. Craft*, 436 U.S. 1, 8 (1978). This principle is equally applicable in the context of an FHA action. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 371 (1982) ("Given respondents' continued active pursuit of monetary relief, this case remains 'definite and concrete, touching the legal relations of parties having adverse legal interests.'") (quoting *Aetna Life Ins. Corp.* v. *Haworth*, 300 U.S. 227 (1937)).

The State of Arizona did not seek damages for Patrick Barlow, John Cooke, or Richard Holm during the *Cooke* case, and none received damages. *See* Verdicts at 2, 5, *Cooke v. Colorado City, No. 10-cv-8105*, ECF No. 584 (D. Ariz. Mar. 20, 2014) (reflecting an award of damages to Ronald and Jinjer Cooke only). There is no bar, therefore, to the United States seeking to recover damages on behalf of Messrs. Barlow, Cooke, and Holm in this case. All three were injured by TCWA's conduct, and the *Cooke*

---

Chatwin, Christopher and Jesseca Jessop, Willie R. Jessop, Ron Rohbock, Jerold Williams, Elizabeth Wayman, and Isaac Wyler suffered damages arising from the denial or discriminatory provision of police services in connection with housing. *See, e.g., Campbell v. City of Berwyn*, 815 F. Supp. 1138, 1143-44 (N.D. Ill. 1993) (termination of police protection by city violated the FHA).

judgment does not preclude these victims from recovering damages or moot any demand for damages on their behalf.

TCWA has not carried its burden to establish that there are no disputed issues of material fact regarding its liability for engaging in a pattern or practice of housing discrimination in violation of 42 U.S.C. § 3614(a).

## VI. CONCLUSION

For the foregoing reasons, the United States' requests that the Court deny the City of Hildale motion and deny TCWA's motion.

Respectfully submitted this 26th day of January, 2015,

        STEVEN H. ROSENBAUM
        Chief
        Housing and Civil Enforcement Section

        JONATHAN M. SMITH
        Chief
        Special Litigation Section

        R. TAMAR HAGLER
        CHRISTY E. LOPEZ
        Deputy Chiefs

        ERIC W. TREENE
        Special Counsel

        */s/ Sean R. Keveney*
        SEAN R. KEVENEY
        JESSICA C. CROCKETT
        MATTHEW J. DONNELLY
        United States Department of Justice
        950 Pennsylvania Avenue, NW
        Washington, DC 20530
        Phone:   (202) 305-4013
        Facsimile:   (202) 514-1116
        E-mail: sean.r.keveney@usdoj.gov

# **CERTIFICATE OF SERVICE**

I certify that on January 26, 2015, I caused a copy of the foregoing motion to be sent via the Court's ECF system to the following:

Jeffrey C. Matura
Asha Sebastian
Graif Barrett & Matura, P.C.
1850 North Central Avenue, Suite 500
Phoenix, Arizona 85004
*Attorneys for Defendant Town of Colorado City*

R. Blake Hamilton
Ashley M. Gregson
Durham Jones & Pinegar, P.C.
111 East Broadway, Suite 900
Salt Lake City, Utah 84111
*Attorneys for Defendants City of Hildale, Twin City Water Authority, and Twin City Power*

                                             */s/ Sean R. Keveney*
                                             SEAN R. KEVENEY
                                             Attorney for the United States