R. BLAKE HAMILTON, Utah Bar No. 11395
ASHLEY M. GREGSON, Utah Bar No. 13716
**DURHAM JONES & PINEGAR**
111 East Broadway, Suite 900
Salt Lake City, Utah 84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
bhamilton@djplaw.com
agregson@djplaw.com

Attorneys for Defendants City of Hildale, Utah, Twin City Power and Twin City Water Authority, Inc.

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Town of Colorado City, Arizona; City of Hildale, Utah; Twin City Power; and Twin City Water Authority, Inc.,<br><br>    Defendants. | Case No. 3:12-CV-8123-HRH<br><br>**HILDALE DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON COLLATERAL ESTOPPEL**<br><br>**(Oral Argument Requested)** |

Defendants City of Hildale, Utah, Twin City Power, and Twin City Water Authority (collectively "Hildale Defendants") hereby submit this Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment Based on Collateral Estoppel [Doc. 541]. There exists a genuine issue of material facts, and as a matter of law Plaintiff is not entitled to the judgment it has requested.[1] For these reasons set forth more fully below, this Court should deny Plaintiff's Motion for Partial Summary Judgment.

---

[1] Hildale Defendants join in and incorporate by reference the arguments made by their co-Defendant Colorado City in its Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment. To avoid duplication, Hildale Defendants do not repeat those arguments here.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

The Plaintiff's ("DOJ") Motion is deceiving. By interpreting the *Cooke* Judgment in its very broadest terms, the DOJ attempts to lump its expansive pattern or practice claim into the much narrower claim asserted in *Cooke*. *Cooke v. Town of Colorado City, et al.,* Civil No. 2:10-cv-08105-JAT. It is true that Judge Teilborg found that the Defendants engaged in a pattern or practice of resistance to the full enjoyment of any right granted by the Arizona Fair Housing Act. However, this finding was based upon claims and evidence regarding mainly the denial of services in the form of utilities and building permits. In contrast, the DOJ claims that Defendants violated 42 U.S.C. § 3604(b) through discrimination mainly in their provision of police services through the Hildale/Colorado City Marshal's Office ("CCMO").

The *Cooke* Judgment should not be read to estop Defendants from defending against ***any*** type of pattern or practice that any future plaintiff could bring. By the DOJ's reasoning, a future pattern or practice claim against the Defendants alleging housing discrimination in the form of adopting certain zoning ordinances, or even housing discrimination based upon national origin, could also be subject to collateral estoppel under Judge Teilborg's broad finding. Hildale Defendants suspect that, although it is captioned as a motion for ***partial*** summary judgment, if successful, the DOJ will even attempt to apply the *Cooke* ruling to its 42 U.S.C. § 14141 claim.

This cannot be the case. If the roles were reversed and Defendants prevailed in the *Cooke* case, this Court certainly would not allow Defendants to argue that Judge Teilborg found ***no*** pattern or practice of housing discrimination and therefore the DOJ should be estopped from asserting its claim, even though their evidence and argument are substantially different. This Court should not be deceived into believing that the pattern or practice claims in the *Cooke* case and this case are similar enough to warrant collateral estoppel with respect to liability.

Fairness also dictates that the DOJ should not be allowed to seek collateral estoppel only on the issue of liability but somehow argue that its claims are different enough to warrant a trial on damages and injunctive relief. The DOJ cannot have it both ways. Either its claims are estopped by the *Cooke* Judgment or they are not. If they are, then the DOJ is not entitled to different damages or injunctive relief. For these reasons explained more fully below, this Court should deny the DOJ's Motion.

## II. FACTUAL BACKGROUND.

Plaintiff's Motion omits relevant facts with respect to the similarities, and differences, between this case and the *Cooke* lawsuit.[2] Therefore, Hildale Defendants provide those facts here.

### *Allegations in the Cooke Complaint*

The state law pattern or practice allegations in the *Cooke* Complaint dealt mainly with the issues of discrimination in providing utilities.[3] The *Cooke* Complaint identified only two allegations of retaliation or intimidation with regard to housing rights: the uncovering of pipes in the Cooke's front yard and the accompanying arrest of Seth Cooke for theft of services, and the dispute regarding the building permit to the subject property.[4] The only other allegation of discrimination in the *Cooke* Complaint that was not directly tied to utilities or building permits was the general statement that "Defendants and their agents have treated the governmental agencies that they control as arms of the FLDS religion, and utilized the powers and resources of these municipal entities to exclude non-members of the FLDS, such as the Cookes, from the communities of Colorado City and Hildale."[5] Aside from the theft of services incident, the *Cooke* Complaint contains no direct allegations of housing discrimination committed by the CCMO.

---

[2] Hildale Defendants also object to the DOJ's Motion under Arizona Local Rule 56.1(e), as it fails to cite to paragraphs in the DOJ's statement of facts that support its factual assertions.

[3] Hildale Defendants' Controverted Statement of Facts ("CSOF"), ¶¶ 2-3.

[4] CSOF ¶ 4.

[5] *Id.* ¶ 5

3

*Allegations in the DOJ's Complaint*

The DOJ's Motion omits several facts alleged in its Complaint that do not overlap with facts alleged in *Cooke*. Specifically, in support of its pattern or practice claim, the DOJ alleged housing discrimination in the form of discriminatory police services, including that: the CCMO fails "to provide policing services to non-FLDS individuals on the basis of religion;"[6] the CCMO "selectively enforces laws and regulations against non-FLDS individuals on the basis of religion;"[7] a woman fled from her home in January 2012 and believed that the CCMO would not come to her assistance;[8] the CCMO assists the FLDS church with "surveillance and investigation of non-FLDS members because of religion," including providing information about emergency calls and license-plate information to FLDS security personnel;[9] the CCMO conducted traffic stops upon requests from FLDS members that they determine the identity of the vehicle occupants;[10] the CCMO "deploys its resources to enforce FLDS edicts," including confronting persons about their religious disobedience,[11] confronting a citizen regarding the return of an underage bride in 2000,[12] and killing domestic dogs;[13] the CCMO "fails to cooperate with other law enforcement offices in investigating crimes against non-FLDS individuals or crimes committed by FLDS individuals;"[14] CCMO officers "participated in the building of fences on UEP Trust property;"[15] the CCMO "has consistently disregarded the validity

---

[6] *Id.* ¶ 8.
[7] *Id.* ¶ 9.
[8] *Id.* ¶ 10.
[9] *Id.* ¶ 11.
[10] *Id.* ¶ 12.
[11] *Id.* ¶ 13.
[12] *Id.* ¶ 14.
[13] *Id.* ¶ 15.
[14] *Id.* ¶ 16.
[15] *Id.* ¶ 17.

of Trust-signed occupancy agreements and of legal rulings that guarantee the rights of non-FLDS Trust beneficiaries;"[16] the CCMO "failed to act to stop []FLDS members from putting up [a] fence" on alleged UEP property;[17] the CCMO facilitates "the unlawful evictions of non-FLDS residents" and refuses to "permit non-FLDS individuals to move into properties;"[18] the CCMO arrests non-FLDS individuals without probable cause on the basis of religion;[19] and the CCMO seizes "the property of non-FLDS individuals without due process of law."[20]

### *Evidence Presented at the Cooke Trial*

The DOJ grossly misrepresents the case that the State of Arizona put on at trial to support its pattern or practice claim. First, the DOJ relies only upon factual findings (none of which cite to the trial record) that were proposed by the State of Arizona, challenged and opposed by the Defendants, and ultimately rejected by Judge Teilborg. This is not an appropriate source for facts about the evidence presented at the *Cooke* trial.

Review of the actual case presented at the *Cooke* trial paints a very different picture. The testimony from each and every aggrieved person identified by the State of Arizona to support its pattern or practice claim involved utilities and building permits.[21] Many of those aggrieved parties never even mentioned discriminatory actions by the CCMO. Furthermore, when the State of Arizona presented its evidence at closing arguments, it only mentioned in passing that issues other than water may be relevant to the pattern or practice claim.[22] The State of Arizona only identified disparate arrests for trespass because of religion, and focused the majority of its closing on issues with respect

---

[16] *Id.* ¶ 18.
[17] *Id.* ¶ 19.
[18] *Id.* ¶ 20.
[19] *Id.* ¶ 21.
[20] *Id.* ¶ 22.
[21] *See id.* ¶ 23. The Cookes were also identified as aggrieved parties but their claims regarding the CCMO were limited to the theft of services and building permit issues already discussed.
[22] *Id.* ¶¶ 27-30.

5

to utilities and building permits.[23] Furthermore, the State of Arizona's closing only mentioned allegations of FLDS control over the CCMO with respect to the issue of witness credibility, not to prove any of the elements of a pattern or practice.[24]

### *Evidence Anticipated at the DOJ Trial*

Unlike the State of Arizona, the majority of the aggrieved persons identified by the DOJ claim that they were discriminated against by the CCMO, not with respect to utilities.[25] The DOJ identified 11 new aggrieved individuals that were not identified by the State of Arizona and approximately 83 new witnesses that were not witnesses in the *Cooke* trial. Over a million documents have been produced between the parties, the vast majority of which were not produced in the *Cooke* trial because they contain the CCMO records.

## III. COLLATERAL ESTOPPEL DOES NOT APPLY TO PLAINTIFF'S PATTERN OR PRACTICE CLAIM.

The DOJ wants this Court to believe that its pattern or practice claim is so similar to the pattern or practice claim asserted in *Cooke* that this Court should collaterally estop Defendants from presenting a defense with respect to the merits of that claim. Tellingly, however, the DOJ stops short of requesting claim preclusion, or res judicata, but instead couches its arguments in the form of issue preclusion, or collateral estoppel. This is because the DOJ wants an opportunity to recover more than what was recovered in *Cooke* without having to prove liability. The DOJ itself admits that it still intends to present evidence at trial regarding damages and injunctive relief. If the DOJ's pattern or practice claim really is so similar to that of the *Cooke* case, the DOJ should not be entitled to anything more than what was awarded in *Cooke*.[26] Instead, the DOJ narrows its argument

---

[23] *Id.*

[24] *Id.* ¶ 30.

[25] *Id.* ¶ 33.

[26] Hildale Defendants have argued in their Motion for Partial Summary Judgment that the DOJ's request for injunctive relief with respect to the Fair Housing Act claim is now moot because of the injunction entered by Judge Teilborg. *See* Doc. 548.

to issue preclusion only because it wants to skip the process of proving liability but still try to recover more than what has already been recovered in *Cooke*.[27]

Nevertheless, the DOJ has failed to meet the Ninth Circuit standard for application of offensive non-mutual collateral estoppel because: (a) the DOJ's pattern or practice claim is not identical to the pattern or practice claim asserted in *Cooke*; (b) the DOJ's pattern or practice claim was not actually litigated in the *Cooke* case; (c) the DOJ's pattern or practice claim was not part of Judge Teilborg's final judgment; and (d) collaterally estopping Hildale Defendants from defending against the pattern or practice claim would be unfair. *See Syverson v. IBM*, 472 F.3d 1072, 1078 (9th Cir. 2007).[28]

### a. The pattern or practice issues in the *Cooke* case and this case are not identical.

The first required element for offensive non-mutual collateral estoppel is that the parties had a full and fair opportunity to litigate the identical issue in a previous action. *Id.* The DOJ bears the burden of proving that the issues are identical. *Little v. United States*, 794 F.2d 484, 487 (9th Cir. 1986). "Similarity between issues is not sufficient; collateral estoppel is applied only when the issues are *identical*." *Id.* (emphasis in original). The Ninth Circuit considers four factors in determining whether an issue is identical:

(1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?

(2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?

---

[27] Even though the DOJ has identified aggrieved persons that were not identified in *Cooke*, those aggrieved persons have no viable claims for monetary damages (*see* Colorado City's Motion for Partial Summary Judgment, Doc. 544) and even if they did, if the *Cooke* case really was asserting the same pattern or practice claim asserted here by the DOJ, the DOJ has given no explanation for why those aggrieved parties did not attempt to assert their claims there instead.

[28] With respect to the fourth element identified in *Syverson*, Hildale Defendants acknowledge that all of the Defendants in this action were also defendants in the *Cooke* lawsuit.

(3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?

(4) how closely related are the claims involved in the two proceedings?

*Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995) (internal quotations omitted). The DOJ's pattern or practice claim fails to meet three of these elements.

### 1. *The overlap of evidence and argument between the two pattern or practice claims is not substantial.*

First, the overlap of evidence and argument between the two pattern or practice claims is not substantial. Hildale Defendants do not deny that some overlap exists between the two claims because both the *Cooke* Complaint and the DOJ's Complaint allege that the Defendants engaged in a pattern or practice of religious discrimination by denying or delaying utilities services based on religion. However, the vast majority of the DOJ's claims with respect to housing discrimination committed by the CCMO were not alleged, presented, or argued in the *Cooke* case.

A helpful indicator of this fact is the types of claims made by the aggrieved parties in each case. All of the State of Arizona's aggrieved parties claimed housing discrimination in the form of denial of utilities or other housing services. Many of them failed to even mention the CCMO. The DOJ identified 16 aggrieved parties, all of whom have information about or claim to be victims of discrimination at the hands of the CCMO. Only 7 of the DOJ's aggrieved parties claim discrimination with respect to utilities. Furthermore, the closing statement of the State of Arizona shows that their case was mostly dealing with utilities. The overlap of evidence and argument in the two pattern or practice claims consists of, at most, the utilities and building permit claims, and the claim that the CCMO made trespass arrests in a discriminatory fashion (the sole police practice arguably identified as part of a pattern or practice in *Cooke*). The vast majority of the DOJ's allegations regarding the CCMO's housing discrimination, which constitute a

8

substantial portion of the DOJ's pattern or practice claim, were never even mentioned, let alone proven, in *Cooke*.

> *2. The Cooke pretrial preparation and discovery could not have been reasonably expected to encompass the DOJ's pattern or practice claim.*

The *Cooke* Complaint made very few allegations of housing discrimination by the CCMO, and focused its pattern or practice claim on allegations of discrimination in the provision of utilities and other housing services. A reasonable person, reading the *Cooke* Complaint, could not expect that the pretrial preparation and discovery in the *Cooke* case would encompass the DOJ's pattern or practice claim. For instance, nothing in the *Cooke* Complaint would indicate that the *Cooke* parties would undertake fact and expert discovery on police practices with respect to releasing license plate information, or seizing property without due process of law. Not surprisingly, no discovery of that type took place in *Cooke*. In this case, however, such issues have dominated discovery.

> *3. The two pattern or practice claims are not closely related.*

The two pattern or practice claims are not closely related. As explained above, while there exists some overlap between the evidence and arguments of the two claims, the DOJ claim raises a substantial amount of evidence and arguments that were not raised in *Cooke*. Furthermore, that evidence and argument is substantively different from much of the evidence presented at the *Cooke* trial. The factual scenarios here mostly involve police practices, not water policies. Indeed, the parties in this action have identified several experts to address standard police practices, not just to determine whether the CCMO violated 42 U.S.C. § 14141, but also to determine whether the actions of the CCMO were part of a pattern or practice of housing discrimination. For these reasons, the DOJ cannot claim that its pattern or practice claim is closely related to that of the *Cooke* case.

### b. The pattern or practice issue raised by the DOJ was not actually litigated in the *Cooke* case.

The trial record reflects that the *Cooke* case did not actually litigate the DOJ's pattern or practice issue. As explained above, the pattern or practice claim that was litigated in *Cooke* makes up only a small fraction of the pattern or practice claim asserted by the DOJ here. The majority of the evidence and arguments that the DOJ raises in support of its pattern or practice claim were never raised in the *Cooke* case. This Court therefore cannot use the *Cooke* case to foreclose Defendants of their opportunity to defend themselves against this new pattern or practice claim when they have had no opportunity to do so before.

### c. The pattern or practice issue raised by the DOJ was not part of the *Cooke* judgment.

Judge Teilborg's judgment made no finding regarding whether the actions of the CMMO constituted a pattern or practice of housing discrimination. The Judgment merely found that the defendants had engaged in a pattern or practice of housing discrimination based upon religion. Collateral estoppel should not be applied in circumstances where "the previous decision could have been rationally grounded on an issue other than that which the [movant] seeks to foreclose from consideration." *Little*, 794 F.2d at 487. Even if Judge Teilborg had made more detailed factual findings regarding the pattern or practice, they could not have amounted to the DOJ's pattern or practice claim because most of the facts alleged by the DOJ were never mentioned at the *Cooke* trial. Furthermore, any evidence regarding general police misconduct or FLDS control of the Cities was presented in *Cooke* usually not to prove that the police actions themselves were discriminatory, but rather as circumstantial evidence to challenge credibility. Therefore, the DOJ's pattern or practice claim was not decided in the *Cooke* judgment.

### d. Collaterally estopping Hildale Defendants from defending against the DOJ's pattern or practice claim would be unfair.

The fairness factors identified by *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330-31 (1979) are not an exhaustive list. *Id.* at 331 (in cases where "either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, the trial judge should not allow the use of offensive collateral estoppel"). The DOJ argues that granting collateral estoppel and finding Defendants liable for its pattern or practice claim would make trial more efficient because the parties would not have to call their water experts. However, the trial the DOJ describes would likely be no more efficient than the one that can be reasonably anticipated today. Even if the DOJ does not have to call its water experts to testify regarding whether or not the water shortage identified by Defendants was pretext for discrimination, if the DOJ truly intends to present evidence at trial that the Defendants acted intentionally or with reckless disregard for federal rights,[29] the Defendants may still need the testimony of the water experts to show that their belief in the water shortage amounted to mere negligence. Therefore, the DOJ's argument regarding efficiency of trial fails.

Furthermore, granting partial summary judgment on the issue of liability for the DOJ's pattern or practice claim, but not on the issue of injunction would be unfair. The DOJ cannot assert that its pattern or practice claim is so similar to that of the *Cooke* case that offensive collateral estoppel applies, but in the same breath claim that it should be entitled to different injunctive relief. As Hildale Defendants have argued in their Motion for Partial Summary Judgment, the *Cooke* case granted the injunctive relief requested by the DOJ here with respect to the pattern or practice claim. The DOJ has identified no reason why its pattern or practice claim is different enough from the pattern or practice

---

[29] While the DOJ avoids identifying why it would want to present evidence on this issue, it appears to Hildale Defendants that the DOJ envisions presenting evidence to support an award of punitive damages against the Cities. However, municipalities are not subject to punitive damages under the Fair Housing Act. *See Inland Mediation Bd. V. City of Pomona*, 158 F.Supp.2d 1120, 1158 (C.D. Cal. 2001) (holding that Congress has not authorized awards of punitive damages against municipalities under the FHA).

11

claim in *Cooke* to entitle it to more injunctive relief than was already awarded in *Cooke*. Indeed, the *Cooke* judgment contains broad language that enjoins the CCMO from engaging in any housing discrimination. Allowing the DOJ to pick and choose which parts of the *Cooke* outcome it would like to take advantage of here is unfair to Defendants.

Applying collateral estoppel to the DOJ's pattern or practice claim would also be unfair because the DOJ will attempt to use such a ruling for more than just their housing claim. The DOJ's Complaint incorporates all of the conduct alleged under its 42 U.S.C. § 14141 claim into its housing discrimination claim, stating that, in addition to violating § 14141, the CCMO's actions also violated federal housing rights.[30] Therefore, Hildale Defendants anticipate that at trial the DOJ will argue that its § 14141 claim is subsumed by its pattern or practice claim. If this Court grants the DOJ's motion on collateral estoppel grounds, the DOJ will tell the jury that liability has already been established for its pattern or practice claim *and* its § 14141 claim, and all the jury must decide is damages. This would unfairly deprive Defendants of an opportunity to defend themselves against not only the DOJ's factual allegations of police misconduct, but also an entirely separate cause of action for which they have never been sued before. For these reasons, collateral estoppel should not apply to the DOJ's pattern or practice claim.

## **CONCLUSION**

The DOJ's pattern or practice claim does not meet the elements necessary for offensive non-mutual collateral estoppel. For these reasons, this Court should deny Plaintiff's Motion for Partial Summary Judgment Based on Collateral Estoppel.

---

[30] CSOF ¶ 7.

SUBMITTED this 26th day of January, 2015.

**DURHAM JONES & PINEGAR**

By /s/ R. Blake Hamilton
 R. Blake Hamilton
 Ashley M. Gregson
 Attorneys for Defendants City of Hildale, Utah Twin City Power and Twin City Water Authority, Inc.

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of January, 2015, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF system for filing and transmittal of Notice of Electronic filing to the following CM/ECF registrants:

R. Tamar Hagler
Eric W. Treene
Lori K. Wagner
Sean R. Keveney
Jessica C. Crockett
Anika Gzifa
Matthew J. Donnelly
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Attorneys for Plaintiff United State of America

Jeffrey C. Matura
Asha Sebastian
Graif Barrett & Matura, P.C.
1850 North Central Avenue, Suite 500
Phoenix, Arizona 85004
Attorneys for Defendant Town of Colorado City, Arizona

                                        /s/ Sarah Peck
                                        Assistant

SLC_2052197