R. BLAKE HAMILTON, Utah Bar No. 11395
ASHLEY M. GREGSON, Utah Bar No. 13716
**DURHAM JONES & PINEGAR**
111 East Broadway, Suite 900
Salt Lake City, Utah 84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
bhamilton@djplaw.com
agregson@djplaw.com

Attorneys for Defendants City of Hildale, Utah, Twin
City Power and Twin City Water Authority, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 3:12-CV-8123-HRH |
| Plaintiff, | |
| v. | **HILDALE DEFENDANTS' CONTROVERTING STATEMENT OF FACTS TO THE UNITED STATES' STATEMENT OF FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND SEPARATE STATEMENT OF FACTS TO SUPPORT RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Town of Colorado City, Arizona; City of Hildale, Utah; Twin City Power; and Twin City Water Authority, Inc., | |
| Defendants. | |

Pursuant to Arizona Local Rule 56.1(b), Defendants City of Hildale, Utah, Twin City Power ("TCP"), and Twin City Water Authority ("TCWA") (collectively "Hildale Defendants") hereby submit the following Controverting Statement of Fact to the United States' Statement of Facts in Support of Motion for Partial Summary Judgment [Doc. 542] and to Separate Statement of Facts to support Hildale Defendants' response to Plaintiff's Motion for Partial Summary Judgment based on Collateral Estoppel.

# CONTROVERTING STATEMENT OF FACTS

1.  Not disputed.

2.  Objection.  Hildale Defendants move to strike this paragraph because it contains more than one fact, and therefore violates Local Rule 56.1(a).  Subject to this objection and motion, Hildale Defendants do not dispute the facts in this paragraph.

3.  Not disputed.

# SEPARATE STATEMENT OF FACTS

## The *Cooke* Complaint

1.  In *Cooke v. Colorado City, et al.*, Civil No. 2:10-cv-08105-JAT, Plaintiff-Intervenor the State of Arizona asserted a claim for "pattern or practice in violation of A.R.S. § 41-1491.35 of AFHA."  *See* Joint Second Amended Complaint ("*Cooke* Complaint"), at 29, attached hereto as Exhibit A.

2.  In support of its pattern or practice claim, the State of Arizona alleged that it "has reasonable cause to believe that the Cookes and other non-FLDS persons who reside on or who have applied to reside on land owned by the UEP in Colorado City, Arizona seek to have their water connections and other utilities provided by Defendants for housing on UEP property without regard to religion have been denied rights under A.R.S. §§ 41-1491.14 and 41-1491.18 of the AFHA by Defendants, and that denial of rights by municipal defendants raises an issue of general public importance."  *Cooke* Complaint, Exhibit A, ¶ 142.

3.  In support of its pattern or practice claim, the State of Arizona alleged that "the Cookes and, upon information and belief, other non-FLDS persons who reside on or who have applied to reside on land owned by the UEP in Colorado City, Arizona and seek to have utility services, including water connections and other utilities, provided by Defendants for housing on UEP property without regard to religion suffered physical pain, emotional distress, inconvenience, embarrassment, humiliation, denial of civil rights, and monetary damages in an amount to be determined at trial, and are entitled to damages under A.R.S. § 41-1491.35(B)(2)."  *Cooke* Complaint, Exhibit A, ¶ 144.

4. The *Cooke* Complaint alleged that "Defendants retaliated against, interfered with and intimidated Cooke for requesting a reasonable accommodation for his disability and for filing a fair housing complaint, which conduct is protected under the AFHA," by issuing a building permit to Robert Black in 2009 and by acting on theft of services charges in 2010. *Cooke* Complaint, Exhibit A, ¶¶ 137-38.

5. The *Cooke* Complaint's only other allegation regarding the CCMO was that "[u]pon information and belief, Defendants and their agents have treated the governmental agencies that they control as arms of the FLDS religion, and utilized the powers and resources of these municipal entities to attempt to exclude non-members of the FLDS, such as the Cookes, from communities of Colorado City and Hildale." *Cooke* Complaint, Exhibit A, ¶ 27.

**The DOJ's Complaint**

6. The DOJ's Complaint alleged that Defendants have engaged in "[a] pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619; or . . .[a] denial to a group of persons rights granted by the Fair Housing Act, which raises an issue of general public importance, in violation of the Fair Housing Act, 42 U.S.C. §3614(a)." Complaint [Doc. 1], ¶ 59.

7. The DOJ's Complaint alleges that the conduct described under its "Unconstitutional Policing" allegations also "resulted in violations of federally protected housing rights of non-FLDS," and incorporate those facts in support of their "Housing Discrimination" allegations. Complaint, ¶ 36.

8. The DOJ's Complaint alleges that "[t]he Marshal's Office has failed to provide policing services to non-FLDS individuals on the basis of religion. The Marshal's Office fails to protect non-FLDS individuals from victimization by FLDS members, fails to investigate crimes against non-FLDS individuals and their property, and refuses to arrest FLDS individuals who have committed crimes against non-FLDS individuals. These crimes and actions include destroying crops on a non-FLDS-operated farm, vandalizing property in the control of the UEP Trust, returning at least one underage bride

3

to a home from which she had fled, and trespassing on property occupied by non-FLDS individuals." Complaint, ¶ 16.

9.     The DOJ's Complaint alleges that "[t]he Marshal's Office selectively enforces laws and regulations against non-FLDS individuals on the basis of religion. Instances of selective enforcement include arresting non-FLDS individuals for trespass but not arresting similarly situated FLDS individuals, and citing non-FLDS individuals for traffic citations but not citing FLDS individuals for similar infractions." Complaint, ¶ 17.

10.     The DOJ's Complaint alleges that "[n]on-FLDS individuals experience the hardship and mental and physical stress resulting from the knowledge that the Marshal's Office will not come to their aid in time of need. For example, in January 2012, a woman who was, in effect, excommunicated by the FLDS, fled her home in the Cities with her six young daughters after learning that FLDS leaders demanded that she sever all contact with five of her six children. This woman believed, based on its policies and previous actions, that the Marshal's Office would not come to her assistance to protect her parental rights if she complained about the FLDS edict separating mothers from their children. She decided, as many other non-FLDS members have done, to flee with her children under cover of darkness to safety outside of the Cities. The failure and refusal of the Marshal's Office to protect all citizens without regard to religion has given rise to an "underground railroad," composed of non-FLDS members who provide safe havens and a means of egress for individuals abandoned by law enforcement." Complaint, ¶ 18.

11.     The DOJ's Complaint alleges that "[t]he Marshal's Office effectively serves as the enforcement arm of the FLDS Church. Since at least 1990, the Marshal's Office has assisted the FLDS Church in its surveillance and investigation of non-FLDS members because of religion. This activity includes providing training and resources to FLDS members to aid their surveillance of non-FLDS members. The Marshal's Office provides law-enforcement information, including but not limited to, information about emergency calls to the Marshal's Office for assistance, directly to FLDS security personnel. In addition, the Cities obtain information from FLDS Church security-service members

about vehicles traveling in the Cities, run license-plate checks to determine whether such vehicles are owned and/or operated by non-FLDS members in the Cities, and convey the results of the license-plate checks to the FLDS Church."  Complaint, ¶ 19.

12.     The DOJ's Complaint alleges that "[t]he Marshal's Office has conducted traffic stops on multiple occasions in response to FLDS church members' requests that they find out the identity of the occupants of a vehicle."  Complaint, ¶ 20.

13.     The DOJ's Complaint alleges that "[t]he Marshal's Office deploys its resources to enforce FLDS religious edicts.  Such conduct includes dispatching Marshal's Deputies in official vehicles to confront persons about their alleged disobedience to FLDS rules and instructing such persons to report to FLDS leadership."  Complaint, ¶ 21.

14.     The DOJ's Complaint alleges that "[i]n one instance, in 2000, Jeffs issued an order for a then-FLDS member to return an underage bride, who had fled her new husband's home, to FLDS leaders.  Unaware that the then-FLDS member had already complied, three Marshal's Deputies confronted him demanding that he return her to FLDS leaders.  The deputies drove official Marshal's Office vehicles when they aggressively confronted the then-FLDS member.  One of the Marshal's Deputies involved in this incident remains employed by the Marshal's Office, and another was the Marshal who resigned in or around April 2012."  Complaint, ¶ 22.

15.     The DOJ's Complaint alleges that "[i]n 2001, Jeffs issued an edict that all domestic dogs would be banned from the Cities.  Less than one month later, in compliance with Jeffs's [sic] edict, Marshal's Deputies went to each household in the Cities and asked residents to turn over any dogs that they had in the home to the Officers.  The Marshal's Deputies then shot and killed the dogs in a slaughter pit a short distance from the Cities.  Two of the Marshal's Deputies involved in this incident remain employed by the Marshal's Office."  Complaint, ¶ 23.

16.     The DOJ's Complaint alleges that "[t]he Marshal's Office fails to cooperate with other law enforcement offices in investigating crimes against non-FLDS individuals or crimes committed by FLDS individuals."  Complaint, ¶ 24.

17. The DOJ's Complaint alleges that "[o]n at least one occasion, in July 2011, the then-Marshal and Marshal's Deputies participated in the building of fences on UEP Trust property that the FLDS had illegally occupied without permission of the UEP Trust." Complaint, ¶ 27.

18. The DOJ's Complaint alleges that "[s]ince the UEP trust was reformed in 2006, the Marshal's Office has consistently disregarded the validity of the Trust-signed occupancy agreements and of legal rulings that guarantee the rights of non-FLDS Trust beneficiaries." Complaint, ¶ 28.

19. The DOJ's Complaint alleges that "on February 8, 2012, the Marshal's Office responded to a report that FLDS members were building an illegal fence that encroached onto property validly occupied by a non-FLDS individual. A representative of the Special Fiduciary informed a Marshal's Officer that the fence was being built without permission and should be stopped immediately. The Marshal's Officer failed to act to stop the FLDS members from putting up the fence." Complaint, ¶ 29.

20. The DOJ's Complaint alleges that "[t]he Marshal's Office uses its authority to aid the FLDS Church by facilitating the unlawful evictions of non-FLDS residents and refusing to permit non-FLDS individuals to move into properties for which they have occupancy agreements." Complaint, ¶ 30.

21. The DOJ's Complaint alleges that "[t]he Marshal's Office arrests non-FLDS individuals without probable cause on the basis of religion. Specific incidents include arresting non-FLDS individuals for trespass on properties that they had the right to enter, arresting non-FLDS individuals without probable cause for theft of services, and holding an adult non-FLDS woman in jail overnight without probable cause on the alleged ground of being a minor in possession of alcohol." Complaint, ¶ 31.

22. The DOJ's Complaint alleges that "[t]he Marshals' Office has seized the property of non-FLDS individuals without due process of law. For example, in April or May of 2010, the Marshal's Office departed from its normal procedures in handling a stud horse who escaped from its non-FLDS owner. The Marshal's Office caused the horse to

be euthanized without contacting the owner. Members of the Marshal's Office knew or should have known the stud horse, which had distinct markings, and they knew or should have known the identity of the horse's owner. This action was taken on the basis of the owner's religious affiliation." Complaint, ¶ 32.

### The *Cooke* Trial

23. The State of Arizona identified Ron and Jinjer Cooke, John Cook, Matthew Musser, Steven Bateman, Richard Holm, and Patrick Barlow as people who have been affected by the alleged pattern or practice of housing discrimination with respect to utilities services. *Cooke* Trial Transcript, March 19, 2014, Day 22, State of Arizona's Closing Arguments, at 12, attached hereto as Exhibit B.

24. John Cook's testimony involved his efforts to receive utilities to a particular property, and did not raise any claims of discrimination by the CCMO. *Cooke* Trial Transcript, February 18, 2014, Day 10, Testimony of John N. Cook, attached hereto as Exhibit C.

25. Matthew Musser's testimony did not involve claims of discrimination by the CCMO, but rather involved his efforts to receive utilities to a particular property. *Cooke* Trial Transcript, February 18, 2014, Day 10, Testimony of Matthew Musser, attached hereto as Exhibit D.

26. Patrick Barlow's testimony did not involve claims of discrimination by the CCMO, but rather involved his efforts to receive utilities to a particular property. *Cooke* Trial Transcript, January 30, 2014, Day 3, Testimony of Patrick Barlow, attached hereto as Exhibit E.

27. The State of Arizona's closing argument identified for the jury evidence of policies of discrimination on the basis of religion, including Defendants "applying water shortage claims to keep non-FLDS residents from getting utilities; their applying non-existent or inconsistent or undefined water policies to refuse a water hookup to the Cookes or to others; their considering FLDS projects, like the triplexes and the Warren Jeffs

mansion, to meet the new water policy without any proof that they have actually provided new water to the system." State of Arizona's Closing Arguments, Exhibit B, at 13:10-16.

28.     The State of Arizona's closing argument also gave examples of "the building permit practices you saw where they went in after the Trust was taken over by Bruce Wisan, the fiduciary, and the Court and they took the owner's approval off of the building permit application . . .." State of Arizona's Closing Arguments, Exhibit B, at 13:24-14:1-3.

29.     The State of Arizona's closing argument gave only one example of a discriminatory policy of the CCMO in the form of "the police and how they intervene in disputes where FLDS individuals are complaining and they charge people and they prosecute them for trespassing and other crimes but when the tables are turned and it's a non-FLDS individual, as in the case of Mr. Stubbs and the Stubbs family and their [sic] complaining about somebody trespassing on property that they have lawfully leased, no one gets charged, no one gets cited." State of Arizona's Closing Arguments, Exhibit B, at 14:7-14.

30.     The State of Arizona's closing argument only referenced circumstantial evidence of FLDS control over the Cities and their agencies when it was addressing how the jury should determine credibility of witnesses. State of Arizona's Closing Arguments, Exhibit B, at 20-28.

**The DOJ's Anticipated Trial Evidence**

31.     Plaintiff has identified the following individuals as aggrieved persons under the Fair Housing Act: Patrick Barlow, Andrew Chatwin, John Cook, Ron and Jinjer Cooke and their children, Charles "Ross" and Lori Chatwin, Richard Holm, Christopher and Jesseca Jessop, Willie R. Jessop, Ron Rohbock, Jerold Williams and Elizabeth Wayman, Dan Wayman, and Isaac Wyler. *See* selected, redacted pages of United States' Eleventh Supplemental Initial Disclosures, attached to Hildale Defendants' Separate Statement of Facts [Doc. 549] as Exhibit I.

1     32.     Of those individuals, Patrick Barlow, Andrew Chatwin, John Cook, Ron and

2     Jinjer Cooke, Richard Holm, and Isaac Wyler were witnesses who testified at trial in the

3     *Cooke* lawsuit.  *See* Cooke Lawsuit Court Docket, selected pages attached to Hildale

4     Defendants' Separate Statement of Facts [Doc. 549] as Exhibit J.

5     33.     Each of the aggrieved parties has been disclosed as having information

6     regarding the CCMO's allegedly discriminatory actions or practices, and many of them

7     claim to be victims of those practices. *See* selected redacted pages of United States'

8     Eleventh Supplemental Initial Disclosures, attached to Hildale Defendants' Separate

9     Statement of Facts [Doc. 549] as Exhibit I.

10

11          SUBMITTED this 26th day of January, 2015.

12

13                                    **DURHAM JONES & PINEGAR**

14

15                              By /s/ R. Blake Hamilton
                                    R. Blake Hamilton
16                                  Ashley M. Gregson
                                    Attorneys for Defendants City of Hildale,
17                                  Utah Twin City Power and Twin City Water
                                    Authority, Inc.

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

     I hereby certify that on the 26th day of January, 2015, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF system for filing and transmittal of Notice of Electronic filing to the following CM/ECF registrants:

R. Tamar Hagler
Eric W. Treene
Lori K. Wagner
Sean R. Keveney
Jessica C. Crockett
Anika Gzifa
Matthew J. Donnelly
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Attorneys for Plaintiff United State of America

Jeffrey C. Matura
Asha Sebastian
Graif Barrett & Matura, P.C.
1850 North Central Avenue, Suite 500
Phoenix, Arizona 85004
Attorneys for Defendant Town of Colorado City, Arizona

                                   /s/  Sarah Peck
                                   Assistant

SLC_2054018