Steven H. Rosenbaum (NY Bar #1901958)
Judy Preston (MD Bar)
R. Tamar Hagler (CA Bar #189441)
Christy E. Lopez (DC Bar #473612)
Eric W. Treene (NY Bar #2568343)
Sean R. Keveney (TX Bar #24033862)
Jessica Clarke (NY Bar #4694972)
Matthew J. Donnelly (IL Bar #6281308)
Emily M. Savner (NY Bar #5214358)
Sharon I. Brett (NY Bar #5090279)
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530
Phone:       (202) 305-4013
Facsimile:   (202) 514-1116
E-mail:  sean.r.keveney@usdoj.gov

Attorneys for the United States

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>             Plaintiff;<br>   v.<br><br>Town of Colorado City, Arizona, *et al.*,<br><br>             Defendants. | No. 3:12cv8123-HRH<br><br>**UNITED STATES' MOTION TO STRIKE UNDISCLOSED WATER EXPERT MARVIN WILSON FROM DEFENDANTS' WITNESS LIST OR, IN THE ALTERNATIVE, LIMIT HIS TESTIMONY** |

The United States respectfully moves this Court to strike undisclosed water expert, Marvin Wilson, from Defendants' Joint Final Trial Witness List, ECF No. 759 [hereinafter, "Defendants' Witness List"], or, in the alternative, limit his testimony.

1

Defendants did not disclose Mr. Wilson as an expert under Fed. R. Civ. P. 26(a)(2). However, Defendants now appear to be attempting to evade their disclosure obligations and admit what should be considered undisclosed expert testimony through Mr. Wilson at trial. Because Defendants cannot establish that their failure to disclose Mr. Wilson as an expert was either substantially justified or harmless, Mr. Wilson should be stricken from Defendants' Witness List, or, in the alternative, his testimony should be limited to preclude his offering any opinions or conclusions developed based on his professional expertise.

## I. BACKGROUND

In their initial disclosures, Defendants identified Mr. Wilson, and/or other representative(s) of Sunrise Engineering, as a potential fact witness, describing the likely discoverable information Mr. Wilson possesses as follows:

> Sunrise Engineering has provided engineering services for Hildale and Colorado City for several years. Marvin Wilson and/or representative(s) of Sunrise Engineering are expected to have information regarding the availability of culinary water in the area, along with any other related issues.

*See, e.g.,* Hildale Defendants' Seventh Supplemental Initial Disclosure Statement at 10, September 9, 2015.

Prior to deposing Mr. Wilson, counsel for the United States asked counsel for Defendants whether Mr. Wilson and another witness disclosed in Defendants' initial disclosures would be providing expert testimony within Rule 26(a)(2)(C) (*Witnesses Who Do Not Provide a Written Report*), to which counsel for Colorado City responded, "With respect to Marvin Wilson and Brian Zitting, they are fact witnesses who will testify about the work they have done, and are doing, for the towns. We do not plan to use them as expert witnesses." Emails between Jeffrey Matura and Matthew Donnelly, June 10-11, 2014 (copying counsel for Hildale Defendants) (Exhibit A). Accordingly, the United States deposed Mr. Wilson as a fact witness on July 10, 2014.

As required by the Court's Rule 16 Scheduling Order, ECF No. 436, the United States and Defendants disclosed their respective experts on August 25, 2014.

2

Defendants did not include Marvin Wilson in their expert disclosures, either as a retained or non-retained expert. *See* Defendants' Joint Expert Disclosure and Expert Reports, Aug. 25, 2014.

On November 20, 2015, Defendants filed their Joint Final Trial Witness List, ECF No. 759, including Mr. Wilson, who is a professional engineer, as a witness. Defendants' description of Mr. Wilson's expected testimony provides,

> Marvin Wilson works for Sunrise Engineering. He is expected to testify about his education, training, and experience as an engineer. He is also expected to testify about Sunrise Engineering's work for Colorado City regarding water planning, water resources, and general planning, ***his examination, studies, and conclusions regarding the availability of water within Colorado City and Hildale, the reports that Sunrise Engineering prepared to Colorado City and Hildale***, ***Sunrise Engineering's work with Colorado City to conduct an impact fee study*** and a master plan, and all related issues.
>
> Mr. Wilson is also expected to testify about the following topics: his professional licenses and organization memberships; whether he has ever been a member of the FLDS Church or lived in Colorado City or Hildale; ***the 1998 Culinary Water Master Plan completed for Colorado City and Hildale; the 2002 Water Resources Study completed for Colorado City and Hildale; the 2002 Environmental Study of Water and Squirrel Canyon completed for Colorado City and Hildale; the 2008 Letter Report to Colorado City regarding wells; the differences between a water capacity test and a safe-yield test***; his work to bring the power plant into compliance for use as a culinary water source; ***his work on water studies for other municipalities; his knowledge about other municipalities' policies and ordinances regarding limiting new water connections, the imposition of impact fees, and the enforcement water regulations***; and other related issues.

*Id.* at 27 (emphasis added to highlight areas of proposed testimony challenged here as improperly disclosed). *See also* Defendants' Joint Amended Final Trial Witness List at 28-29, ECF No. 770 (same).

3

## II. ARGUMENT

### A. Defendants Intend to Solicit Undisclosed Expert Opinion Testimony from Marvin Wilson

Defendants' Witness List makes clear that despite their earlier representations, *see, e.g.,* Hildale Defendants' Seventh Supplemental Initial Disclosure Statement at 10, September 9, 2015; Exhibit A; Defendants' Joint Expert Disclosure and Expert Reports, Aug. 25, 2014, Defendants now intend to introduce undisclosed expert opinion testimony through Mr. Wilson on several topics, as described below.

> 1. <u>Mr. Wilson's "examination, studies and conclusions regarding the availability of water within Colorado City and Hildale," including any conclusions reached in reports prepared by Sunrise Engineering for the Cities, is expert testimony that should have been disclosed pursuant to Fed. R. Civ. P. 26(a)(2)(C).</u>

Expert witnesses include those witnesses whose "scientific, technical, or other specialized knowledge" permits them to "testify in the form of an opinion." *See* Fed. R. Evid. 702. In contrast, lay witnesses may only offer opinion testimony if that opinion is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *See* Fed. R. Evid. 701. Defendants' Witness List makes clear that Defendants intend to call Mr. Wilson at trial to provide opinion testimony, as it states that Mr. Wilson will testify regarding "his … conclusions regarding the availability of water within Colorado City and Hildale." *See* Defendants' Witness List at 27. This opinion testimony should be considered expert, as opposed to lay, opinion testimony, as the foundation for this testimony is not Mr. Wilson's lay "perceptions," *see* Fed. R. Evid. 701, but instead "his education, training, and experience as an engineer," *see* Defendants' Witness List at 27.

The basis for Mr. Wilson's proposed opinion testimony is the work that Colorado City and Hildale hired Sunrise Engineering to conduct prior to this litigation. *See id.* (listing reports and studies completed by Sunrise Engineering for Colorado City and Hildale). For example, the Defendants' Witness List states that Mr. Wilson is "expected to testify about … the 2008 Letter Report to Colorado City regarding wells."

4

Defendants' Witness List at 27. This report was prepared at the request of Colorado City officials "to provide a preliminary opinion as to the ground water resource located within your valley; more particularly within your Town Boundaries." *See* Letter from Marvin Wilson to Colorado City at 1, Nov. 11, 2008 [hereinafter, "2008 Letter Report"] (Exhibit B); Wilson Dep. at 44:4-7, 45:11-14 (explaining that the 2008 Letter Report was prepared because "[Colorado City] needed it … to submit to some -- to somebody, to try to stop a -- some kind of a water development.").[1] The fact that the opinions

---

[1] Defendants' Witness List also states that Mr. Wilson will testify regarding "Sunrise Engineering's work with Colorado City to conduct an impact fee study." Defendants' Witness List at 27. However, this study has never been produced to the United States by Defendants. Additionally, this study is being performed as a result of the court's injunction in *Cooke v. Town of Colorado City et al.*, 3:10-cv-08105 (D. Ariz.), evidence about which this Court ordered be excluded from admission at trial in the case at bar based upon Defendants' motion *in limine*. *See* Wilson Dep. at 28:21-29:3 ("Q. Do you know whether Sunrise Engineering is working on an impact fee study? A. Yes. Actually, now that you bring that up, I -- I know that's been discussed. I know that the -- the City wanted us to get working on an impact fee study, after they lost the -- the court. Q. After the Cooke verdict? A. Yeah."); ECF No. 743 (granting Defendants' Motion *In Limine* to "Preclude Evidence Regarding the Jury's Verdict in *Cooke v. Town of Colorado City, et al*, and the Court's Injunction"). Additionally, when deposed, Mr. Wilson professed having no personal knowledge concerning the details of the impact fee study:

> Q. Have you also worked on an impact fee study?
> A. I have not.
> …
> Q. Okay. And do you know who with the City -- well, is -- is somebody with Sunrise Engineering working on that study?
> A. I don't know. I think they are. I -- I think Dustin's working on that. But I know -- I don't know. There -- there could have been some funding issues on how to get that -- how to get that under contract and paid for. But I am not in the know on that.

Wilson Dep. 28:18-29:12. For these reasons, no testimony regarding the impact fee study should be permitted regardless of any improper disclosure of any expert opinions resulting therefrom.

5

contained in these reports and about which Mr. Wilson would be testifying were formed prior to this litigation does not vitiate Mr. Wilson's status as an expert -- it only qualifies it as that of a non-retained expert. Like a treating physician, Mr. Wilson was not "retained or specially employed to provide expert testimony in the case," Fed. R. Civ. P. 26(a)(2)(B), and instead formed his opinion during the course of his work for the Cities. *See generally Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 824-26 (9th Cir. 2011).

Although Defendants were not required to submit an expert report for Mr. Wilson with respect to the opinions he developed through his prior work for the Cities, Defendants were required to disclose Mr. Wilson as a non-retained expert if they intended him to testify on these opinions. Such a disclosure should have included "a summary of the facts and opinions to which the witness is expected to testify." *See* Fed. R. Civ. P. 26(a)(2)(C)(ii); Fed. R. Civ. P. 26 advisory committee's note (2010). Defendants did not include Mr. Wilson on their expert disclosures, and have provided no summary of the facts and opinions about which he is expected to testify, identifying him instead only as a fact witness. *See* Defendants' Joint Expert Disclosure and Expert Reports, Aug. 25, 2014; Hildale Defendants' Seventh Supplemental Initial Disclosure Statement at 10, September 9, 2015.

Thus, any opinion testimony provided by Mr. Wilson concerning the availability of water in Colorado City and Hildale, and any testimony concerning the conclusions of any reports prepared by Sunrise Engineering or Mr. Wilson for the Cities, should be considered undisclosed expert testimony pursuant to Fed. R. Civ. P. 26(a)(2)(C).

> 2. <u>Testimony concerning Mr. Wilson's "work on water studies for other municipalities" and his "knowledge about other municipalities' policies and ordinances" is expert testimony that should have been disclosed pursuant to Fed. R. Civ. P. 26(a)(2)(B).</u>

Defendants' Witness List states that Mr. Wilson will testify regarding his work as a professional engineer for other municipalities and his knowledge of other municipalities' water policies. Specifically, Defendants state that they intend to call Mr.

6

Wilson to testify about "his work on water studies for other municipalities; his knowledge about other municipalities' policies and ordinances regarding limiting new water connections, the imposition of impact fees, and the enforcement water regulations." Defendants' Witness List at 27.

Any testimony Mr. Wilson would provide concerning other municipalities' water studies or policies is not relevant if Mr. Wilson is to be considered a lay witness and only becomes relevant to the extent opinions or conclusions on these topics are presented in the form of expert testimony. Were Mr. Wilson to offer opinions concerning the policies of other municipalities, those opinions must be considered expert testimony for which an expert report was required pursuant to Fed. R. Civ. P. 26(a)(2)(B), as any such testimony would have concerned work and opinions beyond the scope of the work he performed for Colorado City and Hildale as a non-retained expert. *See Goodman*, 644 F.3d at 826 (holding that a non-retained expert, there, a treating physician, is only exempt from Rule 26(a)(2)(B)'s written report requirement "to the extent that his opinions were formed during the course of treatment").

As Defendants did not provide an expert report for Mr. Wilson concerning any information he may have based on his professional work for other municipalities (or even a summary of his facts and opinion, as described above), testimony on the topic of other municipalities' water studies and policies should be considered undisclosed expert testimony.

        3.     <u>Testimony concerning the differences between a water capacity test and a safe-yield test" should be considered expert testimony that should have been disclosed pursuant to Fed. R. Civ. P. 26(a)(2).</u>

Any testimony Mr. Wilson may provide concerning "the differences between a water capacity study and a safe-yield study," Defendants' Witness List at 27, is also opinion testimony that Mr. Wilson would have gained only through his "scientific, technical, or other specialized knowledge," Fed. R. Evid. 702, and not permissible lay opinion testimony. As such, it should be considered expert opinion testimony for which, again, no appropriate disclosure was made.

7

Additionally, like any testimony concerning his work for other municipalities, testimony expressing views on the differences between a water capacity test and a safe-yield test is only relevant to the extent that it is provided in the form of an expert opinion. Here, the Defendants' inclusion of this topic as an area of expected testimony is only potentially relevant as an attempt to undermine the testimony of the water expert disclosed by the United States, Zachary Renstrom, whom the Defendants have questioned at length about the fact that he did not conduct a safe-yield analysis in rendering his expert opinions on the capacity of the Colorado City/Hildale water system. *See, e.g.*, Renstrom Dep. 48:16-49:4 ("Q: … am I correct that still today that you have never done an analysis to determine the safe yield of the aquifers that provide the water to Colorado City and Hildale? …. Q: And the calculations you've done are capacity calculations; right?").

As Defendants did not provide an expert report for Mr. Wilson concerning any opinions he may have concerning the difference between water capacity tests and safe-yield tests, and as such testimony would only be relevant to counter testimony by the United States' expert, testimony by Mr. Wilson on this topic should be considered undisclosed expert testimony.

The United States did not object to Mr. Wilson's inclusion on Defendants' initial disclosures as a lay witnesses, and agrees that Mr. Wilson could have properly provided factual testimony that did not amount to expert opinion testimony, such as the fact that that the Defendants hired Sunrise Engineering to conduct certain analyses, how much they paid Sunrise Engineering, and when they hired Sunrise Engineering. However, Defendants' Witness List makes clear that admitting proper lay witness testimony through Mr. Wilson is not Defendants' intent. The great majority of the intended

8

testimony by Mr. Wilson on the topics identified in Defendants' Witness List and discussed above should be considered expert opinion that Defendants failed to disclose as such.[2]

### B. Mr. Wilson Should be Stricken from Defendants' Witness List, or his Testimony Limited, as Defendants' Failure to Disclose Mr. Wilson as an Expert was Neither Substantially Justified nor Harmless

Rule 37 provides a "self-executing" and "automatic" sanction for a party's failure to satisfy the disclosure requirements of Rule 26, *see Goodman*, 644 F.3d at 827 (citing Fed. R. Civ. P. 37 advisory committee's note (1993)):

> If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless.

Fed R. Civ. P. 37(c)(1). *See also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citing appropriateness of sanction of exclusion of an expert witness even where litigant's entire cause of action or defense would be precluded). Here, Defendants cannot establish their failure to disclose Mr. Wilson as an expert witness was either substantially justified or harmless.

Far from substantially justified, only on the eve of trial, and over fourteen months after the deadline for expert disclosures had passed, did Defendants make clear how they

---

[2] The United States also intends to object at trial should Defendants attempt to offer previously undisclosed expert opinion testimony through other witnesses identified on Defendants' Witness List with scientific, technical, or other specialized knowledge, including Brian Zitting (engineer for Canaan Peaks Engineering), Ken Brendel (prosecutor for the Town of Colorado City), Richard D. Carr (former Hildale Justice Court Judge), Zachary J. Weiland (former Hildale City Prosecutor), Nathan G. Caplin (Hildale City Prosecutor), Richard K. Chamberlain (former Hildale City Attorney), and Keith Sobraske (of Investigative Research, Inc.). The United States does not move to strike these witnesses in the instant motion because Defendants' Witness List suggests some areas of lay witness testimony by these individuals.

intend to use Mr. Wilson's testimony. *See* Defendants' Witness List at 27. This is despite the fact that the reports and studies on which Defendants now propose Mr. Wilson testify date from 1998 through 2002. *Id.* There is no reason why Defendants could not have disclosed Mr. Wilson or another Sunrise Engineering representative as a non-retained expert in August of 2014, the deadline for expert disclosures, if they intended to present the opinions and conclusions contained in Sunrise Engineering's reports and studies at trial, as they now make clear they intend to do. In fact, the United States raised the concern that Mr. Wilson's testimony should be disclosed as that of a non-retained expert pursuant to Fed. R. Civ. P. 26(a)(2)(C) in June 2014 and Defendants assured the United States that they did not plan to use Mr. Wilson to provide expert testimony. *See* Exhibit A.

Nor can Defendants establish that their failure to disclose Mr. Wilson as an expert was harmless. Although Mr. Wilson was disclosed as a fact witness "expected to have information regarding the availability of culinary water in the area," Hildale Defendants' Seventh Supplemental Initial Disclosure Statement at 10, September 9, 2015, this disclosure fails to state the opinions or conclusions Mr. Wilson might have in this area or the factual bases for those opinions or conclusions, as required by Fed. R. Civ. P. 26(a)(2)(C)(ii). The United States does not dispute that it had access to the Sunrise Engineering reports and studies. However, finding that the failure to disclose Mr. Wilson and his conclusions in an expert disclosure was harmless on that basis would wholly undermine the purpose of the 2010 amendments to Fed. R. Civ. P. 26, which mandated summary disclosures of the opinions to be offered by those experts exempted from the expert report requirement:

> The Rule strikes a balance between requiring an expert report from a witness like a treating physician, who was not specially retained to provide expert testimony and requiring a defendant to search through hundreds of pages of medical records in attempt to guess what the testimony of a treating physician might entail. . . . If the Court were to allow this kind of "Find the Easter Egg" approach, it would allow litigants to manipulate the expert disclosure rule in a way that would materially increase the cost of litigation.

10

Order at 8-9, *Cooke v. Town of Colorado City et al.*, 3:10-cv-08105, ECF No. 317 (D. Ariz. Feb. 13, 2013) (granting Hildale Defendants' motion to strike the testimony of treating physician for whom plaintiffs did not supply a disclosure as to the facts and opinions about which she would testify).  *See also* Fed. R. Civ. P. 26 advisory committee's note (2010).

While the United States did have the opportunity to depose Mr. Wilson, the United States deposed him as a fact witness, given Defendants' disclosure of him as such.  Had the United States been made aware that Mr. Wilson would be used as an expert, and had Defendants disclosed the full set of opinions Mr. Wilson would be offering, the United States would have probed the reliability of, or basis for, each conclusion disclosed for Mr. Wilson in its deposition of Mr. Wilson and would have taken additional steps to rebut or challenge these opinions.  For example, the United States would have raised a *Daubert* challenge to any disclosed expert testimony derived from the 2008 Letter Report, as Mr. Wilson admitted that he completed the Report in four hours, that the Report was based on limited information provided by representatives of the Cities regarding only certain wells, and that "[t]he conclusion [of the 2008 Letter Report] was that further study needed to be done."  *See* Wilson Dep. at 45:17-18, 44:19-46:7, 76:18-77:3; *see also* Exhibit B at 1, 2 ("This opinion will be based in part upon ground water data records that you and your staff have recently obtained and will be based upon basic engineering judgment.  We have not been retained to complete an in-depth water source or groundwater hydrology study at this time.  We understand time is of the essence and it is not realistic to expect anything more in-depth than a simple opinion based on existing data, engineering judgment, and simple rudimentary analysis."; "Because of the relative short time available to compile additional information we were only able to get specific information from three culinary wells").  The United States would therefore be significantly prejudiced if Mr. Wilson were permitted to testify on these matters at trial.

As Defendants' Witness List makes clear that Defendants intend to use Mr. Wilson to offer undisclosed expert testimony, and as Defendants cannot establish that their failure

11

to properly disclose him was substantially justified or harmless, Fed. R. 37(c)(1)'s sanction of the preclusion of Mr. Wilson's expert opinion testimony is appropriate.

### III.   CONCLUSION

For the foregoing reasons, the Court should strike Marvin Wilson from Defendants' Witness List, as Defendants intend to use his testimony to admit undisclosed expert opinion testimony.  In the alternative, the Court should preclude Mr. Wilson from offering any opinions or conclusions developed based on his professional expertise.

Respectfully submitted this 2nd day of December, 2015,

                         R. TAMAR HAGLER
                         CHRISTY E. LOPEZ
                         Deputy Chiefs

                         ERIC W. TREENE
                         Special Counsel

                          */s/ Emily M. Savner*
                         SEAN R. KEVENEY
                         JESSICA CLARKE
                         MATTHEW J. DONNELLY
                         EMILY M. SAVNER
                         SHARON I. BRETT
                         United States Department of Justice
                         Civil Rights Division
                         950 Pennsylvania Avenue, NW
                         Washington, DC  20530
                         Phone: (202) 353-4081
                         Facsimile: (202) 514-1116
                         E-mail:  Emily.savner@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on December 2, 2015, I caused a copy of the foregoing to be sent by the Court's ECF system to the following:

Jeffrey C. Matura
Asha Sebastian
Melissa Jane England
Graif Barrett & Matura, P.C.
1850 North Central Avenue, Suite 500
Phoenix, Arizona 85004
*Attorneys for Defendant Town of Colorado City*

R. Blake Hamilton
Ashley M. Gregson
111 East Broadway, Suite 900
Salt Lake City, Utah 84111
*Attorneys for Defendants City of Hildale and Twin City Water Authority*

          /s/ Emily M. Savner
          EMILY M. SAVNER
          Attorney for the United States