# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>THE CITY OF NEW ORLEANS, LOUISIANA, and THE LOUISIANA STATE BOND COMMISSION,<br>Defendants. | CIVIL ACTION No. 12-2011<br>SECTION F<br>JUDGE MARTIN L.C. FELDMAN<br>MAGISTRATE 3<br>MAG. DANIEL E. KNOWLES, III |

**SETTLEMENT AGREEMENT BETWEEN THE UNITED STATES OF AMERICA AND THE CITY OF NEW ORLEANS**

**BACKGROUND**

1. On August 6, 2012, the United States brought this case against the City of New Orleans ("City") and the Louisiana State Bond Commission ("Bond Commission") to enforce the Fair Housing Act ("FHA"), 42 U.S.C. § 3614, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, which, *inter alia*, prohibit governmental entities from discriminating against persons with disabilities in zoning and land use decisions. The United States alleges that the City and the Bond Commission have engaged in a pattern or practice of discrimination against persons with disabilities by taking a series of actions designed to block the Gulf Coast Housing Partnership ("GCHP") and its non-profit partners from converting an abandoned nursing home into a 40-unit affordable housing development known as the "Esplanade." Half the units of the Esplanade were intended to be generally available to persons with low income; half were intended as "permanent supportive housing" for homeless persons with mental and physical disabilities, including homeless veterans and emancipated youth.

2. The United States' Amended Complaint alleges that the City, through its Board of Zoning Adjustments ("BZA") and its Historic District Landmarks Commission ("HDLC"), discriminated by denying variance requests and a demolition permit necessary for the development of the Esplanade. In addition, the Amended Complaint alleges that the City, through its Department of Safety and Permits, reclassified the Esplanade property so that it no longer was a permitted use in a district that allowed for multifamily housing. The United States alleges that the City undertook these and other actions in response to widespread community opposition to the Esplanade that is based on fear and stereotypes of its prospective residents with disabilities. The City denies that it has violated the FHA or the ADA in connection with these matters.

3. The United States' Amended Complaint alleges that the Bond Commission discriminated by adopting in September 2009 a moratorium on all affordable housing in Orleans Parish funded through the Piggyback program, which had the purpose and effect of blocking the Esplanade, and by making exceptions to the moratorium for similarly situated housing projects but not the Esplanade. The Amended Complaint alleges that the Commission refused to lift the moratorium even though a housing study, which was one of the items the Bond Commission had requested in connection with the moratorium, was completed in March 2011 and confirmed that there was a need for additional affordable housing.

4. The United States' Amended Complaint alleges that the City's and Bond Commission's discriminatory actions caused substantial harm to GCHP, its non-profit partners, to the prospective tenants with disabilities, and to the interests of the United States, by causing delay, unnecessary extra project costs, and jeopardizing federal funding for the Esplanade project. The City denies these allegations.

5. On December 3, 2012, this Court denied the City's Motion to Dismiss the United States' claims (Doc. No. 25) and ruled that the United States' allegations against the City, if taken as true, stated a claim against the City under the FHA and ADA. On April 24, 2013, this Court denied the Bond Commission's Motion to Dismiss the United States' claims (Doc. No. 49) and ruled that the United States' allegations, if taken as true, stated a claim against the Bond Commission under the FHA and ADA.

6. The United States and the City desire to avoid costly and protracted litigation and have voluntarily agreed to resolve the United States' claims against the City by entering into this Settlement Agreement. This Agreement is effective upon execution by a representative of each party to this Agreement, and approval and adoption as an Order of the Court.

Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

## I. GENERAL NONDISCRIMINATION PROVISIONS

7. The City shall comply with the FHA and ADA and its employees, elected or appointed officials, officers, agents, and persons or entities acting in concert or participation with it, shall refrain from:

a. Discriminating in the sale or rental of, or otherwise making unavailable or denying, a dwelling to any buyer or renter because of a disability of that buyer or renter, or of any person residing in or intending to reside in such dwelling, or of any person associated with that buyer or renter;

b. Discriminating against any persons in the terms, conditions, or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with such dwelling, because of a disability of that buyer or renter, or

of any person residing in or intending to reside in such dwelling, or of any person associated with that buyer or renter; and

c. Coercing, intimidating, threatening, interfering, or retaliating against any person in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the FHA or the ADA.

8. The preceding provisions shall apply to the City prospectively, and cover specifically, but not exclusively, the following:

a. Administering, enforcing, adopting or amending the City's zoning ordinances and land use laws, including, but not limited to, receiving, evaluating, or deciding upon applications for building permits, special exceptions, variances, or uses not provided for;

b. Conducting hearings, inspecting premises, issuing certificates of zoning compliance or certificates of occupancy, or reviewing any decision made by any zoning, land-use, or building official; and

c. Considering, approving, or funding requests for funding of any housing project intended for persons with disabilities, to the extent that the City has the legal authority to approve such a request.

## II. SPECIFIC INJUNCTIVE RELIEF

9. The City has, as of this date, appropriately provided all zoning variances necessary for development of the project at 2535 Esplanade Avenue ("Esplanade"). *See* La. Fourth Circuit Court of Appeal, No. 2013-1062 (2/12/14 Judgment).

10. The City, in conformity with all local, state and federal laws, shall allow the Esplanade project at 2535 Esplanade Avenue to proceed through the City's normal approval, inspection and permitting processes. The City, in conformity with all local, state and federal laws, shall process any application by the developer of the Esplanade project to provide permanent supportive housing and subsidized housing at 2535 Esplanade Avenue in a timely manner upon submission of such applications to the appropriate City entity. The City shall not interfere with or otherwise delay the processing or issuing of any necessary permits and will use its best efforts to promptly schedule any required meetings and/or public hearings.

11. As expeditiously as possible, and consistent with the applicable local, state, and federal laws, the City shall amend its Comprehensive Zoning Ordinance to provide expressly that permanent supportive housing is a permitted use in any zone where multi-family housing is permitted. The parties agree that the draft Comprehensive Zoning Ordinance presently under consideration [http://www.nola.gov/city-planning/draft-comprehensive-zoning-ordinances-(czo)/full-czo-text/] complies with the requirements of this paragraph. Pending such amendment, the City shall treat permanent supportive housing as such a permitted use.

12. If the City intends to amend or modify its zoning ordinance, rules, policies, or procedures in a manner that would limit, restrict, or affect the zoning status of permanent supportive housing for persons with disabilities, the City shall provide the United States with a copy of the proposed modification and all relevant documents related thereto at least fifteen (15) days in advance of the intended or anticipated adoption of such modification.

13. The City has proposed a draft written policy that will provide a process by which persons may request reasonable accommodations or modifications on the basis of disability from the City's zoning and land use requirements ("draft policy"). The United States has agreed to the

majority of the content of the draft policy to date, and the City and the United States will work cooperatively to finalize this draft policy consistent with the FHA and ADA. The City commits to adopting and implementing this policy without delay and in the regular course of business. Pending such adoption, and as of the date of execution of this Agreement, the City will address all requests for reasonable accommodation on the basis of disability from the City's zoning and land use requirements consistent with this proposed policy and pursuant to the FHA and ADA.

## III. FAIR HOUSING TRAINING

14. The parties have agreed to and selected a qualified, independent third-party trainer to conduct training for the City. Within ninety (90) days after entry of this Agreement, the City shall provide training on its requirements, the FHA (in particular, those provisions that relate to disability discrimination), and the ADA (in particular, the ADA's application to zoning and land use).

15. The City shall provide the training to the members of the BZA; the Director and professional staff of the City Planning Commission; and the Director and staff of the Office of Safety and Permits. Staff of the City's Office of Safety and Permits who will receive training include: Director, Deputy Director, Zoning Administrator, Assistant Zoning Administrator, Chief Plans Examiner, and Chief Building Inspector. The training(s) shall be videotaped and shall be shown to newly elected, appointed, or hired individuals covered by this section. The training(s) of each new official or staff member of the City shall take place within thirty (30) days after the date he or she commences service or employment. The trainings of new officials or staff members who commence office or employment after the training as described herein has occurred may be performed by the City Attorney, or his or her designee.

16. The City shall provide a copy of this Agreement to each person required to

receive the training.

17. The City shall maintain, in the manner stated in Section V *infra*, certifications executed by each trainee confirming: i) his or her attendance at the in-person training(s) or, for persons so permitted under paragraph 15 to view a recorded training, that he or she has viewed the recorded training; ii) the date of the training or viewing; and iii) his or her receipt and comprehension of the Agreement. The Certification of Training and Receipt of Settlement Agreement appears at Attachment A.

18. All individuals covered by paragraph 15 who become new agents, employees, members or officials of City shall sign Attachment A within thirty (30) days after commencing the membership, employment, or an agency relationship with the City. The City shall provide the United States with copies of these executed acknowledgments upon request within thirty (30) days.

## IV. DEVELOPMENT OF ADDITIONAL PERMANENT SUPPORTIVE HOUSING AND AFFORDABLE HOUSING FOR HOMELESS PERSONS WITH DISABILITIES

19. The City will fund 350 additional (or “new”) permanent supportive housing (“PSH”) beds in New Orleans before the expiration of this Agreement. Each permanent supportive housing bed provides housing and access to supportive services for one individual. The City may use federal funds administered through its competitive grant process, or private funds, to do so. The parties acknowledge that the grant process is governed by federal law and that any grant award must be consistent therewith. In the event that the City does not obtain federal funding, it nevertheless must fully fund the PSH beds. The City shall take all necessary steps consistent with its funding procedures to fund PSH projects proposed by the entities involved in the development of the Esplanade project (*see* Amended Compl. ¶¶ 13-15). In no event shall the City refuse to fund projects, including those proposed by the entities involved in

the Esplanade project, for any unlawful reason. Once funded, the City agrees to abide by the requirements of paragraph 10 *supra* with respect to providing the necessary permits and approvals for the construction of these projects.

## V. REPORTING AND RECORD KEEPING

20. The City shall ensure that all executed copies of the Certification of Training and Receipt of Settlement Agreement (Attachment A), referenced in paragraphs 14-18 above are maintained. The United States may request copies of the Certificates, and the City agrees to provide copies of the Certificates within thirty (30) days after receiving any such requests.

21. The City agrees to maintain the following records and provide them to the United States within forty-five (45) days after receiving a request to do so:

a. Any documentation of a complaint received subsequent to the execution of this Agreement alleging discrimination in housing or zoning or land use actions or practices, because of disability. The City shall document any action it took in response to the complaint;

b. A summary of each zoning request or zoning application related to affordable housing that includes permanent supportive housing units (including those for building permits, site plans, variances, or reasonable accommodations or modifications) for which the City has made a determination, indicating: i) the date of the application; ii) the applicant's name; iii) the applicant's current street address; iv) the street address of the subject property or proposed housing; v) the City's decision(s) regarding the matter, including any decision on appeal; and vi) complete copies of any minutes or video recordings from all meetings or hearings discussing the zoning request or application;

c. Copies of any changes to the City's Comprehensive Zoning Ordinance relating to or affecting any housing for persons with disabilities enacted after the execution of this Agreement; and

d. Documents related to implementation of Section IV *supra*.

## VI. JURISDICTION AND SCOPE OF AGREEMENT AND COURT ORDER

22. The United States and the City stipulate and the Court finds that the Court has personal jurisdiction over the City for purposes of this civil action, and subject matter jurisdiction over the United States' claims in this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3614(a) and 12133.

23. The provisions of this Agreement and Order shall apply to the City and its officers, agents, employees, consultants, and all persons acting in active concert or participation with them.

24. This Agreement and Order shall remain in effect for three (3) years after the date of approval and adoption as an Order of the Court. Sixty (60) days after the date of entry of the Agreement and Order, the case will be dismissed with prejudice as to the City, subject to the terms set forth in paragraph 26 below.

25. The Court shall retain jurisdiction over this matter to interpret and enforce the terms of this Agreement and Order as necessary.

## VII. ENFORCEMENT OF THIS AGREEMENT AND COURT ORDER

26. The United States and the City shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Agreement and Order prior to bringing such matters to the Court for resolution. However, in the event of a failure by any party to perform in a timely manner any act required by this Agreement and Order, or otherwise to act in conformance with any provision thereof, either party to this Agreement and Order may

move this Court to impose any remedy authorized by law or equity. Remedies include, but are not limited to, findings of contempt, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees that may have been occasioned by the violation or failure to perform. If consistent with the applicable legal standard, should the City prevail in any such proceeding, it shall be entitled to petition the Court for an award of fees and costs in defending the action.

## VIII. COSTS OF LITIGATION

27. The parties to this Agreement will bear their own costs and fees associated with this litigation.

**IT IS SO ORDERED:**

New Orleans, Louisiana, this ____ day of _________, 2014,

Martin L.C. Feldman
UNITED STATES DISTRICT JUDGE

For the United States of America:

KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana

GLENN H. SCHREIBER
Assistant United States Attorney
500 Poydras Street, Suite B-210
New Orleans, Louisiana 70130

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

s/ Emily M. Savner

STEVEN H. ROSENBAUM
Chief
SAMEENA SHINA MAJEED
Deputy Chief
HARVEY L. HANDLEY
RYAN G. LEE
EMILY M. SAVNER
SEAN R. KEVENEY
Attorneys
U.S. Department of Justice

Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue Northwestern Building
Washington, DC 20530
Telephone: (202) 353-4081
Facsimile: (202) 514-1116

For the City of New Orleans:

s/ Sharonda R. Williams
CHRISTY C. HAROWSKI (#30712)
Deputy City Attorney
SHARONDA R. WILLIAMS (28809)
City Attorney
New Orleans, LA 70112
Telephone: (504) 658-9800
Facsimile: (504) 658-9868