# Exhibit 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ST. BERNARD PARISH**<br><br>**Defendant.** | **CIVIL ACTION**<br>**NO. 2:12-CV-00321**<br><br>**CONSOLIDATED WITH:**<br>**NO. 2:12-CV-00322, and**<br>**NO. 2:12-CV-00325**<br><br>**Pertains to case 2:12-CV-00321**<br><br>**SECTION "C"**<br>**JUDGE HELEN G. BERRIGAN**<br><br>**MAGISTRATE NO. 1**<br>**MAG. JUDGE SALLY SHUSHAN** |

**SETTLEMENT AGREEMENT BETWEEN**
**THE UNITED STATES AND ST. BERNARD PARISH**

## I. INTRODUCTION

1. Plaintiff United States and Defendant St. Bernard Parish ("the Parish" or "Defendant") desire to avoid costly and protracted litigation and have voluntarily agreed to resolve this action by entering into this Settlement Agreement ("the Agreement"). The parties agree that this Agreement does not constitute an admission of liability of any nature by the Parish.

2. This Agreement is effective upon execution by a representative of each party, approval by the St. Bernard Parish Council, and approval and adoption by the Court. For purposes of this Agreement, the phrase "date of entry of this Agreement" shall refer to the date on which the Court approves and adopts this Agreement as an Order of the Court.

## II. FACTS STIPULATED BY THE PARTIES

3. Prior to the landfall of Hurricane Katrina, the population of St. Bernard Parish was approximately 86% white and 10% African American, while the population of neighboring Orleans Parish was approximately 29% white and 67% African American.

4. In September 2006, the Parish imposed rental permitting requirements on all persons seeking to rent single-family dwellings but exempted homeowners who rented to persons "related by blood" from the permitting requirements and fines for non-compliance.

5. In January 2007, the Parish enacted a replacement permissive use permit requirement for single-family rentals in districts zoned for single-family use (hereinafter the "PUP Process") and thereafter limited the density of rentals to two per 500 feet of frontage.

6. In December 2009, the Parish made comprehensive revisions to its Zoning Ordinances (hereinafter "Comprehensive Revisions") that eliminated multi-family housing as a use allowed by right in four zones (A-1, C-2, C-2 and I-1), and entirely eliminated the RO zone, which also allowed multi-family residential use.

## III. THE UNITED STATES' ALLEGATIONS

7. The United States alleges that the Parish's conduct after Hurricane Katrina, including enacting the PUP Process and the Comprehensive Revisions, had the intent and effect of reducing severely the amount of single-family and multi-family properties available for rental in St. Bernard Parish and disproportionately disadvantaging African Americans seeking to rent housing in St. Bernard Parish.

8. The United States alleges that through the conduct set forth above, the Parish refused to negotiate for the rental of, or otherwise made unavailable or denied, dwellings to persons

because of race in violation of the Fair Housing Act, 42 U.S.C. § 3604(a), and interfered with one or more homeowners' exercise or enjoyment of, or on account of their having exercised or enjoyed, rights granted or protected by the Fair Housing Act, 42 U.S.C. § 3617. The United States alleges that the Parish's conduct constitutes a pattern or practice of discrimination or a denial of rights granted by the Act to a group of persons that raises an issue of general public importance, 42 U.S.C. § 3614(a), and that the Parish engaged in a discriminatory housing practice involving the legality of a state or local zoning or other land-use law, 42 U.S.C. § 3614(b).

9. The Parish specifically denies the United States' allegations and denies that it violated any of the provisions of the Fair Housing Act. Census figures indicate that the percentage of African Americans living in St. Bernard Parish has more than doubled from 2000 until 2010.

To serve the residents of St. Bernard Parish and for the benefit of persons seeking housing therein, it is FURTHER AGREED as follows:

## IV. GENERAL NONDISCRIMINATION PROVISIONS

10. Defendant, its employees and agents, and all other persons in active concert or participation with it, shall, with respect to the rental or sale of dwellings,[1] not make unavailable or deny a dwelling to any person because of race.

11. Defendant, its employees and agents, and all other persons in active concert or participation with it, shall not take any steps, including but not limited to enacting any ordinances, regulations, or land-use criteria or measures, that have the intent or effect of

[1] The term "dwellings" has the meaning set out in the Fair Housing Act, 42 U.S.C. §3602(b).

Case 2:12-cv-00321-HGB-SS Document 334-1 Filed 05/10/13 Page 4 of 27

reducing the total availability or development of residential multi-family housing in St. Bernard Parish on the basis of race, including but not limited to, imposing new restrictions on the total number of multi-family dwelling units allowed in the Parish. This Agreement, however, shall not require the Parish to take actions that are inconsistent with recommendations from the Army Corps of Engineers, or any other state or federal agency, including but not limited to recommendations designed to protect wetlands or prevent flooding or flood damage. Defendant, its employees and agents, and all other persons in active concert or participation with it, shall not take any steps to limit, on the basis of race, the ability of homeowners in St. Bernard Parish from renting their property.

12. Defendant, its employees and agents, and all other persons in active concert or participation with it, shall not interfere with multi-family residential properties currently being developed or constructed, or proposed to be developed or constructed, without a lawful, nondiscriminatory, substantial, material and competent justification that is both neutral on its face and neutrally applied within the Parish.

## V. TRAINING

13. Within sixty (60) days of the date of entry of this Agreement, the Department of Housing and Urban Development ("HUD"), or a qualified third person or organization approved at least thirty (30) days in advance by the United States, shall conduct an in-person training on the requirements of this Agreement and of the FHA ("Initial Training"). The Initial Training shall be attended by, at least, all Parish Council members, all Planning Commission members, and all heads of the offices and departments listed in this Section below. After attending the initial training, the members of the Parish Council shall be

exempted from the annual training requirement. Any new Parish Council member who is elected during the duration of this Agreement but did not attend the Initial Training shall attend a subsequent fair-housing training session.

14. Within one hundred eighty (180) days of the date of entry of this Agreement, and annually thereafter for the duration of this Agreement, the Defendant shall provide in-person training on the requirements of this Agreement and of the FHA to all staff members or employees of the office of Community Development, the Parish President, all staff members or employees of the Office of Housing and Redevelopment, all members, staff, or employees of the Parish Planning Commission, and all staff members and employees of the Parish Resident Services and Compliance Department. All such training sessions will be at least two hours in duration. Attendance at the Initial Training shall satisfy the training requirements for the first year.

15. Within sixty (60) days of the hiring of the Fair Housing Coordinator (*see* Section VI), the Fair Housing Coordinator will attend any seminars or training necessary to enable the Fair Housing Coordinator to conduct the training of Parish Officials and employees required by this Agreement, other than the Initial Training. The Defendant shall bear all costs associated with the training of the Fair Housing Coordinator.

16. Prior to the training of any Parish Officials and employees, the Fair Housing Coordinator or other Parish representative shall supply the United States with copies of all materials to be used in the training.

17. Within thirty (30) days of when a Parish official or employee undertakes new duties that would require him or her to attend fair-housing training under the terms of this

Case 2:12-cv-00321-HGB-SS Document 334-1 Filed 05/10/13 Page 6 of 27

Agreement, the Fair Housing Coordinator or other Parish representative shall make available to each such person a copy of this Agreement and provide copies of all written materials from the most recent fair-housing training session.

18. All persons required to attend training under the terms of this Agreement shall verify in writing and under penalty of perjury that they attended each required training session and have received training on the General Nondiscrimination Provisions of this Agreement and of the requirements of the FHA.

19. Within thirty (30) days of the execution of this Agreement the Parish shall apply for Community Development Block Grant (CDBG) monies for the funding of the programs and activities described in this Section. In the event the Parish is unsuccessful in obtaining funds through CDBG, the Parish shall seek and apply for funds from other governmental sources within thirty (30) days of being denied CDBG funding.

20. The Parish will forward all grant applications to the United States contemporaneously with their submission to the relevant funding agency or agencies.

21. In the event the Parish does not obtain CDBG or other governmental funding, the Parish shall fully fund the programs and activities in this Section out of its own funds.

## VI. ESTABLISHMENT OF OFFICE OF FAIR HOUSING

22. Within ninety (90) days of the date of entry of this Agreement, the Parish shall establish an Office of Fair Housing within the Office of Housing and Redevelopment. The office will be funded for the duration of this Agreement and will have at least one full-time employee ("Fair Housing Coordinator") who will be responsible for promoting fair housing in St. Bernard Parish, and overseeing and ensuring compliance with the terms of

this Agreement, including the establishment and implementation of the Fair Housing Marketing Plan described in Section VII below. The Fair Housing Coordinator shall have a gross salary of at least $40,000.00. The Fair Housing Coordinator shall not have been a Parish employee, administrator, Planning Commission member, Council member or other member of the Parish government, between November 2005 and the date of entry of this Agreement. The Parish shall inform the United States of its preferred candidate for the position of Fair Housing Coordinator and provide the candidate's resume to the United States within ninety (90) days of the date of entry of this Agreement.[2] The preferred candidate shall be subject to final approval by the United States. If the United States does not reject the preferred candidate within thirty (30) days of being informed of the selection by the Parish, the candidate will be deemed approved. The Parish shall provide office space for the Office of Fair Housing comparable to that provided for other offices of Parish government, and in a location containing other components of Parish government. The address and contact information for the Office of Fair Housing shall be listed on the Parish website in the same manner as other Parish offices.

23. The Office of Fair Housing shall be designated to receive and review all complaints of housing discrimination made against St. Bernard Parish or any employee, representative, or agent of the Parish. If complaints are made verbally, the Office of Fair Housing shall direct the complainant to file a written complaint. If, for whatever reason, the

[2] All written communications to be provided to the United States under this Agreement shall be mailed by express delivery to: Chief, Housing and Civil Enforcement Section, Civil Rights Division, DJ 175-29-102, United States Department of Justice, 1800 G Street, NW, Washington, D.C. 20006.

complainant cannot make a written complaint, the Office of Fair Housing shall assist the complainant in reducing the complaint to writing.

24. Within fifteen (15) days of the Office of Fair Housing receiving a written complaint of housing discrimination, the Office of Fair Housing shall provide a copy of the complaint to the United States, and inform the United States whether the complaint has been resolved. If the complaint has been resolved, the Fair Housing Coordinator or other Parish representative shall explain to the United States the terms and/or circumstances of the resolution. If the written complaint has not been resolved, the Fair Housing Coordinator or other Parish representative shall inform the United States of any efforts the Parish undertook or plans to undertake to resolve the complaint.

25. The Office of Fair Housing shall be designated as the office that current or prospective developers, renters, landlords, property managers and real estate agents may contact to obtain information about rental and rental development opportunities in the Parish.

26. The Office of Fair Housing shall maintain a section of the Parish Government's website that describes the Rental Land Grant Program set forth in Section VIII, explains the application process for a Rental Land Grant, and identifies all Available Excess Land and Potential Excess Land (as both terms are defined in Section VIII) for single and multi-family residential development in the Parish under the Rental Land Grant Program. The website shall also identify and include a description of all single and multi-family housing available for rent in the Parish to the extent such information is reasonably available to the Parish. The Parish shall request that all owners or managers of rental housing in the Parish supply it annually with information regarding available vacant land

Case 2:12-cv-00321-HGB-SS Document 334-1 Filed 03/10/13 Page 9 of 27

and available rental housing as well as the main features of such housing, the number and type of units, and any available amenities.

27. In addition, the Office of Fair Housing will make regular and good-faith efforts to identify available rental housing within the Parish. Within sixty (60) days of the establishment of the Office of Fair Housing, the Office will develop procedures for identifying available rental housing in the Parish and shall submit those procedures for approval to the United States. If the United States does not reject the proposed procedures within thirty (30) days of being informed of them by the Parish, the procedures will be deemed approved.

28. The list of land available under the Rental Land Grant Program and of available rental housing in the Parish shall be posted continuously and updated every month. The descriptions of rental housing shall include contact information for each housing provider, and identify the main features of all rental housing and affordable housing, including the relevant school district, the number and type of units, and any available amenities, to the extent such information is reasonably available to the Parish.

29. For the duration of this Agreement, the Office of Fair Housing shall issue press releases notifying the public when new multi-family rental developments become available within the Parish.

30. The Office of Fair Housing shall encourage homeownership and assist people seeking housing, including affordable housing. The Office of Fair Housing shall do so by preparing, maintaining, and distributing to prospective homebuyers a packet of written materials that shall contain at least the following information: (1) a description of the

features and amenities of St. Bernard Parish; (2) a description of the home buying process, including the role of real estate agents and the financing process; (3) information about financing assistance or home ownership incentive programs offered by the Parish or other governmental agencies; and (4) an explanation of local, state, and federal fair housing laws.

31. For the duration of this Agreement, the Office of Fair Housing shall conduct three home buying clinics annually. The clinics shall be advertised in advance on the Parish's website and on at least two consecutive Sundays prior to the clinic in the *St. Bernard Voice*, *Gambit Weekly*, and the *Times Picayune*. Each clinic will include, at a minimum, a presentation by the Office of Fair Housing about services offered by the Office, financial incentives available to home buyers and renters in St. Bernard Parish (including information about the Rental Land Grant Program), and the fair-housing rights of prospective home buyers and renters. The Office of Fair Housing shall invite representatives of the lending and real-estate sales industries to provide information about the home buying process at the clinics.

32. For the duration of this Agreement, the Office of Fair Housing shall be responsible for maintaining and preserving, or supervising the maintenance and preservation of all records, including but not limited to electronic records and files, created in association with complying with this Agreement. The Parish shall have the option of maintaining such records in either electronic or hard-copy form.

33. The Office of Fair Housing shall prepare bi-annual reports that detail all actions taken by the Parish to comply with the terms of this Agreement. Those reports will, at a

minimum, (1) identify any obstacles to the work of the Office of Fair Housing, including but not limited to obstacles caused by any other department, employee, or representative of St. Bernard Parish; (2) summarize how money allocated to the Office of Fair Housing has been budgeted and spent; (3) summarize how money allocated to advertising pursuant to Section VII, below, has been spent; (4) set forth a timetable for activities to be undertaken by the Office of Fair Housing in the coming six months; (5) summarize all actions taken by the Office of Fair Housing in the prior six months; and (6) identify how all funds required to be spent under the terms of this Agreement have been expended.

34. Within thirty (30) days of the execution of this Agreement the Parish shall apply for Community Development Block Grant (CDBG) monies for the funding of the programs and activities described in this Section. In the event the Parish is unsuccessful in obtaining funds through CDBG, the Parish shall seek and apply for funds from other governmental sources within thirty (30) days of being denied CDBG funding.

35. The Parish will forward all grant applications to the United States contemporaneously with their submission to the relevant funding agency or agencies.

36. In the event the Parish does not obtain CDBG or other governmental funding, the Parish shall fully fund the programs and activities in this Section out of its own funds.

## VII. FAIR HOUSING MARKETING PLAN

37. The Parish will spend a minimum of $25,000 per year for the duration of this Agreement on a Marketing and Advertising Campaign designed to attract renters and developers of single and multi-family rental housing to St. Bernard Parish.

38. The marketing and advertising shall be designed to target the following groups:

Case 2:12-cv-00321-HGB-SS Document 334-1 Filed 05/10/13 Page 12 of 27

(a) Regional, state, and local developers of single and multi-family housing to encourage development of single and multi-family rental properties under the Rental Land Grand Program described in Section VIII; and

(b) Renters and potential renters located in the Metropolitan New Orleans Housing Market[3] in order to encourage occupancy of rental housing within the Parish.

39. Fifty percent (50%) of the funds spent in the first year, twenty-five percent (25%) of the funds in second year, and zero percent (0%) of the funds spent in the third year of the Marketing and Advertising Campaign shall be dedicated to targeting regional, state, and local developers of single and multi-family housing to encourage development of single and multi-family rental properties under the Rental Land Grant Program.

40. Fifty percent (50%) of the funds spent in the first year, seventy-five percent (75%) of the funds in the second year, and one hundred percent (100%) in the third year of the Marketing and Advertising Campaign shall be dedicated to targeting renters and potential renters located in the Metropolitan New Orleans Housing Market in order to encourage occupancy of rental housing within the Parish.

41. The Marketing and Advertising Campaign shall include the following outreach methods:

(a) Radio, internet, billboards, or newspaper advertisements that are to be published and/or run in local, state, and regional outlets, including but not limited to the *St. Bernard Voice* and the *Times Picayune*, most likely to reach each target group;

(b) Coordination with, and the provision of advertisements to, non-profit organizations or government agencies that provide assistance to persons trying to

[3] "Metropolitan New Orleans Housing Market" is defined for purposes of this Agreement to mean: St. Bernard, Plaquemines, Orleans, Jefferson, and St. Tammany Parishes.

locate or obtain rental housing in Louisiana and/or the metropolitan New Orleans area;

(c) Coordination with, and the provision of advertisements to, government, non-profit, and/or trade organizations that provide assistance or information to multi-family rental housing developers trying to locate or develop in Louisiana and/or the metropolitan New Orleans area;

(d) Public Service Announcement(s); and

(e) Social media outlet(s).

This Paragraph shall not be construed to require the Parish to spend more than $25,000 per year on the Marketing and Advertising Campaign.

42. The Parish shall purchase its first advertisement(s) within ninety (90) days of the entry of this Agreement. The contracting process shall be open and competitive and no Parish government employee, and no family member of any Parish government employee, shall receive any profit or consideration of any kind, financial or otherwise, from the selection, administration, or execution of the marketing plan and advertising campaign.

43. For at least the first year following the date of entry of this Agreement, all the above advertisements must be submitted to the United States for approval before purchase, broadcast, or publication. If the United States does not reject the proposed advertisements within thirty (30) days of submission by the Parish, the advertisements will be deemed approved.

44. Thereafter, and for the duration of this Agreement, the United States may, at its discretion, ask the Parish to submit future advertisements to the United States for

Case 2:12-cv-00321-HGB-SS Document 334-1 Filed 05/10/13 Page 14 of 27

approval, which the Parish will provide to the United States before purchase, broadcast, or publication. If the United States does not reject the proposed advertisements within thirty (30) days of submission by the Parish, the advertisements will be deemed approved.

45. The Parish will air the Public Service Announcement referenced above and/or subsequent Public Service Announcements at least twice a day on the Parish's Cable Access Channel for the duration of the Agreement. At least one of the daily airings will be in prime time. The Parish will submit the Public Service Announcement to the cable access channels for Orleans Parish, Jefferson Parish, Plaquemines Parish and St. Tammany Parish. The Parish will send the Public Service Announcement to the following television channels: WWL-TV Channel 4, WDSU Channel 6, WGNO-ABC 26, and WVUE-Fox 8. The Parish shall, in its discretion, produce and forward audio versions of Public Service Announcements (PSAs) to radio stations in the Metropolitan New Orleans Housing Market. These PSAs will be run at varying times at the discretion of the broadcast and cable channels.

46. For the duration of this Agreement, the Parish shall maintain copies of all advertising records, including dates of publication and the contents of advertisements, videos, press releases, and notices. The Parish shall have the option of maintaining such records in either electronic or hard-copy form.

47. Within thirty (30) days of the execution of this Agreement the Parish shall apply for Community Development Block Grant (CDBG) monies for the funding of the programs and activities described in this Section. In the event the Parish is unsuccessful in

Case 2:12-cv-00321-HGB-SS Document 334-1 Filed 05/10/13 Page 15 of 27

obtaining funds through CDBG, the Parish shall seek and apply for funds from other governmental sources within thirty (30) days of being denied CDBG funding.

48. The Parish will forward all grant applications to the United States contemporaneously with their submission to the relevant funding agency or agencies.

49. In the event the Parish does not obtain CDBG or other governmental funding, the Parish shall fully fund the programs and activities in this Section out of its own funds.

**VIII. RENTAL LAND GRANT PROGRAM**

50. The Parish shall establish a Rental Land Grant Program for the purpose of incentivizing the creation of new rental housing in the Parish and/or the rehabilitation of existing, but unoccupied, housing in the Parish for rental purposes. The Rental Land Grant Program shall be administered by the Office of Fair Housing and shall operate for a minimum of five (5) years.

51. Within sixty (60) days of this Agreement, the Parish shall conduct an inventory of all Parish government lands which are not being utilized for government purposes but are suitable for development or renovation as single-family or multi-family rental housing, whether or not such use is allowed under the land's current zoning designation, and shall deem such lands (together with any improvements thereon) as "Available Excess Lands."

52. Within sixty (60) days of this Agreement, the Parish shall conduct an inventory of all lands within St. Bernard Parish suitable for development or renovation as single-family or multi-family rental housing, whether or not rental use is allowed under the land's current zoning designation, which the Parish has reason to believe may become Available

Excess Lands and shall deem such lands (together with any improvements thereon) as "Potential Excess Lands."

53. The Parish shall forward a listing of its inventory of all Available Excess Lands and all Potential Excess Lands to the United States upon completion of the respective inventories and publish updated versions of each on its website as described in Section VI of this Agreement.

54. The Rental Land Grant Program shall be included in and advertised as a part of the Fair Housing Marketing Plan as described in Section VII.

55. Within ninety (90) days of the entry of this Agreement, the Parish shall develop and publish neutral written criteria for awarding Available Excess Lands and Potential Excess Lands under the Rental Land Grant Program to "Qualified Applicants." The award and applicant qualification processes shall be open and non-discriminatory and no member or family member of any Parish government employee shall receive any distribution, profit or consideration of any kind, financial or otherwise, under the Rental Land Grant Program. The Parish shall submit the award and applicant qualification criteria for approval by the United States upon their completion.

56. Before distributing any lands to any Qualified Applicant, the applicant must enter into a written fair-housing agreement with the Parish that must include, at a minimum:

   (a) a description of the number and location of the rental units to be developed or renovated, the specific renovations or developments to be completed, and a schedule for completion;

(b) a statement that the owner is aware of his or her obligations under the Fair Housing Act, and will inform his or her agents or employees of their obligations under the Fair Housing Act;

(c) a statement that the owner shall provide the Office of Fair Housing with a description of the price, availability, and number of rental units he or she controls and agree that such information may be posted on the Office's website; and

(d) proof to Office of Fair Housing of how lands received pursuant to this Section were utilized.

57. The Parish shall transfer all right, title, and interest in Available Excess Lands to Qualified Applicants under the Rental Land Grant Program by quitclaim deed and without reimbursement, except each transferee shall agree in writing to build or (re)develop habitable rental property on the transferred property and to use it exclusively as a rental property for a period of three (3) years from the transfer; additionally such agreement shall be recorded as a restrictive covenant that shall run with the land with automatic reversion of the property to the Parish in the event of breach of the covenant. Such covenant shall be in effect for three (3) years after the transfer of Available Excess Land to each qualified applicant.

58. The Parish shall offer to the public, through the procedures described in this Section, Section VI, and Section VII, a minimum of $83,000 worth of Available Excess Lands and Potentially Available Excess Lands for each of the five (5) years that the Rental Land Grant Program shall be in operation. Valuation of the land transfers for purposes of this Paragraph shall be determined by a contemporaneous appraisal by a licensed third-party

appraiser approved by the United States. If the United States does not reject the appraiser selected by the Parish within thirty (30) days of being informed of the selection by the Parish, the appraiser will be deemed approved.

59. In the event that a Qualified Applicant applies for Available Excess Land offered under the previous Paragraph, the Parish shall, as soon as practicable, transfer such land to the Qualified Applicant pursuant to the transfer procedures set forth in this Section. In the event that a Qualified Applicant applies for Potential Excess Land offered under the previous Paragraph, the Parish shall, as soon as practicable, take all necessary steps to convert such land to Available Excess Lands, and thereafter transfer such land to the Qualified Applicant pursuant to the transfer procedures set forth in this Section.

60. Within thirty (30) days of the execution of this Agreement the Parish shall apply for Community Development Block Grant (CDBG) monies for the funding of the programs and activities described in this Section. In the event the Parish is unsuccessful in obtaining funds through CDBG, the Parish shall seek and apply for funds from other governmental sources within thirty (30) days of being denied CDBG funding.

61. The Parish will forward all grant applications to the United States contemporaneously with their submission to the relevant funding agency or agencies.

62. In the event the Parish does not obtain CDBG or other governmental funding, the Parish shall fully fund the programs and activities in this Section out of its own funds.

63. The Rental Land Grant Program shall be fully funded and in effect for a period of five (5) years from the execution of this Agreement.

## IX. RECORD KEEPING AND REPORTING

64. Within one-hundred and eighty (180) days of the date of entry of this Agreement, and every six (6) months thereafter for the duration of this Agreement, the Parish shall deliver to counsel for the United States copies of the bi-annual report described in Section VI, above. The Parish will also provide a final report ninety (90) days before the expiration of this Agreement.

65. For the duration of this Agreement, upon reasonable notice to counsel for Parish, representatives of the United States shall be permitted to inspect and copy all records associated with compliance with this Agreement at any and all reasonable times or, upon request by the United States, Defendant shall provide copies of such documents. The Parish shall have the option of maintaining such records in either electronic or hard-copy form.

## X. COMPENSATION FOR AGGRIEVED PERSONS

66. The Defendant agrees to pay, within thirty (30) days of the entry of this Agreement, $275,000, as set forth in the amounts listed in Appendix A to this Agreement, to the persons identified in Appendix A ("Aggrieved Persons") for the purpose of compensating them for any and all harms arising from any allegations made in this proceeding, with the acknowledgement that the Parish does not admit liability. The payment shall be in the form of an electronic funds transfer pursuant to written instructions to be provided by the United States.

67. Within forty-five (45) days after the United States has received payment from Defendant as described in the preceding paragraph, the United States will obtain a signed release in the form of Appendix B of all claims, legal or equitable, that each Aggrieved Person might have against the Defendant. The United States shall thereafter distribute payment to the Aggrieved Person and deliver the original, signed release to counsel for the Defendant. No Aggrieved Person shall be paid until he or she has signed and delivered to counsel for the United States a release as required by this paragraph. If an Aggrieved Person does not deliver a signed release to the United States within ninety (90) days of payment by the Parish of the entire amount required to be paid under this Section, the United States shall return to the Parish the funds designated for such non-compliant Aggrieved Person per Appendix B.

**XI. RELATED CASES**

68. The Plaintiffs in consolidated cases Nos. 12-cv-322 and 12-cv-325 have agreed to resolve their claims against the Parish for the sum of $ 1,650,000, the terms of which are set forth in a separate agreement. None of the private plaintiffs in 12-cv-322 and 12-cv-325 is a party to this Agreement.

**XII. CIVIL PENALTY**

69. Within thirty (30) days of the entry of this Agreement, Defendant shall pay a total of $15,000 (fifteen thousand dollars) to the United States Treasury as a civil penalty pursuant to 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest. The payment shall be in the form of an electronic funds transfer pursuant to written instructions to be provided by the United States.

## XIII. JURISDICTION, SCOPE OF SETTLEMENT AGREEMENT, AND TIME FOR PERFORMANCE

70. The parties stipulate that the Court has personal jurisdiction over the Parish for purposes of this Settlement Agreement and subject matter jurisdiction over the United States' claims in this action.

71. The Court shall retain jurisdiction for the duration of this Agreement to enforce its terms, after which time the case shall be dismissed with prejudice without the necessity of any party having to file any further pleadings or motions, including but not limited to, any motion(s) for satisfaction of judgment.

72. This Agreement shall be in effect for a period of three (3) years from the date of entry of this Agreement, after which time the Court will issue an order dismissing the case with prejudice, with the exception of all provisions related to the Rental Land Grant Program, which shall remain in effect and enforceable under the Court's jurisdiction for a period of five (5) years from the date of entry of this Agreement.

73. After a period of five (5) years from the date of entry of this Agreement, the Court will issue an order releasing the Parish of all provisions remaining in effect and dismissing the case in its entirety with prejudice.

74. Any time limits for performance imposed by this Agreement may be extended by mutual written agreement of the parties. The other provisions of this Agreement may be modified by written agreement of the parties. Any modification by written agreement of the parties will be effective upon filing of the written agreement with the Court, and shall remain in effect for the duration of the Agreement or unless the Court indicates through written order that it has not approved the modification.

75. The United States may move the Court to extend the duration of the Agreement in the event of noncompliance, whether intentional or not, with any of its terms, or if it believes the interests of justice so require.

76. The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Agreement prior to bringing such matters to the Court for resolution. However, in the event the United States contends that there has been a failure by Defendant, whether willful or otherwise, to perform in a timely manner any act required by this Agreement or otherwise to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform. This agreement contemplates that the Parish would have the opportunity to respond to any such motion.

77. This Agreement is enforceable only by the parties. No person or entity is intended to be a third-party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action. Accordingly, no third party or entity may assert any claim or right as a third-party beneficiary or protected class under this Agreement.

## XIV. EFFECT ON LITIGATION HOLDS

78. The parties agree that, as of the date of entry of this Agreement, litigation is not reasonably foreseeable concerning the matters described herein. To the extent that any party previously implemented a litigation hold to preserve documents, electronically

stored information, or things related to the matters described in this Agreement, the party is no longer required to maintain such a litigation hold.

79. The preceding paragraph does not relieve Defendant of any record keeping responsibilities imposed by the terms of this Agreement.

**XV. COSTS OF LITIGATION**

80. Each party will bear its own costs and attorneys' fees associated with this litigation, and shall waive the right to any claim of sanctions arising from conduct that may have occurred prior to the date of entry of this Agreement.

Dated: May 10, 2013.

*For the United States*:

DANA BOENTE
Acting United States Attorney
Eastern District of Louisiana

SANDRA EMA GUTIERREZ
Assistant United States Attorney
LA Bar #17888
Eastern District of Louisiana
United States Attorney's Office
500 Poydras St., 16th Floor
New Orleans, Louisiana 70130
Phone: (504) 680-3000
Sandra.Gutierrez@usdoj.gov

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM, Chief
MICHAEL S. MAURER, Deputy Chief
DC Bar #420908
ROGER T. SEVERINO (T.A.)
DC Bar #488685
SEAN R. KEVENEY
TX Bar #24033862
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
(202) 353-9732; Fax: (202) 514-1116
Sean.R.Keveney@usdoj.gov
Roger.Severino@usdoj.gov
Washington, D.C. 20530
Phone: (202) 353-9732
Fax: (202) 514-1116
Roger.Severino@usdoj.gov
Sean.R.Keveney@usdoj.gov

Case 2:12-cv-00321-HGB-SS Document 334-1 Filed 05/10/13 Page 25 of 27

*For St. Bernard Parish*:

/s/ Jeanne N. Juneau
JEANNE N. JUNEAU
Bar Roll No. 25123
8201 West Judge Perez Drive
Chalmette, Louisiana 70043
Phone: 504-278-4349
Fax: 504-278-4493
jjuneau@sbpg.net

/s/ J. Warren Gardner, Jr
J. WARREN GARDNER, JR.
JAMES ARISTIDE HOLMES
MARY BETH MEYER
Christovich & Kearney, LLP
Pan American Life Center
601 Poydras St., Suite 2300
New Orleans, LA 70130-6078
Phone: 504-561-5700
jwgardner@christovich.com
jaholmes@christovich.com
mbmeyer@christovich.com

FRANCIS B. MULHALL, T.A.
BAR #17502
ROBERT J. DAIGRE BAR #23016
3900 N. Causeway Blvd.
Suite 1470
Metairie, LA 70002
Telephone: (504) 836-7536
franmulhall@aol.com
daigre@daigrelaw.com

**APPENDIX A**
**2:12-cv-321 Aggrieved Persons**

| **Name** | | **Amount of Damages** |
|---|---|---|
| 1. | Okechukwu Okafor | $ 143,609 |
| 2. | Jeffrey Keys | $ 58,719 |
| 3. | James Maiorana | $ 21,102 |
| 4. | Robert Wolfe | $ 18,981 |
| 5. | Terra Waiters | $ 18,496 |
| 6. | Chevelle Richard | $ 9,542 |
| 7. | Cherie Davis | $ 2,385 |
| 8. | Rick Johnson | $ 2,165 |

**APPENDIX B**

**FULL AND FINAL RELEASE OF CLAIMS**

In consideration for the parties' agreement to the terms of the Agreement they entered into in the case of United States v. St. Bernard Parish, Civil Action No. 2:12-cv-321, as approved by the United States District Court for the Eastern District of Louisiana, and in consideration for the payment of $________________, I, ___________________________, do hereby fully release and forever discharge St. Bernard Parish, along with its insurers, attorneys, related companies, principals, predecessors, successors, assigns, affiliates, partners, directors, officers, agents, employers, shareholders, subsidiaries, employees, heirs, executors, and administrators and any persons acting under its direction or control from any and all fair housing claims set forth or related to the facts at issue in the litigation referenced above, or in any way related to that litigation, and any other claims arising from alleged housing discrimination that I may have had against any of them for any of Defendant's actions or statements related to those claims through the date of the entry of the Agreement.

I also acknowledge that I have been informed that I may review the terms of this Release with an attorney of my choosing, and to the extent that I have not obtained legal advice, I voluntarily and knowingly waive my right to do so. I waive any claims I may have against the United States, the Department of Justice, or its agents or employees, arising out of this action. This General Release constitutes the entire agreement between Defendant and me, without exception or exclusion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of _______, 2013.

____________________________________
[Signature]

____________________________________
[Print Name]