# Exhibit 3

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/10/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA ex rel. ANTI-DISCRIMINATION CENTER OF METRO NEW YORK, INC.,

Plaintiff,

v.

WESTCHESTER COUNTY, NEW YORK,

Defendant.

**STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL**

No. 06 Civ. 2860 (DLC)

WHEREAS, the development of affordable housing in a way that affirmatively furthers fair housing is a matter of significant public interest;

WHEREAS, the broad and equitable distribution of affordable housing promotes sustainable and integrated residential patterns, increases fair and equal access to economic, educational and other opportunities, and advances the health and welfare of the residents of the defendant County of Westchester, New York (the "County") and the municipalities therein;

WHEREAS, the County receives federal funding for housing and community development, including funds under the Community Development Block Grant ("CDBG") program, the Emergency Shelter Grant program, the HOME Investment Partnerships, and the Housing Opportunities for Persons with AIDS program;

WHEREAS, as a recipient of CDBG funds, the County must comply with, *inter alia*, the provisions of the Housing and Community Development Act, including the requirement that it affirmatively further fair housing ("AFFH") as set forth in 42 U.S.C. § 5304(b)(2);

WHEREAS, as an applicant for those funds, the County was required to certify – as a material condition of its eligibility to receive such funds – that it would AFFH;

WHEREAS, the United States and the County agree and acknowledge that: (i) pursuant to New York State law, municipal land use policies and actions shall take into consideration the housing needs of the surrounding region and may not impede the County in its performance of duties for the benefit of the health and welfare of the residents of the County; (ii) it is incumbent upon municipalities to abide by such law and for municipalities that are parties to the Urban County Cooperation Agreement to comply with that agreement, including the commitment to AFFH; and (iii) it is appropriate for the County to take legal action to compel compliance if municipalities hinder or impede the County in its performance of such duties, including the furtherance of the terms of this Stipulation and Order;

WHEREAS, the County was obligated to conduct an analysis of the impediments to fair housing choice within its jurisdiction (an "AI"), and obligated to take appropriate actions to overcome the effects of any impediments identified through that analysis;

WHEREAS, for the years 2000 to the present, the County has certified that it was in compliance with those requirements;

WHEREAS, the Anti-Discrimination Center of Metro New York, Inc. (the "Relator") filed a civil action as a relator under the qui tam provisions of the False Claims Act, 31 U.S.C. §§ 3729 et seq. (the "False Claims Act"), against the County to recover damages allegedly sustained by the United States of America (the "United States" or "Government") as a result of the County's alleged violations of the False Claims Act during the period April 1, 2000 to April 1, 2006 (the "Relator's Complaint");

WHEREAS, the Relator alleged in particular that the County had failed to conduct a meaningful AI and failed to take appropriate steps to overcome existing and known impediments to fair housing arising from racial discrimination and segregation;

WHEREAS, the Relator further alleged that, as a result of such failures and inaction, the County's certifications to the United States to receive CDBG and other federal funds were false;

WHEREAS, the United States subsequently filed a notice of intervention pursuant to 31 U.S.C. § 3730(b)(4), and filed a Complaint-in-Intervention (the "Government's Complaint") against the County (i) to recover, under the False Claims Act, damages sustained by, and penalties owed to, the United States as the result of the County having knowingly presented or caused to be presented to the United States false claims to obtain federal funding for housing and community development, and (ii) seeking, pursuant to 42 U.S.C. § 5311(b), appropriate remedies for the County's non-compliance with community development requirements, including mandatory or injunctive relief;

WHEREAS, the United States Department of Housing and Urban Development ("HUD") contends that it has administrative claims against the County to address some or all of the alleged conduct set forth in the Relator's Complaint and the Government's Complaint;

WHEREAS, the County denies all of the allegations in the Relator's Complaint and the Government's Complaint, denies that it has any liability relating to these allegations, and denies that the United States was damaged by its actions;

WHEREAS, the County contends that it reasonably believed that it was complying with the requirement to AFFH because, among other things, the County maintains that: (i) it actively supported and gave priority status to the construction, rehabilitation, and preservation of affordable housing; (ii) it undertook to analyze impediments to housing opportunities and submitted AIs to HUD in 2000 and 2004; (iii) prior to the filing of relator's complaint, it never had its submissions or certifications to HUD disapproved or rejected; and (iv) the HUD Office of

Policy Development and Research identified the County in 2005 as a community that demonstrated effective sub-recipient management practices with respect to CDBG grants;

WHEREAS, this Stipulation and Order of Settlement and Dismissal (the "Stipulation and Order") is neither an admission by the County of any liability or wrongful conduct nor a concession by the United States that its claims are not well-founded; and

WHEREAS, to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation, pursuant to the terms set forth below, the United States and the County desire to reach a full and final compromise and resolution of the claims against the County in this action;

NOW, THEREFORE, in consideration of the mutual promises, undertakings, obligations and commitments set forth below, the parties hereto covenant and agree as follows:

**Subject Matter Jurisdiction**

1. The parties hereto consent to this Court's exercise of subject matter jurisdiction over this action and personal jurisdiction over each of them.

**Administrative Payment to HUD**

2. The County shall pay twenty-one million, six hundred thousand ($21,600,000) into the County's account with HUD in accordance with HUD's administrative procedures. Such payment is for settlement of the claims brought pursuant to this action and not for the financing of a capital improvement. The County shall make such payment by electronic funds transfer pursuant to written instructions that the United States Attorney's Office for the Southern District of New York or HUD will provide to counsel for the County. HUD shall make those funds available to the County for the development of new affordable housing units that will AFFH in the County, provided that the County's use and expenditure of the funds, and any program

income earned from the use of the funds, as defined by 24 C.F.R. § 570.500(a), shall be subject to the requirements of the CDBG program and the terms and conditions set forth in paragraph 7.

**Payment to the Federal Government to Settle False Claims Act Allegations**

3. The County shall pay to the United States the sum of thirty million dollars ($30,000,000) (the "Settlement Amount"), in full compromise and satisfaction of the False Claims Act allegations in this action. This Settlement Amount shall constitute a debt due and owing upon entry of this Stipulation and Order by the Court, and shall be discharged upon payment to the United States, no later than ninety (90) calendar days after the Court's entry of this Stipulation and Order. With respect to such payment, the County shall receive a credit of twenty-one million, six hundred thousand ($21,600,000) for the payment to HUD set forth in paragraph 2. The County shall pay the remaining eight million, four hundred thousand ($8,400,000) to the United States by electronic funds transfer pursuant to written instructions that the United States Attorney's Office for the Southern District of New York will provide to counsel for the County.

**Relator's Attorneys' Fees Under the False Claims Act**

4. Pursuant to 31 U.S.C. § 3730(d)(1), no later than ninety (90) calendar days after the Court's entry of this Stipulation and Order, the County shall pay to Relator's Counsel the sum of two million, five hundred thousand dollars ($2,500,000) as expenses, attorneys' fees, and costs in full settlement of Relator's claims against the County. The County shall make such payment pursuant to instructions that counsel for the Relator, no later than five (5) business days prior to the due date for payment, shall provide to counsel for the County. The United States has no liability or responsibility for the payment of the Relator's expenses, attorneys' fees, or costs.

**Mandatory and Injunctive Relief to Develop Affordable Housing to AFFH in Settlement of Housing and Community Development Act Claims**

5. The County shall, in full compromise and satisfaction of the Housing and Community Development Act claims in this action, undertake the mandatory and injunctive relief set forth below. To pursue such equitable relief, the County shall, in addition to the payment of the Settlement Amount described in paragraph 3, secure resources sufficient to ensure the equitable relief is funded by thirty million dollars ($30,000,000) for County fiscal years 2009 through 2014 for land acquisition, infrastructure improvement, construction, acquisition, or other necessary direct costs of development of new affordable housing units that AFFH as set forth in paragraph 7.

6. The County shall meet the funding obligation set forth in paragraph 5 solely through County funds, and not from any Federal, State, or other funding sources.

**County's Development of Affordable AFFH Units**

7. Through the use of the funds set forth in paragraphs 2 and 5, the County shall, within seven (7) years of the entry of this Stipulation and Order, ensure the development of at least seven hundred fifty (750) new affordable housing units that meet the terms and conditions set forth in this paragraph ("Affordable AFFH Units"):

(a) No less than six hundred thirty (630) of the Affordable AFFH Units shall meet the following locational criteria:

(i) the municipality in which the units are to be developed had, according to 2000 Census data, both a "single race African-American only" population less than three (3) percent and a Hispanic population less than seven (7) percent, as calculated after removing people living in group

quarters as defined by the 2000 Census of Population and Housing (U.S. Census Bureau) ("group quarters") from the relevant population; and

(ii) the units shall not be developed in any census block which had, according to 2000 Census data, (A) a "single race African-American only" population of more than ten (10) percent and a total African-American population of twenty (20) or more, or (B) a Hispanic population of more than ten (10) percent and a total Hispanic population of twenty (20) or more, as calculated after removing people living in group quarters from the relevant population, except to the extent such requirement is waived pursuant to paragraph 15(a)(ii).

(b) A maximum of sixty (60) of the Affordable AFFH Units may meet the following locational criteria:

(i) the municipality in which the units are to be developed had, according to 2000 Census data, both a "single race African-American only" population less than seven (7) percent and a Hispanic population less than ten (10) percent, as calculated after removing people living in group quarters from the relevant population; and

(ii) the units meet the terms and conditions set forth in paragraph 7(a)(ii).

(c) A maximum of sixty (60) of the Affordable AFFH Units need not meet the locational criteria set forth in paragraphs 7(a) or 7(b), provided that:

(i) the municipality in which the units are to be developed had, according to 2000 Census data, a "single race African-American only" population less than fourteen (14) percent and a Hispanic population less than sixteen

(16) percent, as calculated after removing people living in group quarters from the relevant population;

(ii) no funds governed by this Stipulation and Order shall be used for such units until one hundred seventy-five (175) units meeting the locational criteria set forth in paragraph 7(a) have received building permits; and

(iii) the County shall use no more than four million dollars ($4,000,000) of the funds set forth in paragraph 5, and none of the funds described in paragraphs 2 and 3, on such units.

(d) At least fifty (50) percent of the Affordable AFFH Units shall be rental units, of which rental units at least twenty (20) percent shall be affordable to and occupied by households with incomes at or below fifty (50) percent of Area Median Income ("AMI"), with the remainder of such rental units affordable to and occupied by households with incomes at or below sixty-five (65) percent of AMI. Affordable as used in this subparagraph shall be defined by the rent limitations for HOME-assisted units set forth in 24 C.F.R. § 92.252 (a) and (b). Such units shall be controlled by deed restrictions or other legal measures to ensure that they remain affordable to and occupied by eligible households for a period of no less than fifty (50) years. Such rental units may be converted to cooperative or condominium occupancy during the fifty (50) year period, provided that:

(i) tenants shall be given the opportunity to purchase their units;

(ii) the affordability levels provided in this paragraph are preserved; and

(iii) tenants who do not exercise such a purchase option shall not be displaced as a result of the conversion.

(e) The remaining portion of Affordable AFFH Units shall be home-ownership units affordable to and occupied by households with incomes at or below eighty (80) percent of AMI and shall be controlled by deed restrictions or other legal measures to ensure that they remain affordable to and occupied by eligible households for a period of no less than fifty (50) years. Affordable as used in this subparagraph shall mean no more than thirty-three (33) percent of the adjusted income of a family whose annual income equals eighty (80) percent of the AMI for principal, interest, taxes, insurance, and condo fees where applicable, based on a no more than forty-year fixed-rate mortgage with a down payment of five (5) percent.

(f) No more than twenty-five (25) percent of the Affordable AFFH Units shall be units intended for occupancy by senior citizens that are controlled by age restrictions ("senior units"). No funds governed by this Stipulation and Order shall be used for such senior units until at least one hundred seventy-five (175) non-senior units meeting all of the criteria specified in this paragraph have received building permits, and no funds governed by this Stipulation and Order shall be used for any senior unit above a total of ninety (90) senior units until three hundred fifty (350) non-senior units have received building permits.

(g) In the County's facilitation of the development of the Affordable AFFH Units, priority shall be given to sites within qualifying municipalities and census tracts that are located in close proximity to public transportation. No sites,

however, shall be excluded from consideration because of lack of public transportation access.

(h) No more than twenty-five (25) percent of the total number of Affordable AFFH Units described in this paragraph may be achieved through the acquisition of existing housing units, provided that:

(i) all such units shall meet all terms and conditions set forth in this paragraph;

(ii) no such units, before acquisition, may be controlled by a deed restriction or other legal measure to be affordable to households with incomes at or below eighty (80) percent of AMI; and

(iii) if any such units, before acquisition, are affordable to households with incomes at or below eighty (80) percent of AMI, they shall be made affordable, after acquisition, through deed restrictions or other legal measures that ensure they remain affordable to and occupied by households with incomes at or below sixty-five (65) percent of AMI for a period of no less than fifty (50) years.

(i) The County shall use all available means as appropriate to achieve the objectives set forth in this paragraph, including, but not limited to, developing financial or other incentives for other entities to take steps to promote the objectives of this paragraph, and conditioning or withholding the provision of County funds on actions that promote the objectives of this paragraph. It is anticipated that the County will accomplish the objectives of this paragraph by leveraging the funds that it is expending pursuant to paragraphs 2, 3 and 5 with

supplemental funds, and nothing in this paragraph shall be construed to prevent the County from meeting the objectives of this paragraph by identifying and combining other affordable housing funding sources.

(j) In the event that a municipality does not take actions needed to promote the objectives of this paragraph, or undertakes actions that hinder the objectives of this paragraph, the County shall use all available means as appropriate to address such action or inaction, including, but not limited to, pursuing legal action. The County shall initiate such legal action as appropriate to accomplish the purpose of this Stipulation and Order to AFFH.

8. Affordable units in housing developments that have received preliminary or final land use or financing approval at the time of the Court's entry of this Stipulation and Order shall be excluded from the Affordable AFFH Units described in paragraph 7. If a development with such units is no longer viable and the County believes it can resuscitate the development by providing financing or other specified means within the County's control, the County can seek inclusion of the units in such a development pursuant to paragraph 13(h). The County shall provide to HUD a list of housing units that are excluded pursuant to this paragraph contemporaneously with the execution of this Stipulation and Order.

**Implementation and Enforcement of the Settlement – Appointment of Monitor**

9. The Government, in its sole discretion but with input from the County, shall select a monitor to be appointed by the Court (the "Monitor"). The Government shall submit the name of the Monitor to the Court for approval within sixty (60) calendar days of the Court's entry of this Stipulation and Order.

10. The Monitor shall serve for so long as the County's obligations set forth in this Stipulation and Order remain unsatisfied. Upon the County's satisfaction of its obligations set forth in this Stipulation and Order, the Monitor shall inform the Court, the Government, and the County that the services of the Monitor are no longer needed.

11. If the Monitor is unable to complete the Monitor's term of office, the Government shall submit, after consultation with the County, another candidate to serve as Monitor for the Court's review and approval.

12. The Government, in its sole discretion, may remove and terminate the service of the Monitor. In such an event, the Government shall submit, after consultation with the County, another candidate to serve as Monitor for the Court's review and approval.

13. The Monitor shall have all powers, rights, and responsibilities necessary to achieve the AFFH purposes of this Stipulation and Order, including the authority to:

(a) Review all County programs, policies, and procedures to ensure compliance with this Stipulation and Order.

(b) Take reasonable and lawful steps to be fully informed about all aspects of the County's compliance with this Stipulation and Order. Specifically, the Monitor shall have access to all books, records, accounts, correspondence, files and other documents, and electronic records of the County and its officers, agents, and employees concerning the subject matter and implementation of this Stipulation and Order. It is recognized that the Monitor may have access to sensitive information; accordingly, the Monitor shall limit distribution of such information obtained hereby to representatives of the Department of Justice and HUD, and consultants and personnel retained by the Monitor. The

Monitor shall not have access to materials protected by the attorney-client privilege or the work-product doctrine.

(c) Identify, recommend, and monitor implementation of additional actions by the County needed to ensure compliance with this Stipulation and Order.

(d) Make recommendations, if needed, to the County and the Government of any remedies to foster compliance with applicable laws and regulations.

(e) Seek outside expert technical assistance to review the County's actions, advise the County, and develop recommendations for County action. The County and HUD shall explore the availability of private funding to support such technical assistance.

(f) Employ, in accordance with paragraph 17(b), personnel necessary to assist in the proper discharge of the Monitor's duties, including but not limited to a housing advisor.

(g) Apply to the Court, upon reasonable notice to the County and the Government, for such assistance as may be necessary to the performance of the Monitor's duties. The Monitor shall provide the Government and the County with copies of the application and all accompanying materials.

(h) Deem units otherwise excluded from the AFFH Affordable Units pursuant to paragraph 8 as AFFH Affordable Units based on compelling evidence provided by the County that, even though the units are in a development that previously received preliminary or final land use or financing approval, the development is no longer viable and the County can resuscitate the development in a manner that complies with the terms and conditions set forth

in paragraph 7 by providing financing or other specified means within the County's control.

14. The Monitor shall have the authority to resolve disputes between the County and the Government:

(a) At all stages, the County and the Government pledge good faith to resolve their disputes with regard to the implementation of this Stipulation and Order.

(b) In the event such efforts fail to resolve the dispute, the County and the Government shall, in writing and in accordance with such procedures as the Monitor may establish, notify the Monitor of the dispute.

(c) The Monitor shall, within a reasonable time from receiving such notification, issue to the County and the Government a written report and recommendation addressing the matter(s) in dispute.

(d) Within ten (10) business days of receipt of the Monitor's report and recommendation, the County or the Government may seek additional review from the magistrate judge assigned to this case; otherwise, the Monitor's resolution shall be final, binding and non-appealable. Should the County or the Government seek such additional review from the assigned magistrate judge, the relevant provisions of the Federal Rules of Civil Procedure, the Local Rules and the Court's Individual Rules governing reports and recommendations from a magistrate judge shall apply.

15. The Government and the County understand that the nature of real estate development, especially in the context of developing affordable housing, depends on a number of factors that cannot always be predicted or controlled. To address those uncertainties of real

estate development, the Monitor, consistent with the terms of paragraphs 28, 29, 39 and 40, shall conduct an assessment of the County's efforts and progress related to the obligations set forth in this Stipulation and Order, particularly those described in paragraph 7, to be completed on December 31, 2011 and every two years thereafter until the expiration of the Stipulation and Order. In making such an assessment, the Monitor may consider any information appropriate to determine whether the County has taken all possible actions to meet its obligations under this Stipulation and Order, including, but not limited to, exploring all opportunities to leverage funds for the development of the Affordable AFFH Units, promoting inclusionary and other appropriate zoning by municipalities by offering incentives, and, if necessary, taking legal action.

(a) For one hundred eighty (180) calendar days following each such assessment, the Monitor shall have the authority, after having first secured the written consent of the Government and the County, to modify or refine:

(i) paragraph 5 to the sole extent of specifying an allocation of the resources specified therein among uses such as the purchase of land, infrastructure improvements, construction, or other necessary development activities;

(ii) the applicability of sub-paragraph 7(a)(ii) to the sole extent of authorizing development of Affordable AFFH Units in census blocks otherwise precluded by that sub-paragraph upon a written finding by the Monitor that to do so would not be inconsistent with the purpose of this Stipulation and Order to AFFH;

(iii) the locational criteria set forth in sub-paragraph 7(a), in the event that the Monitor determines that such locational criteria do not serve the purpose

of the Stipulation and Order to AFFH, to take into account 2010 Census data in the determination of eligible municipalities and census blocks set forth in paragraphs 7(a), 7(b), and 7(c), or to remedy a concentration or other issue related to the geographic distribution of the Affordable AFFH Units that does not serve the purpose of the Stipulation and Order to AFFH, except no municipality included under the calculations set forth in paragraphs 7(a), 7(b), or 7(c) shall be excluded after modification or refinement to those subdivisions;

(iv) the terms, conditions and criteria set forth in sub-paragraphs 7(d) and 7(e) that govern the development of Affordable AFFH Units;

(v) the benchmarks described in paragraph 23 and the interim or final time frames in which the Affordable AFFH Units must be developed, provided that the Monitor determines that the County has employed best efforts and has taken all appropriate actions within its control to meet its obligations, but, due to factors outside of the County's control, the County will not be able to meet those obligations;

(vi) the number of Affordable AFFH Units described in paragraph 7, provided that: (A) such modification or refinement occurs no earlier than four years following the entry of the Stipulation and Order, and no earlier than two years after the Monitor has first modified or refined the final time frames in which the Affordable AFFH Units must be developed; and (B) the County has provided compelling evidence and the Monitor finds that the County has taken all appropriate actions to

meet the obligations set forth in paragraph 7, further extension of the time frames will not be sufficient to permit the possible satisfaction of the County's obligations, and specific factors beyond the County's influence or control exist that preclude the County's satisfaction of its obligations; and

(vii) the AFFH obligations described in paragraph 33.

(b) The Monitor, however, shall have no authority to modify or refine any other provisions of this Stipulation and Order.

(c) The Monitor shall provide the Government and the County written notification of any proposed modifications or refinements, upon recommendation of either the Government or the County or in the Monitor's discretion, and all decisions concerning those proposed modifications or refinements.

(d) In the event that the Government and the County provide the requisite consent, modifications or refinements approved by the Monitor shall be submitted to the Court to be so-ordered and incorporated into this Stipulation and Order.

(e) The County, within ten (10) business days of receipt of notice pursuant to sub-paragraph 15(c), may seek review with the magistrate judge assigned to this case where the Government has refused to provide consent or the Monitor has refused to approve a proposal from the County. Should the County seek such review with the assigned magistrate judge, the relevant provisions of the Federal Rules of Civil Procedure, the Local Rules, and the Court's Individual Rules governing reports and recommendations from a magistrate judge shall apply.

(f) The Government, within twenty (20) business days of receipt of notice pursuant to sub-paragraph 15(c), may seek review with the magistrate judge assigned to this case where the County has refused to provide consent or the Monitor has refused to approve a proposal from the Government. Should the Government seek such review with the assigned magistrate judge, the relevant provisions of the Federal Rules of Civil Procedure, the Local Rules, and the Court's Individual Rules governing reports and recommendations from a magistrate judge shall apply.

16. The County shall direct all County officers, employees, agents, and consultants to cooperate fully with the Monitor concerning any matter within the Monitor's jurisdiction as set forth in this Stipulation and Order, including providing any documents requested by the Monitor and submitting to interviews by the Monitor.

17. The County shall, out of funds exclusive of the amounts identified in paragraphs 2-5, 33(h) and 38, pay for the Monitor and all necessary personnel and consultants retained by the Monitor to assist in the proper discharge of the Monitor's duties. The Monitor and any persons retained by the Monitor shall receive reasonable compensation comparable to that received by personnel and consultants of similar skill and experience, as well as reimbursement for any reasonable expenses necessary to the performance of the Monitor's role.

(a) On a monthly basis, the Monitor shall submit to the County an itemized invoice, with supporting material, for services and expenses. The Monitor shall also certify that the Monitor's expenses were reasonably incurred. The County shall have ten (10) business days from receipt in which to contest the invoice by filing a written objection with the Monitor. If the Monitor and the

County are unable to resolve any objections, the Monitor shall refer the matter to the assigned magistrate judge for decision. If no objection is submitted, the County shall pay all amounts due within fifteen (15) business days of receipt and, if a written objection is filed, all amounts not in dispute shall be paid as provided above.

(b) During the first two years following the entry of this Stipulation and Order, the Monitor shall incur no more than $250,000 in annual fees and expenses for which the County is responsible, and no more than $175,000 in such fees and expenses annually thereafter, provided that the Monitor may make an application to the magistrate judge to incur fees and expenses for which the County shall be responsible beyond those amounts upon a showing by the Monitor that such fees are appropriate to fulfill the obligations set forth in this Stipulation and Order.

**The County's Implementation Plan, Benchmarks, Additional Obligations to AFFH, and AI**

18. The County shall, within one hundred twenty (120) calendar days of the Court's entry of this Stipulation and Order, provide to the Monitor and the Government a plan setting forth with specificity the manner in which the County plans to implement the provisions of this Stipulation and Order, set forth in paragraph 7, concerning the development of Affordable AFFH Units (the "implementation plan"). Provided that the Government, in its sole discretion, provides written consent, the Monitor may extend the deadline once for the submission of the implementation plan.