19. The implementation plan shall include, *inter alia*, proposed timetables and benchmarks for the first six-month and one-year periods and for each year thereafter.

20. Upon receipt of the County's proposed implementation plan, the Monitor shall review it and, in the Monitor's discretion and based upon such outside expertise and consultants as the Monitor deems necessary, accept or reject the proposed plan. In the event that the Monitor rejects the County's implementation plan:

(a) The Monitor shall, within twenty (20) calendar days of rejecting the plan, meet with the County and the Government.

(b) At that meeting, the Monitor shall identify with specificity the deficiencies that led to the rejection and potential cures that should be incorporated into the implementation plan.

(c) The County shall have ten (10) business days after that meeting to submit to the Monitor a revised implementation plan for the Monitor's review and acceptance or rejection.

(d) In the event that the Monitor deems the revised plan submitted by the County insufficient to accomplish the objectives and terms set forth in this Stipulation and Order, the Monitor shall specify revisions or additional items that the County shall incorporate into its implementation plan.

21. Following the Monitor's approval and acceptance of the implementation plan, the County shall incorporate the implementation plan into its AI.

22. In developing the implementation plan, the County shall, among other activities it deems appropriate and in consultation with the Monitor:

(a) Assess the availability of vacant land suitable for development and adaptive reuse opportunities in the municipalities that meet the locational criteria described in paragraphs 7(a), 7(b), and 7(c), with consideration given to the way in which the available sites provide or have the potential to provide access to services and facilities that will promote sustainable, inclusive communities, such as employment and educational opportunities, medical and other family services, and public transportation.

(b) Conduct meetings with developers (for-profit and non-profit) and property owners (including office park owners) to determine their interest in furthering developments that will AFFH.

(c) Conduct meetings with key local officials in each of the municipalities that meet the locational criteria set forth in paragraph 7(a) to explore potential development opportunities.

(d) Conduct meetings with the New York State Division of Housing and Community Renewal and the New York State Housing Finance Agency to explore opportunities for targeted state financing for projects that will implement the provisions of this Stipulation and Order Settlement, as well as other forms of state assistance.

(e) Explore and implement mechanisms by which the monies made available pursuant to paragraphs 2, 3 and 5, and proceeds from the expenditure of those funds, can be placed in a revolving fund dedicated to the development of Affordable AFFH Units. To the extent there are obstacles to doing so, the

County shall identify the obstacles in writing to the Monitor and any steps that can be taken to overcome the obstacles.

(f) Assess the means by which the County can maximize the development of Affordable AFFH Units in the eligible municipalities and census blocks with the lowest concentrations of African American and Hispanic residents.

23. To ensure the satisfaction of the goals set forth in paragraph 7, the County shall meet the following interim benchmarks:

| By end of calendar year | Sites with financing in place (number of units) | Units with building permits |
|---|---|---|
| 2010 | | |
| 2011 | 100 | 50 |
| 2012 | 200 | 125 |
| 2013 | 300 | 225 |
| 2014 | 450 | 350 |
| 2015 | 600 | 525 |
| 2016 | 750 | 750 |

24. The County's implementation plan shall include the benchmarks set forth in paragraph 23 and specify steps and activities that will be needed to meet those benchmarks. The Monitor, upon acceptance of the County's implementation plan, may designate any elements of the plan as benchmarks that shall be incorporated into this Settlement and shall be enforceable in the same fashion as the other terms of this Stipulation and Order.

25. To facilitate the development of the Affordable AFFH Units, the County shall include in the implementation plan:

(a) A "model ordinance" that the County will promote to municipalities to advance fair housing. The model ordinance shall include, *inter alia*:

(i) a model inclusionary housing ordinance that requires new development projects to include a certain percentage of affordable units, including criteria and standards for the affordable housing units and definitions of who is eligible for affordable housing;

(ii) standards for affirmative marketing of new housing developments to ensure outreach to racially and ethnically diverse households;

(iii) standards for expedited review of proposals for affordable housing that AFFH including procedures for streamlining the approval process for the design, permitting, and development of these units; and

(iv) standards for legal mechanisms to ensure continued affordability of new affordable units.

(b) A CDBG allocation process/plan designed to promote activities that AFFH, including such steps as providing priority to projects that further the development of AFFH affordable housing units as set forth in paragraph 7, and providing incentives and priority to municipalities throughout the County that take actions that further fair housing.

(c) A commitment to amend County Law to eliminate a municipality's right of "first refusal" with respect to Fair Housing or Affordable Housing land purchases by the County.

(d) A policy to condition, as appropriate, the use of public funds and resources, including, but not limited to, CDBG funds and the County Open Space funds, by municipalities on commitments included in the funding agreement between the County and the municipalities that the municipalities shall, *inter alia*:

(i) ban local residency requirements and preferences and other selection preferences that do not AFFH;

(ii) offer the County a "right of first refusal" to retain and/or purchase land acquired in rem to be used for affordable housing that AFFH; and

(iii) actively further implementation of this Stipulation and Order through their land use regulations and other affirmative measures to assist development of affordable housing.

26. The County may propose amendments to the implementation plan, which shall be subject to the Monitor's review and approval pursuant to paragraph 20.

27. The County shall, within one hundred twenty (120) calendar days of the entry of this Stipulation and Order, amend the Long Range Land Use Policies as contained in Westchester 2025 to embody the goals of this Stipulation and Order, as well as the substantive provisions of the model ordinance described in paragraph 25(a) and the policy statement adopted pursuant to paragraph 31.

28. The County shall, beginning March 31, 2010, prepare reports for the Monitor and the Government on a quarterly basis providing all information the County believes is relevant to its implementation efforts and all information deemed necessary by the Monitor. The Monitor shall, no later than February 1, 2010, prepare a template report for the County to follow. In addition to all items identified by the County and the Monitor, the quarterly reports shall include:

(a) the location of the Affordable AFFH Units (i) for which there are sites with financing in place, (ii) which are under construction, and (iii) which are completed, and the racial and ethnic demographic information of the municipality and the census block in each location; and

(b) racial and ethnic demographic information of the occupants of the Affordable AFFH Units.

29. If the County believes that market conditions or other circumstances outside of the County's influence or control will prevent it, or have prevented it, from meeting its obligations under this Stipulation and Order, the County shall, as soon as possible, but in no event later than the submission of its next quarterly report, notify the Monitor in writing. The County's submission shall provide sufficient information for the Monitor to assess the obstacles to compliance, the County's actions, and the results of those actions.

30. All reports prepared by the County pursuant to this Stipulation and Order shall be publicly available.

31. The County acknowledges the importance of AFFH, and shall adopt, within ninety (90) calendar days after the date of the Court's entry of this Stipulation and Order, a policy statement providing that:

(a) the elimination of discrimination, including the present effects of past discrimination, and the elimination of de facto residential segregation are official goals of the County's housing policies and programs;

(b) AFFH significantly advances the public interest of the County and the municipalities therein; and

(c) the location of affordable housing is central to fulfilling the commitment to AFFH because it determines whether such housing will reduce or perpetuate residential segregation.

32. The County shall complete, within one hundred twenty (120) calendar days of the entry of this Stipulation and Order, an AI within its jurisdiction that complies with the guidance

in HUD's Fair Housing Planning Guide, *see* U.S. Dept. of HUD, Fair Housing Planning Guide (1996). The AI must be deemed acceptable by HUD. The County shall take all actions identified in the AI. In the AI, the County shall:

(a) commit to collecting data and undertaking other actions necessary to facilitate the implementation of this Stipulation and Order; and

(b) identify and analyze, *inter alia*:

(i) the impediments to fair housing within its jurisdiction, including impediments based on race or municipal resistance to the development of affordable housing;

(ii) the appropriate actions the County will take to address and overcome the effects of those impediments; and

(iii) the potential need for mobility counseling, and the steps the County will take to provide such counseling as needed.

33. As part of its additional obligations to AFFH, the County also shall:

(a) solicit CDBG proposals that would AFFH from community leaders, public interest groups, and others;

(b) advertise the rights of all persons to fair housing and avenues to redress allegations of housing discrimination, including informing the public that complaints may be filed with the Westchester County Human Rights Commission ("HRC") and requiring County agents to refer housing discrimination complaints and any information about possible violations of fair housing laws to the HRC and to HUD;

(c) create and fund campaigns to broaden support for fair housing and to promote the fair and equitable distribution of affordable housing in all communities, including public outreach specifically addressing the benefits of mixed-income housing and racially and ethnically integrated communities;

(d) educate realtors, condominium and cooperative boards, and landlords with respect to fair and affordable housing activities;

(e) affirmatively market affordable housing within the County and in geographic areas with large non-white populations outside, but contiguous or within close proximity to, the County, and include in all agreements between the County and a developer requirements that the developer meet these same affirmative marketing requirements and hire consultant(s) to carry out outreach activities, where appropriate;

(f) centralize the intake of potential home buyers for affordable housing that AFFH, working in conjunction with local not-for-profit organizations and community organizations, and through that centralized service provide, *inter alia*, information concerning home-buyer counseling, community resources, job data by municipality, affordable housing developments under construction and in development;

(g) promote, through the County Executive, legislation currently before the Board of Legislators to ban "source-of-income" discrimination in housing;

(h) pay for consultants and public education, outreach, and advertising to AFFH, as described in this paragraph, out of County resources and CDBG funds over

five years, exclusive of the amounts set forth in paragraphs 2, 3 and 5, in an amount not less than four hundred thousand dollars ($400,000); and

(i) incorporate each undertaking set forth in this paragraph in the County's AI.

**Penalties for Non-Payment and Non-Compliance**

34. The County shall be in default of this Stipulation and Order if it fails to make the payment set forth in Paragraph 3 on or before its due date. The United States shall provide written notice of the default, and the County shall have an opportunity to cure such default within five (5) business days from the date of its receipt of the notice. Notice of default shall be sent by e-mail and overnight mail to the undersigned attorneys for the County. If the County fails to cure the default within five (5) business days, the Settlement Amount shall be immediately due and payable, and interest shall accrue at the rate of twelve (12) percent per annum compounded daily from the date of default on the remaining unpaid principal balance. The County shall consent to a Consent Judgment in the amount of the unpaid balance, and the United States, at its option, may:

(a) rescind this Stipulation and Order and reinstate the Government's Complaint-in-Intervention filed in this action;

(b) seek specific performance of the Stipulation and Order;

(c) offset the remaining unpaid balance from any amounts due and owing the County by any department, agency or agent of the United States at the time of default; or

(d) exercise any other rights granted by law, or under the terms of this Stipulation and Order, or recognizable at common law or in equity.

35. The County shall not contest any offset imposed nor any collection action undertaken by the United States pursuant to paragraph 34, either administratively or in any state or federal court.

36. The County shall pay the United States all reasonable costs of collection and enforcement under paragraph 34, including attorneys' fees and expenses.

37. In the event that the United States opts to rescind this Stipulation and Order, the County expressly agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that relate to the allegations in the Government's Complaint, except to the extent those defenses were available on the date of entry of this Stipulation and Order.

38. In the event that the County fails to comply with its obligations set forth in paragraph 7 or with the interim benchmarks for the development of the Affordable AFFH Units set forth in paragraph 23, the County shall, as further mandatory and injunctive relief, make available additional resources funded by thirty thousand dollars ($30,000), exclusive of the amounts funded pursuant to paragraph 5, on the first day of the failure, for the development of affordable housing to AFFH in addition to the Affordable AFFH Units required pursuant to paragraph 7 ("Additional Affordable AFFH Units"). If, after thirty (30) calendar days, the failure to comply has not been remedied, the County shall, for each and every month the non-compliance persists, make available additional resources funded by sixty thousand dollars ($60,000) for the development of Additional Affordable AFFH Units. The Monitor shall determine the formula for calculating the number of Additional Affordable AFFH Units required each time a specified amount in imposed penalties is accumulated. In the Monitor's discretion, the Monitor may waive or alter the imposition of penalties or the number of additional

Affordable AFFH Units required pursuant to this paragraph. In the event the County has failed to comply with the obligations set forth in paragraph 7 or with the interim benchmarks set forth in paragraph 23 by more than 50 percent, the penalties provided for in this paragraph shall be doubled.

**Reports to Court Concerning Implementation and Enforcement of Settlement**

39. The Monitor shall report to the Court in writing, with copies to the Government and the County, as often as the Monitor believes appropriate, but no less than every six months for the first two years after the Monitor's appointment and annually thereafter. Such report shall incorporate, when available, assessments undertaken pursuant to paragraph 15. The report to the Court shall address, *inter alia*:

(a) the Monitor's activities;

(b) observed or substantiated lapses in the County's compliance with the Stipulation and Order;

(c) the adequacy of the County's implementation plan and efforts; and

(d) recommended steps or activities to improve the County's performance.

40. Prior to the submission of such reports to the Court, the Monitor shall meet with representatives of the County and the Government to discuss compliance issues, recommendations for corrective action, and other matters included in the Monitor's reports to the Court.

**Releases**

41. Subject to the exceptions in paragraph 46, in consideration of the obligations of the County set forth in this Stipulation and Order, and conditioned upon the County's payment in

full of the Settlement Amount, the United States (on behalf of itself, its officers, agents, agencies and departments) agrees to release the County from any civil or administrative monetary or injunctive claim the United States has or may have under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801 *et seq.*, the Housing and Community Development Act, 42 U.S.C. § 5311, or under the common law or equitable theories of payment by mistake, unjust enrichment, constructive trust, misrepresentation, breach of contract, and fraud for the conduct alleged in the Relator's Complaint or the Government's Complaint.

42. Subject to the exceptions in paragraph 46, in consideration of the obligations of the County set forth in this Stipulation and Order, and conditioned upon the County's payment in full of the Settlement Amount, HUD releases the County, its officials, and employees from administrative liability pursuant to 2 C.F.R. Part 2424 and 24 C.F.R. Part 28 with respect to any and all allegations concerning the County's failure to comply with its certification to AFFH in connection with its participation in the CDBG and HOME programs through the date of execution of this agreement by HUD. This release does not extend to any conduct that occurs after such date.

43. Subject to the exceptions in paragraph 46, in consideration of the obligations of the County set forth in this Stipulation and Order, and conditioned upon the County's payment in full of the Settlement Amount, HUD agrees to refrain from instituting, directing, or maintaining any suspension or debarment action under 24 C.F.R. Part 2 against the County based on the conduct alleged in the Relator's Complaint or the Government's Complaint. Nothing in this Stipulation and Order precludes HUD from:

(a) taking enforcement actions pursuant to the Fair Housing Act (42 U.S.C. § 3601-18), Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d-1), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), Section 109 of the Housing and Community Development Act of 1974 (42 U.S.C. § 5309), their implementing regulations, or any other appropriate non-discrimination or equal opportunity law or regulation, including, but not limited to, limiting future grant awards; or

(b) taking action against entities or persons, or for conduct and practices, for which claims have been reserved in paragraph 46.

44. The County agrees to the following:

(a) Unallowable Costs Defined: that all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of the County, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(i) the matters covered by this Stipulation and Order;

(ii) the United States' audit(s) and civil investigation(s) of the matters covered by this Stipulation and Order;

(iii) the County's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Stipulation and Order (including attorneys' fees);

(iv) the negotiation and performance of this Stipulation and Order;

(v) the payment that the County makes to the United States pursuant to this Stipulation and Order and any payments that the County may make to Relator, including costs and attorneys' fees, are unallowable costs for government contracting purposes (hereinafter referred to collectively as "Unallowable Costs").

(b) Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by the County, and the County shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States.

(c) Treatment of Unallowable Costs Previously Submitted for Payment: The County further agrees that within 90 calendar days of the entry of this Stipulation and Order it shall identify any Unallowable Costs included in payments previously sought by the County from the United States. The County agrees that the United States, at a minimum, shall be entitled to recoup from the County any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs in any such payments. Any payments due shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by the County regarding any Unallowable Costs included in payments previously sought by the County, or the effect of any such Unallowable Costs on the amount of such payments.

(d) Nothing in this Stipulation and Order shall constitute a waiver of the rights of the United States to audit, examine, or re-examine the County's books and

records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

45. The County agrees to release the United States, its agencies, departments, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated), that the County has asserted, could have asserted, or may assert in the future against the United States or its agencies, departments, employees, servants, and agents related to the matters covered by the Government's Complaint, and the United States' investigation and prosecution thereof and this Stipulation and Order.

46. Notwithstanding the releases given in paragraphs 41 and 43, or any other term of this Stipulation and Order, the United States does not release or discharge the County, including the County's employees, agents, representatives, subdivisions, and agencies, from:

(a) any liability arising under the Internal Revenue Code, Title 26 of the United States Code, and the regulations promulgated thereunder;

(b) except as explicitly stated in this Stipulation and Order, any administrative liability, including the suspension and debarment rights of any federal agency;

(c) any liability to the United States (or its agencies) for any conduct other than the conduct alleged in the Government's Complaint; or

(d) any obligations created by this Stipulation and Order.

**Miscellaneous Provisions**

47. This Stipulation and Order is intended to be for the benefit of the parties to this Stipulation and Order only, and by this instrument the parties to this Stipulation and Order do not release any claims against any other person or entity, except as expressly provided by this Stipulation and Order.

48. None of the amounts that the County must pay pursuant to paragraphs 2, 3, 4, 5, 33(h), or 38, except to the extent specified in those paragraphs, shall come from funds received by the County from any federal programs, grants or contracts, and the County certifies and warrants that such payment is not being and shall not be made from any such federal funds.

49. The County will retain all material records relating to the conduct alleged in the Government's Complaint in their original form for no less than six (6) years after the Court's entry of this Stipulation and Order. Before the expiration of the six-year period and before disposing of any records covered by this paragraph, the County will consult with the United States Attorney's Office for the Southern District of New York concerning the continuing need for preserving such records. The County shall make such records, subject to redactions of privileged material, available to the United States upon written request.

50. Each party to this Stipulation and Order shall bear its own legal and other costs incurred in connection with this matter, including costs incurred in connection with the preparation and performance of this Stipulation and Order, except as provided in paragraph 4.

51. This Stipulation and Order is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute arising between and among the parties under this Stipulation and Order as it relates to this action will be the United States District Court for the Southern District of New York.

52. This Stipulation and Order sets forth the entire agreement and understanding among the parties, and fully supersedes any and all prior agreements or understandings among the parties pertaining to the subject matter hereof.

53. With the exception of modifications made by the Monitor pursuant to paragraph 15, this Stipulation and Order may not be supplemented, modified, canceled, or waived or otherwise altered in any way, in whole or in part, except in writing, by the United States and the County.

54. The undersigned representatives of the parties certify that they are authorized by the parties to enter into and consent to the terms and conditions of the Stipulation and Order, and to execute and bind the parties to it. In particular, the individuals signing this Stipulation and Order on behalf of the County represent and warrant that they are authorized by the County Executive to execute this Stipulation and Order, subject to final approval of the Stipulation and Order by the County Legislature as set forth in paragraph 55. The United States and HUD signatories represent and warrant that they are signing this Stipulation and Order in their official capacities.

55. This Stipulation and Order is subject to and conditioned upon:

(a) approval by a simple majority of the County's Board of Legislators; and

(b) approval of a Bond Act in the amount of $32.9 million by a two-thirds majority of the County's Board of Legislators.

56. In the event that the County's Board of Legislators fails to provide the necessary approvals within forty-five (45) calendar days of the Court's entry of this Stipulation and Order, the Stipulation and Order shall be null and void. In such an event, trial of this action shall proceed at the Court's earliest convenience.

57. Subject to and upon receipt of the Settlement Amount, the Relator's Complaint and the Government's Complaint shall be dismissed with prejudice, with each party to bear its own attorneys' fees and costs, except as provided in paragraph 4. The dismissal of this action shall be subject to paragraph 46.

58. Notwithstanding any other provisions of this Stipulation and Order, this Court shall retain exclusive jurisdiction over this Stipulation and Order, including, but not limited to, any application to enforce or interpret its provisions, and over each party to the extent its obligations herein remain unsatisfied.

59. Each party and signatory to this Stipulation and Order represents that it freely and voluntarily enters in to this Stipulation and Order without any degree of duress or compulsion.

60. This Stipulation and Order may be executed in one or more original, facsimile or PDF counterparts, each of which constitutes an original and all of which constitute one and the same agreement. For purposes of this Stipulation and Order, signatures transmitted by facsimile or PDF shall constitute acceptable, binding signatures.

61. The effective date of this Stipulation and Order is the date on which this Stipulation and Order is entered by this Court.

SO ORDERED:

Denise Cote

DENISE L. COTE
UNITED STATES DISTRICT JUDGE

August 10, 2009

Dated: New York, New York
August 7, 2009

LEV L. DASSIN
Acting United States Attorney for the
Southern District of New York
Attorney for the United States

By: ______________________________
JAMES L. COTT
SEAN C. CENAWOOD
BENJAMIN H. TORRANCE
Assistant United States Attorneys
Telephone: 212.637.2695/2705/2703
Fax: 212.637.2686

Dated: Washington, D.C.
August ____, 2009

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT

By: ______________________________
RON SIMS
Deputy Secretary for the U.S. Department of
Housing and Urban Development
451 7th Street, SW
Washington, DC 20410

Dated: Washington, D.C.
August 7, 2009

EPSTEIN BECKER & GREEN
Attorneys for Defendant Westchester County

By: ______________________________
STUART GERSON, Esq.
Epstein, Becker & Green
1227 25th Street, NW
Washington, D.C. 20037
Telephone: 202-861-0900
Fax: 202-861-3540

Dated: White Plains, New York
August 7, 2009

WESTCHESTER COUNTY

By: ______________________________
ANDREW SPANO
Westchester County Executive
148 Martine Avenue
White Plains, New York 10601
Telephone: 914-995-2900
Fax: 914-995-3372

Dated: New York, New York
August ____, 2009

LEV L. DASSIN
Acting United States Attorney for the
Southern District of New York
Attorney for the United States

By: ______________________________
JAMES L. COTT
SEAN C. CENAWOOD
BENJAMIN H. TORRANCE
Assistant United States Attorneys
Telephone: 212.637.2695/2705/2703
Fax: 212.637.2686

Dated: Washington, D.C.
August 6, 2009

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT

By: ______________________________
RON SIMS
Deputy Secretary for the U.S. Department of
Housing and Urban Development
451 7th Street, SW
Washington, DC 20410

Dated: Washington, D.C.
August ____, 2009

EPSTEIN BECKER & GREEN
Attorneys for Defendant Westchester County

By: ______________________________
STUART GERSON, Esq.
Epstein, Becker & Green
1227 25th Street, NW
Washington, D.C. 20037
Telephone: 202-861-0900
Fax: 202-861-3540

Dated: White Plains, New York
August _____, 2009

WESTCHESTER COUNTY

By: ______________________________
ANDREW SPANO
Westchester County Executive
148 Martine Avenue
White Plains, New York 10601
Telephone: 914-995-2900
Fax: 914-995-3372