August 9, 2021

To: Judge H. Russel Holland
United States District Court for the District of Arizona

From: Roger Carter
Court Monitor

Case No. 3:12-cv-8123-HRH

**RESPONSE TO COLORADO CITY'S MOTION TO MODIFY JUDGEMENT AND DECREE GRANTING INJUNCTIVE RELIEF.**

I am submitting this response, as the Federal Court Monitor ("Monitor"), to provide the Court my recommendation and perspective regarding the request by Colorado City ("City") to have the Judgement and Decree ("Order") modified to remove the services of the Police Consultant ("Consultant") from the communities.

Having been appointed to serve as Court Monitor on this case since 2017, I have observed the progress of the Cities in compliance with the Order and observed the performance of the Police Consultant in his services with the Colorado City Town Marshal's Office ("CCMO"). **Based on this position and my current observation of the communities, I am opposed to the City's request and ask the Court to deny the petition.** This recommendation is based upon the following.

I. EXPECTATION OF THE ORDER

Unlike the role of Police Mentor, which clearly states a specific time of service, the role of the Consultant appears to last for the duration of the Order. This is stated in the Order as follows, "Except as expressly provided otherwise, the injunctive relief Section V(B) and V(C) shall remain in effect for ten years or until otherwise ordered by the court" (Section VII (2)).

The Consultant's services are a necessary component of the Order and continue to have important duties to complete in stabilizing the CCMO.

## II. ONGOING RESPONSIBILITIES

Although the petition for relief by the City states the many accomplishments by the Consultant, there persists ongoing duties and responsibilities. Any changes in policies relating to the CCMO, including hiring and internal policies and procedures, are subject to the Consultants approval. On-going training is also conducted under the Consultant's observation (see Order section V (B)). These items will continue to occur during the Order, and the Consultant's expertise and experience will be invaluable in the continuity of the progress made.

The experience of the Consultant continues to play a vital role in investigating complaints by the community. Recently, I used the services of the Consultant in investigating a CCMO call for service. A citizen complained that the CCMO unfairly targeted them. This citizen claimed that town leaders directed the Chief Marshal to have a citation filed even though the responding officer did not issue a citation. The citizen complained that the citation was not justified and occurred at the behest of town officials through the Chief Marshal. As the Court Monitor, I felt that the Consultant could more easily facilitate this investigation due to his expertise in police procedures and policies. The Consultant then reported back to me on his findings. I would anticipate that throughout this Order, other claims, such as these, might come before the Monitor.

## III. CITY LEADERSHIP

Although there is good progress in developing the CCMO (largely due to the Consultant), claiming that there is no other purpose for this position amounts to a limited reading of the Order. The historical challenges and corruption that arose from the CCMO were largely due to the direction given by town and church officials. Although there would be hope that this would not

occur again, it should be noted that several current town officials were part of the previously convicted administration, including the chief elected officer.

Since the imposition of the Order, the two communities have had radically different changes to government administration. Hildale, Utah, saw an immediate change-over in their elected officials, while Colorado City has seen slower in this process. These differences may account for the observed behavior by the two communities as it relates to the injunctive order. While Hildale town officials saw the Order as a way to bring stability to the community, the feeling among Colorado City officials has been one of "tolerance" for the Order. Occasionally this is demonstrated in passive-aggressive comments by public officials, such as when will they be done with us, aren't we are tired of being in the community, and are we ready to move on.

On several occasions, through comments and conduct, I have felt town officials see the imposition of this Order as the greatest miscarriage of justice on the community and not the underlying reasons for the Order. This can be demonstrated in a recent training on the Constitution. In this training, conducted by the Washington County Attorney's Office, one Colorado City elected official complained that this was unnecessary and were "things I learned in elementary school." Another elected official complained that the Order itself violated the very Establishment Clause it claimed to protect. What is particularly noteworthy from this exchange is that while one of these comments came from a long-term member of the council, the other comment came from a newly elected member of the council, demonstrating the influence that one official can have on another. Furthermore, community leaders made these comments in a room full of employees and other leaders, which could undermine other's confidence in the Order.

There is still a great deal of work to be accomplished in the community, and one of the most important elements of that work is time. Accordingly, the Order granted the Consultant the time needed to effectuate change and create the momentum needed to ensure its permanence.

IV.     **STABILITY OF THE COMMUNITY**

The communities of Colorado City, Arizona, and Hildale, Utah, were established in 1913 by a religious group seeking to exercise their religion as they desired and outside of the established laws of the nation.  The community largely functioned as a theocracy for over 90 years.  The church, along with its selected city officials, governed the people by the church's tenets.  Failure of citizens to comply or obey the church resulted in mistreatment at the hands of local government officials. This manner of governing was embedded within the culture and became a way of life.   For many within the community, the changes imposed upon the governments by this court Order are new and take time to become a new way of life.

One challenge the community currently faces is the vacuum of leadership that exists because the historical organization and power structure have disappeared, and a new government structure and process is in its infancy.  We have watched where this has created possibilities for individuals, groups, or factions to emerge to assume this leadership vacancy.  Some of these groups and individuals show goodwill and benevolence in their desires for the community, while others are more self-serving.  This delicate and vulnerable transitional period makes stability tenuous.  I observe that the community's current stability is "one individual" and "one position" away from sliding back from the hard-fought progress that has been made so far.

I have noted in previous Monitor Reports that the "heavy lift" is not in the specific, time-based assignments outlined in the Order but rather in the daily exercise of establishing and practicing equitable, representative government processes and operations.  An effort is being

made in this area, but what has taken 90 years to become a part of the culture will not take 4, 6, or even 10 years to resolve. The wheels of cultural transition take time, require sustained pressure for change, and ensure the protection of ideals and individuals in their effort to accomplish such a task. The removal of the Consultant this early in the process could further destabilize this already tenuous situation.

V. ONGOING CHALLENGES

Also noted in previous Monitor reports are that these communities have some unique characteristics that must be considered. The history, culture, and current circumstances all place this injunctive order within a unique context. Some of these characteristics include:

A. The currently established local governments represent a "first-generation" governmental effort. For the first time in the history of this community, elected officials, government employees, and citizens are asked to build an equitable, transparent, representative form of government.

B. There is still a lack of policies, procedures, and laws for good governance. Much of the Order's intent was to identify and require changes to discriminatory and unfair policies and practices. The laws, ordinances, and policies that govern a community are vast, including everything from utility practices to land use to business operations. These communities still have a great deal of work in establishing fair laws and providing an opportunity to all.

C. The community makeup consists of several divided groups and factions. While historically, these communities' population was largely homogenous, the current community consists of FLDS members, ex-FLDS members, and non-FLDS members. Relationships between these groups are strained due to historical

experience, narrow perspective, and feelings of betrayal. There are large fault lines that separate individuals, groups, and even families within the community.

D. There is a complicated land ownership arrangement that is unlike any other jurisdiction. Due to previous, unrelated court action, the majority of the lands and property within the community were taken out of the church's control and placed within the hands of a board of trustees. Although the purpose of this board will be to divide and disseminate these properties to community members equitably, the seizure and distribution process has created great animosity among many of the citizens and groups and added to the divide that exists.

E. Finally, this is a community that finds itself in a state of healing. There was trauma associated with the past that will take time to heal. Numerous families remain broken up, and for many, there exists an uncertain future. The healing and repairing of this community will take many years and possibly generations to fully correct.

Collectively, these items create a unique environment within which the injunctive order is placed. The Consultant's understanding and experience of these complicated elements make his position invaluable in assisting the community in moving forward.

## VI. BUILDING OF COMMUNITY TRUST

Beyond the specific objectives outlined, I feel that the spirit of the injunctive order is to assist community members to trust their government and the protection it offers. Institutional trust is an important part of community development and can often spur the social trust necessary for a healthy climate where citizens can grow and develop. Bo Rothstein writes, "The more trust people have in political and administrative institutions, the more they are inclined to feel social

trust in their fellow human beings, or the reverse: the more people believe that other people can generally be trusted, the more they trust in social institutions."[1] Government institutions that are truly universal, that is, that serve all citizens efficiently and effectively, honestly, and fairly can be the single most powerful way to create social trust in a community.

There may be little that the court oversight can do with interpersonal trust or resolving the conflicts that exist between community factions, but what the Order does provide is a visible set of guardrails where citizens can feel some safety in the actions of their government. I am comfortable in saying that there are, with some citizens, still fear and anxiety that occurs when a police car pulls up in front of their house. It would be our hope that, through the remainder of this Order, this anxiety will quickly be replaced with the confidence that all citizens are being watched over by the Order and its officers.

## VII. CONCLUSION

As the Court Monitor, it is my duty to be the "eyes and ears" for the Court. It has been my desire, with the filing of this report, to provide that perspective. There is context within these communities that is so unique that it needs to be experienced or explained. Although the majority of this report discusses the challenges and weaknesses that still exist within the communities, I would be amiss in not mentioning that there are good efforts by many going on. There are those who acknowledge the challenged past and are working and looking forward to the bright future that will come; and it will come, in due time and in large part, to their efforts. Although difficult to accept by some, the Court and this Order are assisting in designing that future by providing the scaffolding necessary for the reconstructive efforts. I believe that to grant the petitioner's request would prematurely remove that important scaffolding needed at this

---

[1] Bo Rothstein, *Just Institutions Matter* (New York: Cambridge University Press, 1998), 106-117.

time.  **Therefore, based upon these observations and because of both the letter and spirit of the Court Decree, I respectfully request that Colorado City's petition to remove the Police Consultant be denied.**

Dated on August 11, 2021

                                                    By: Roger Carter

                                                    Federal Court Monitor