**UNITED STATES OF AMERICA vs. TOWN OF COLORADO CITY, ARIZONA, et al.**

**No. 3:12-cv-8123-HRH (Prescott Division)**

November 1, 2021

To: United States District Court for the District of Arizona

From: Roger Carter, Court Monitor

**Re: November 2021 Monitoring Report for the cities of Colorado City, Arizona, and Hildale, Utah.**

This report is submitted in compliance with § V.C. (39) of the Judgement and Decree Granting Injunctive Relief ("Judgement and Decree"), requiring a written report every six months on injunction compliance by the Defendant Cities ("Cities") and the activities of the Court Monitor ("Monitor").

This report will cover the period from May 1, 2021, to October 31, 2021, and include a current compliance status on all the Order requirements, identify any obstacles to the work of the Monitor and provide general observations (§ V.C. (40)).

## Injunction Compliance

## Policing Act Injunction

The towns of Hildale, Utah, and Colorado City, Arizona, are currently in compliance with the Policing Act orders outlined in the Judgement and Decree Granting Injunctive Relief. The Court-appointed Police Consultant will provide a separate report to the court outlining those compliance issues and any obstacles that may have arisen during this reporting period.

One area of note is the previously approved Police Consultants' assistance to the Court Monitor in the review of dispatch or CAD records and report writing.[1]  Within the past reporting period, the dispatch services, which Colorado City, Arizona, operates, has undergone not only a

---

[1] United States District Court for the District of Arizona, Case Status, Order.  February 7, 2018.

1

change in leadership but has organizationally been restructured to fall under the direction of the Chief Marshal and police department. The Court Monitor is not opposed to this reorganization and supports this very common organizational structure and chain of command. However, based upon the history of collusion between the town and the Marshal's office and the lack of transparency of operation, this change should require appropriate checks and balances, improved reporting procedures, and clear auditing capabilities. The calls of service records from the dispatch center are important because they provide the ability to monitor police responses. This information accompanied with the officer incident reports, can adequately illustrate officer performance; thereby, providing a picture of service acceptability.

In light of this request, the Police Consultant provides the following response.

**Reports Audited over the last 10 months**

*We requested approximately 40 reports to review from December of 2020 thru October 2021. In general, the reports have improved significantly within the narrative portion of the report. There are still some areas that could be improved on and are reoccurring in this effort. The following are the reoccurring areas that could be improved:*

*Personal information missing to include DOB's, Addresses, Height &amp; Weight, Driver license, and demographic information on listed complainants, involved parties and offenders.*

**Missing supplement reports by assisting/back up officers.**

*Missing supplement reports from the initial reporting officer when follow up work is done on their cases. These areas directly impact information needed to send accurate reports to state and federal partners. This information is critical internally as well in being able to forecast where staffing resources need to be directed, and could directly impact efforts towards intelligence led or community policing in the future.*

*The Chief is working on these areas with his staff and we have seen improvement. However, I feel there is still real value in reviewing these reports into the future to help the Chief identify the areas that are deficient or need attention as he continues to enhance the professional policing services the department is providing to this community.*

*CAD (Computer aided dispatch)/ Report writing system*

*The Chief has been working with the state of AZ to enhance interoperability throughout the state, as well as, the Utah partners in the area. Both with radio communication and the CAD/reporting system. They have a dilapidated CAD/Reporting system that generally cannot communicate with the other law enforcement partners in this area, in both states. Sharing of data and information with other agencies they work with and being able to communicate in real time is critical in today's policing efforts. The Chief has gained the support of AZ legislative body to pay for the upgrade to the CAD/report system. They have begun the back-end installation of the Spillman CAD/Reporting system and they have been given a go live date with the new system for February of 2022.*

*This system will greatly enhance the dispatch efforts, report writing and reporting efforts of the department, however, the input from the officers and dispatchers with complete, accurate and timely information will determine how effective it is in the end. Thus, the efforts listed above with the reports. This includes a new system installation for dispatch and officers. Radio communications will also be enhanced with additional infrastructure being installed in the area in the future. This effort will ultimately enhance the compatibility with AZ and Utah agencies in the area."*[2]

Updates on the progress of this reorganization will be provided to the Court in future Court Monitor reports.

---

[2] Police Consultant Report/CAD reporting. 2021.

**Fair Housing Act Injunction**

The towns of Hildale, Utah, and Colorado City, Arizona have completed all the specific orders as outlined in the Judgement and Decree including, Approval of Subdivision Plat (§ 5C (2)), Adoption of Building Department Policies and Procedures (§ 5C (3)), amendments to water service regulations (sect. 5C(9)), culinary water impact fee (§ 5C (14)).

**Website and Public Notice**

The towns of Hildale, Utah, and Colorado City, Arizona, are obligated to maintain their website with necessary information as required under Section 5C (22).  The Court Monitor regularly audits the website to ensure compliance with this requirement.  Within the last six months, both communities have undertaken an overhaul of their websites.  This has resulted in incomplete website information.  Specifically, there are a majority of public agendas and meeting minutes[3] not present on both community sites.  Furthermore, the Hildale website is missing information on the Marshal's Office policies and procedures.[4] **Although it is understandable that some information may be delayed in the transition to a new website, the communities should make it a high priority to make sure this information is available for public review.  Town officials have assured the Court Monitor that this information will be properly posted within the next sixty (60) days.**

**Mandatory Education & Training**

Within the last reporting period, one mandatory training event was required and conducted.  On June 30, 2021, in-person Constitutional training was conducted by the Washington County Attorney's Office.  There were two sessions provided, and of the 65 scheduled participants, 63 attended.  The other two employees were out on leave.  There was

---

[3] Order, Court Monitoring and Consultant Report.  May 5, 2021.
[4] Judgement and Decree Granting Injunctive Relief, § V (22) (d)

great effort to encourage everyone to attend this training, and the city should be commended for its efforts.

The next two mandatory training sessions - Fair Housing and injunction training - will occur on December 1, 2021.

**Monitor**

The Court Monitor has reviewed municipal decisions by the Defendant Cities implicating the Fair Housing Act and overseeing all aspects of this injunction.[5]  This has included attending all meetings of Colorado City and Hildale council meetings, planning commission meetings, and utility board meetings.

In October, the Court Monitor performed a records audit on community utility records.  These audits included verifying ownership signatures, completeness, appropriate language, consistent application of fees, and responsiveness.  Of the records audited, there were no noted discrepancies.

Similarly, the Court Monitor performed a records audit on building department records and permits.  These audits included completeness, appropriate language, consistent application of fees, and responsiveness.  Of the records audited, there were no noted discrepancies.  The building department, which serves both cities, uses an online program for permit processing.  This program can process building permit applications, plan submittals, inspection scheduling, and check the status of pending permits.  This is an excellent program and has been beneficial to the building department and the public.  **This program can similarly process land-use applications.  Since the Court Monitor followed up on a few complaints of non-responsiveness to land use applications, it is recommended that the city governments incorporate this on-line system within its land-use application process.**

---

[5]  Judgement and Decree Granting Injunctive Relief, § V (31)

5

The Court Monitor reviewed all modifications by the Defendant Cities on any ordinances, regulations, procedures, or policies affecting housing or related to the provision of municipal services related to housing, including items related to zoning, planning, subdivision, building permits, licenses, and utility service connections.[6]

**Currently, the cities of Hildale and Colorado City are undertaking a new water impact fee study.  Water impact fees are specifically identified within the Injunction as requiring both Court Monitor and the United States review of any proposed changes.[7] The cities will be providing this draft to these two parties within the next couple of months.**

As noted earlier, the Court Monitor responded to two complaints regarding a lack of responsiveness by the city on land-use questions.  In both of these cases, the city manager reached out to these individuals and addressed their questions.  Furthermore, the Monitor encouraged the city to respond to land-use questions within the same timeframe established within the Injunction regarding building permit applications.[8]

During the reporting period, I investigated a complaint of unfair treatment against the Marshal's office.  The specific complaint centered on an accusation that a referral to the Washington County Attorney's office was motivated at the request of town officials and not due to violation of the law.  With the assistance of the Police Consultant, the incident was completely investigated without finding any evidence of disparate treatment on the part of either the Marshal's office or town officials.  Ultimately the county attorney's office chose not to prosecute the case.

---

[6]  Judgement and Decree Granting Injunctive Relief, § V (31)(c).

[7]  Judgement and Decree Granting Injunctive Relief, § V (21).

[8]  Judgement and Decree Granting Injunctive Relief, § V (4)(d).

The Court Monitor continues to pursue any complaints filed or accusations made regarding discrimination or disparate treatment.

**Current Judgement and Decree Status and Impact**

As can be seen, by this report, the communities continue to move forward - with some ups and downs - on the specific requirements of the Injunctive Order.  Furthermore, it has been noted in previous monitor reports and recent filings with the Court that a major objective of the Injunction is to bring lasting change and stability to the community by providing equitable and transparent decisions and services to all of its citizens regardless of class. However, this process comes with time and practice.

The issue of community *stability* and *sustainability* will be crucial in the long-term implementation and success of the Injunction orders; and ultimately will determine how successful the cities will be in providing fair, responsive, and representative government services.  This should be the goal of all parties!  This is at the heart of the Injunctive Order, which is more reformative than punitive in its language and intent.

As is the case in all communities, the endurance of fair government principles reside in the ability of it's citizens to self-regulate their government through appropriate forms of expression and representation.  Unfortunately, the citizens of these communities have historically not been empowered with an understanding nor given appropriate space for expressions of their role in governmental oversight . Based upon these circumstances, it is the desire of the Court Monitor to ensure that the guiding principles of the Injunction are properly institutionalized and communicated effectively enough to the citizens to ensure, as much as possible, community-driven self-government and organizational accountability.  To accomplish these objectives, the Monitor would recommend the following measures.

A. **Public Outreach**.  To date, the work outlined by the Injunction has been accomplished between the Court Officers and the town organizations.  In large part, these efforts have been successful, and the communities have made effort to comply with the orders of the Court.  Moving forward, the comunity should become a greater part of this process.  The Monitor recommends actively conducting community outreach forums, such as open houses and social media communication to inform the public on what has been accomplished with the Injunction, provide a forum for concerns to be expressed, and educate the public on what expectations they can rely on from their government and leaders.

B. **Establishment of due-process procedures.**  Many of the oversight items within the Injunction can be sustained by codification of appropriate appeal and due-process codes and procedures.  The Court Monitor will work with the local governments to ensure that these processes are created and work with community members in their understanding of their rights within those established guidelines.

C. **Stakeholder engagement.**  As has been noted in previous reports, there are several significant stakeholders within the community who ultimately play a part in the community's future success.  When governments recognize the role of community-based groups and stakeholders and make an effort to find a place for their voice, then greater trust and transparency can be achieved. Accordingly, the Court Monitor will make efforts to encourage cooperation with one another and be communicative with all parties in the efforts of the Injunction.

D. **Key performance measures.**  Good governance, especially in the areas of land-use and utility services, can be reinforced through the establishment of

performance objectives of the organization.  Public performance objectives can provide both direction and transparency. The Court Monitor will work with the local governments in creating those indicators that align with the direction of the Court Injunction and provide transparency to governmental operations, such as timeliness on approval of land use and utility applications, published application processes, etc.

By looking outwardly and beginning to empower the community, the Injunction begins a new chapter.  This new community-centric focus establishes and communicates the norms, rules, and policies necessary to build interrelational trust and cooperative engagement. Second, it provides a place at the table for the voices of individuals and groups who have a vested interest in seeing the community succeed.  And finally, it supports the education, empowerment, and inclusion of the community's citizens as the ultimate "watchmen on the tower" over their towns and it's future.

The Monitor looks forward to working with the communities in this next phase of Court oversight, as we collectively look forward to the bright future on the horizon.  The Monitor thanks the Court and the Communities for their continued trust and ongoing cooperation.

**Communication**

This report is provided electronically to:

<u>To plaintiff:</u>

        Corey Sanders
        United States Department of Justice
        Civil Rights Division
        950 Pennsylvania Ave, N.W.
        Washington, DC 20053

<u>To Colorado City:</u>

        Jeffrey C. Matura
        Graif Barrett & Matura P.C.
        1850 North Central Avenue, Ste. 500
        Phoenix, AZ 85004

        Town Manager
        Colorado City
        PO Box 70
        Colorado City, AZ 86021

<u>To Hildale City:</u>

        Joseph Hood
        320 East Newel Ave
        PO Box 840490
        Hildale, UT 84784

        Mayor - Hildale City, Utah
        320 East Newel Ave
        PO Box 840490
        Hildale, UT 84784

DATED at Washington, Utah, this 1st day of November 2021.

_/s/ Roger Carter_

Roger Carter, Court Monitor