**UNITED STATES OF AMERICA vs. TOWN OF COLORADO CITY, ARIZONA, et al.**

**No. 3:12-cv-8123-HRH (Prescott Division)**

May 1, 2022

To: United States District Court for the District of Arizona

From: Roger Carter, Court Monitor

**Re: May 2022 Monitoring Report for the cities of Colorado City, Arizona, and Hildale, Utah.**

      This report is submitted in compliance with § V.C. (39) of the Judgement and Decree Granting Injunctive Relief ("Judgement and Decree"), requiring a written report every six months on injunction compliance by the Defendant Cities ("Cities") and the activities of the Court Monitor ("Monitor").

      This report will cover the period from November 1, 2021, to April 31, 2022, and include a current compliance status on all the Order requirements, identify any obstacles to the work of the Monitor and provide general observations (§ V.C. (40)).

## Injunction Compliance

## Policing Act Injunction

      The towns of Hildale, Utah, and Colorado City, Arizona, are currently in compliance with the Policing Act orders outlined in the Judgement and Decree Granting Injunctive Relief. The Court-appointed Police Consultant will provide a separate report to the Court outlining those compliance issues and any obstacles that may have arisen during this reporting period.

      Of particular note in the Police Consultant's report is the change over to the new computer-aided dispatch and report writing system.[1] Throughout this process, it has been the goal of the court monitors to ensure that transparency and accountability are built within this new system. As the Marshal's Office provides oversight to dispatch, our objective is to ensure

---

[1] Police Consultant Report, April 2022, p. 1.

that calls of service reports and dispatch data provide the necessary checks and balances to each other and prevent any inappropriate collusion in their reporting and ultimate accountability to the public. Once this system has been fully implemented, the officers adequately trained, and structural components put in place, the Police Consultant will oversee compliance.

The Police Consultant continues to audit records and reports, and although progress is being made, the Consultant has noted some critical data that continues to be missed. This data includes the personal and demographic information of the "complainants, involved parties, offenders and properties."[2] This information is crucial and will need to be corrected, especially as the Monitor implements community assessment measurements in the next phase of the Injunction.

Updates on the progress of these items will be provided to the Court in future Court Monitor reports.

## Fair Housing Act Injunction

The towns of Hildale, Utah, and Colorado City, Arizona, have completed all the specific orders as outlined in the Judgement and Decree, including, Approval of Subdivision Plat (§ 5C (2)), Adoption of Building Department Policies and Procedures (§ 5C (3)), amendments to water service regulations (sect. 5C(9)), culinary water impact fee (§ 5C (14)).

**Website and Public Notice**

The towns of Hildale, Utah, and Colorado City, Arizona, are obligated to maintain their website with necessary information as required under Section 5C (22). The Court Monitor regularly audits the website to ensure compliance with this requirement.

It was noted in the last Court Monitor Report[3] that both cities had undergone an overhaul of their website and that because of that, some agenda and meeting minutes had not been

---

[2] Police Consultant Report, April 2022, p. 1.
[3] November 2021 Monitoring Report for the cities of Colorado City, Arizona, and Hildale, Utah, November 2021, p. 4.

posted for public review. During the last six months, the cities have improved on their posting of meeting agendas and packets, and this does appear to be complete. However, meeting minutes still seem to be a concern. In Colorado City, the last council meeting minutes posted were on October 18, 2021, and the planning commission minutes were on May 3, 2021. In Hildale, the last meeting minutes posted for the city council and planning commission were on February 9, 2022. **The Monitor would request once again that the cities make the posting of meeting minutes a high and consistent priority. The public posting of meeting minutes increases the transparency of government decision-making and encourages community members to actively engage in the public process.**

**Mandatory Education & Training**

Two mandatory training events were required and conducted within the last reporting period. This training occurred on December 1, 2022, consisting of one hour of training on the Injunction and one hour on Fair Housing training. The Injunction training was conducted by Jeff Matura, counsel for Colorado City. The Fair Housing training was conducted by Cheri Horbacz, Southwest Fair Housing Council Director. Sixty-four employees of the required seventy-one positions were in attendance. The remaining positions were vacant at the time of the training. The cities are to be complimented for their efforts to encourage their employees to attend the required training. The next training on the Constitution will be on or around June 30, 2022.

**Monitor**

The Court Monitor has reviewed municipal decisions by the Defendant Cities implicating the Fair Housing Act and overseeing all aspects of this Injunction.[4] This has included attending all meetings of Colorado City and Hildale council meetings, planning commission meetings, and utility board meetings. In addition, the following noteworthy items occurred during the previous reporting period:

---

[4] Judgement and Decree Granting Injunctive Relief, § V (31)

Records Audit

An audit was performed on community utility records. These audits included verifying ownership signatures, completeness, appropriate language, consistent application of fees, and responsiveness. Of the records audited, there were no noted discrepancies.

An audit was similarly performed on building department records and permits. These audits included completeness, appropriate language, consistent application of fees, and responsiveness. Of the records audited, there were no noted discrepancies.

Ordinance and policy review and advice

The Court Monitor reviewed all modifications by the Defendant Cities on any ordinances, regulations, procedures, or policies affecting housing or related to housing provision of municipal services, including items related to zoning, planning, subdivision, building permits, and licenses, and utility service connections.[5] Specifically, during the last six months, the Monitor reviewed changes to Chapter 156 of the Colorado City Town Code and advised on the impact fee process, right-of-way encroachments, the Utility Intergovernmental Agreement, and water rights related to the Injunction. During the month of January, Injunction training was provided to two new Hildale council members as well as at the Hildale Council retreat. Upon request of the United Effort Plan (UEP), training on the Injunction was provided to new homeowners. Additionally, the Monitor provided information to the Department of Justice on the land-use process for the cities.

Complaints

Only one complaint was directed to the Monitor in the previous reporting period. Due to the claim of discrimination, the Monitor met with two individuals concerned about the annexation

---

[5] Judgement and Decree Granting Injunctive Relief, § V (31)(c).

4

process of the town of Hildale. After explaining the process to these individuals, they determined not to file any formal complaint with the Monitor or through the established procedure of the city. The Monitor provided a report to the town of Hildale on the outcome of this item.

### Public Involvement and Future Monitoring

In the November 1, 2021, Court Monitor Report, it was noted that the success of the Court Injunction would be determined not just by the *stability* of the local governments in providing fair, responsive, and equal protection for its citizens but also in ensuring that these rights are *sustainable* in the long-term.[6] This sustainability will come as the citizens learn their duties and rights and demand that their government is accountable and responsible in the administration of its duties. Moving forward, the work of the Injunction will include expanding outward in bringing the citizens to the table. Identified in the previous Court Monitor Report, this public process will consist of public outreach; clarity and training on due process rights; stakeholder engagement; public performance dashboard(s); and the implementation of a community effectiveness measurement instrument. It is felt that through these measures, the community will be better positioned to hold their own governments responsive and accountable in the future.

The first step in this process occurred in April 2022. The Court Monitor introduced the public to its new Facebook page Short Creek Court Monitor.[7] This social media site, along with future social media platforms, will be used to communicate the work of the Court Monitors and provide information and training to the community on their rights and obligations as citizens. Additionally, this site will provide a reporting mechanism for citizens who may still have lingering or current concerns with city response or behavior.

---

[6] November 2021 Monitoring Report for the cities of Colorado City, Arizona, and Hildale, Utah, November 2021, p. 7.

[7] https://www.facebook.com/Short-Creek-Court-Monitor-101545852533570

Accompanying the announcement of this social media site, the Court Monitor and Police Consultant held their first public open house. This open house occurred on April 19, 2022, at the Mohave Community College. The purpose of the open house was to provide education to the community on the Court Injunction, explain what progress has been made, and what direction the Injunction and community will be going in the future. The Monitor and Consultant were pleased with the in-person attendance of approximately 15-20 individuals, including city officials, the county attorney's office, UEP, and interested citizens. Because it has been socially taboo to participate in particular public gatherings, the Court Monitors recorded and live-streamed the open house presentation. Individuals inside and outside the community participated, including the Department of Justice from Washington D.C. What has been most satisfying to the Court Monitors is that the recorded open house presentation has been viewed 447 times on the social media site since that event. This presentation can be found at this [link].[8] It is anticipated that the Monitor will conduct an open house approximately every six months.

On the heels of this successful open house, the Monitor will be convening a stakeholder engagement meeting during June. This meeting will gather numerous entities within the community to discuss the area's future and their role in shaping that future. Individual concerns and shared goals will be discussed, along with identifying a path forward. More than anything, this step aims to give key groups and individuals who may have felt silenced in the past a voice at the table. The Court Monitor will facilitate the meeting and discussion but will let the stakeholders drive the conversation, goals, and objectives. It is anticipated that these meetings will be regularly scheduled over the next several years.

Currently, the town of Hildale City is reworking its city code. The timing of this corresponds well with the desire of the Court Monitor to strengthen and train the community on their due process rights associated with application processes. The due process codes

---

[8] https://www.facebook.com/watch/live/?ref=watch_permalink&v=3277029965904850

associated with utility disputes, land-use and building decisions, and other key Injunction items will not only be written correctly and without bias but will then be provided to the public in simple language and flow charts.  The public will not get lost in the weeds of complicated city code language but will readily find information on how they can seek redress for a decision or grievance on the cities' websites.

Improvements in language and communication of a citizen's due process rights will be accompanied by creating operational dashboards that can give citizens a quick view of how the governments are performing in those areas identified in the Injunction.  These areas would include such things as the turn-around time on the processing of land use and utility applications and other relevant community information.  This information will provide a basis by which citizens can hold accountable the operational efficiency and responsiveness of its government.

And finally, as the community has become more open and communicative about their condition and desires, the Court Monitor will establish an effective measurement instrument to gauge growth and improvement in community trust, participation, and roles throughout the remaining years of the Injunction.   This measurement instrument intends to provide insight into the effectiveness of the Injunction and continued areas of concern and provide an indicator to the community of their own growth and healing.

The restrictive impositions of the Injunction will continue to be aggressively overseen by the Monitor and adhered to by the cities.  The additional elements identified here simply and further embed the valued principles behind the Injunction mandates.  These next steps bring the sustained value intended by this Order to the communities for their lasting benefit and growth.

During the penalty phase of the trial in 2016, Judge Holland and the Court will remember the pleas from community members to give them a chance to collectively correct the mistakes of the past, find a way forward, continue to be a community-inclusive of all, and to heal.  These citizens willingly agreed to court oversight to hold them accountable for this request.  The Court Monitor has recognized from the very beginning that it won't necessarily be the Order or the

officers who will fix this community but rather the community itself.  Besides the guiding directives of the Injunction, the presence of the Court provides bounded space in which the work of courageous citizens can move forward as they undo the difficult knot of their past, establish sound guiding principles and policies, bind up their wounds, and heal.  The Court's work continues to give these community-minded individuals space to do the work that only they can do.  It is vital that the Court stand as a bastion against anything or anyone seeking to impede the good community work or to return to the past.

      The Monitor looks forward to the continued work with these communities in ensuring the bright future that many have so desperately hoped for.  The Monitor thanks the Court and the communities for their continued trust and ongoing cooperation.

**Communication**

This report is provided electronically to:

To plaintiff:

    Corey Sanders
    United States Department of Justice
    Civil Rights Division
    950 Pennsylvania Ave, N.W.
    Washington, DC 20053

To Colorado City:

    Jeffrey C. Matura
    Graif Barrett & Matura P.C.
    1850 North Central Avenue, Ste. 500
    Phoenix, AZ 85004

    Town Manager
    Colorado City
    PO Box 70
    Colorado City, AZ 86021

To Hildale City:

    Joseph Hood
    320 East Newel Ave
    P.O. Box 840490
    Hildale, UT 84784

    Mayor - Hildale City, Utah
    320 East Newel Ave
    PO Box 840490
    Hildale, UT 84784

DATED at Washington, Utah, this 1st day of May 2022.

*[signature]*

Roger Carter, DPA
Court Monitor