**UNITED STATES OF AMERICA vs. TOWN OF COLORADO CITY, ARIZONA, et al.**

**No. 3:12-cv-8123-HRH (Prescott Division)**

November 1, 2022

To: United States District Court for the District of Arizona

From: Roger Carter, Court Monitor

**Re: November 2022 Monitoring Report for the cities of Colorado City, Arizona, and Hildale, Utah.**

This Report is submitted in compliance with § V.C. (39) of the Judgement and Decree Granting Injunctive Relief ("Injunction"), requiring a written report every six months on injunction compliance by the Defendant Cities ("Cities" "Communities") and the activities of the Court Monitor ("Court Monitor").

This Report will cover the period from May 1, 2022, to October 31, 2022, and include a current compliance status on all the Injunction requirements, identify any obstacles to the Monitor's work and provide general observations. **As the communities have reached the halfway point of the Injunction, this Report will be slightly more comprehensive by reviewing the requirements of the Injunction and, where appropriate, providing more quantitative data of results.**

**Injunction Compliance**
**Policing Act Injunction**

**Compliance with the Policing Act**[1]

In consultation with and under the direction of the Police Consultant, the Colorado City Marshal's Office (CCMO) shall implement and adhere to new hiring policies and procedures, adopt and adhere to new policies and procedures for internal affairs investigations, obtain and properly deploy body-worn cameras, review all CCMO policies and update as needed, attend all

---

[1] United States of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief IV.

Injunction required trainings, and strengthen the relationship with the Washington County Sheriff's Office and Mohave County Sheriff.

**Status**

The towns of Hildale, Utah, and Colorado City, Arizona, are currently in compliance with the Policing Act orders outlined in the Injunction. The Court-appointed Police Consultant will provide a separate report to the Court outlining those compliance issues and any obstacles that may have arisen during this reporting period.

In addition to the items listed in the Injunction, the Court has approved the Police Consultant to audit records, dispatch reports, and camera footage to assist the CCMO in improving their documentation and report writing.[2] These audits are crucial to ensure accurate and transparent reporting and to determine the internal validity of the checks and balances between police dispatch and the officer's calls for service response. Because of the history of the community, the organizational relationship - common to most police/dispatch structures - requires heightened scrutiny in order to detect any collusive relationship. As it relates to these auditing duties, the Police Consultant reports,

> *Report writing continues to be a challenge in reference to consistency, completeness, and supplements, complainant, information, follow up/follow through, accuracy specifically with some of the codes that are used, nature (title of incident), disposition, involvements, and when or when not to write a long form report or short form. These topics will all be covered in the training requested of me by the Chief noted above. It is scheduled for November 8th. The new system is in place and this has undoubtedly impacted some of these areas as they get use to the new formats in the new system. The Chief has*

---

[2] United States of America v. Town of Colorado City, Arizona, et al. Order, Court Monitor and Police Consulting Report. May 2, 2022.

*communicated to me his commitment to getting these deficiencies addressed and corrected in a timely manner. I will be looking at the specific areas listed above moving forward and will be able to report in more specific detail the improvements and/or deficiencies as we continue to monitor this area. Accurate complete and consistent reporting is the key to transparency and the ability to give an accurate account of what the department is accomplishing and doing. Ultimately leading to better transparency, accountability and trust and confidence within the community.*

## Fair Housing Act Injunction

**Compliance with Approval of Subdivision Plat[3]**

Approval of the Subdivision Plat stipulates that the town of Colorado City was to work with UEP Trust in creating a final subdivision plat and file with the State of Arizona.

**Status**

The towns of Hildale, Utah, and Colorado City, Arizona, completed this Injunction requirement on September 27, 2017. **The Communities are in compliance with this requirement of the Injunction.**

**Compliance with Adoption of Building Department Policies and Procedures[4]**

Approval of Building Department Policies and Procedures stipulates that the communities are to develop objective, uniform, non-discriminatory policies and procedures per stipulations set out in the Injunction to govern the building department and its functions.

---

[3] United State of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief V. (2)
[4] United State of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief V. (3)

**Status**

The towns of Hildale, Utah, and Colorado City, Arizona, completed this Injunction requirement on August 16, 2017. **The Communities are in compliance with this requirement of the Injunction.**

**Compliance with Amendments to Water Service Regulations[5]**

Approval of Building Department Policies and Procedures stipulates that the Cities should repeal outdated water ordinances and create new ordinances in accordance with stipulations set out in the Injunction.

**Status**

The towns of Hildale, Utah, and Colorado City, Arizona, completed this Injunction requirement on September 12, 2017. **The Communities are in compliance with this requirement of the Injunction.**

**Compliance with Culinary Water Impact Fee[6]**

Culinary Water Impact Fee stipulates that the communities are to have an engineering firm confirm the validity of the "then" culinary water impact fee. This requirement also mandated that any future change to the culinary water impact fee would require approval by the United States and the Court Monitor.

**Status**

The towns of Hildale, Utah, and Colorado City, Arizona, completed this Injunction requirement on February 13, 2018. **The communities are currently revising their culinary water impact fee. This has initiated a review by the United States and the Court Monitor.**

---

[5] United State of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief V. (9)
[6] United State of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief V. (14)

**This new impact fee should be implemented within the next six months. The Communities are in compliance with this requirement of the Injunction.**

**Compliance with Websites and Public Notice[7]**

Websites and public notice stipulate that the communities should post on their website the following information:

- A. Contact information for every elected, appointed, and department official
- B. Notice all upcoming meeting agenda(s) for councils, commissions, and utility boards. Furthermore, all minutes should be posted once adopted.
- C. Web links to applications for building permits, utility connections or transfers, subdivision applications, and public records requests.
- D. Web link to all ordinances, regulations, procedures, and policies, including building department.
- E. Web link to Marshall Office's policies and procedures.
- F. Injunction language and contact information for the Court Monitor.

**Status**

Over the past year, the communities have both revised and updated their websites. These websites, while significantly improved, still need to be improved. For ease of understanding, the tables below note both the community's current web page compliance status as well as the previous two years.

Colorado City has made significant progress in posting its meeting minutes. Areas that need to be completed and will need some attention within the next six months include the contact information for the planning commission and links to the CCMO policies and procedures.

---

[7] United State of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief V. (22)

The Hildale City website still needs to be completed in posting their minutes, as well as adding links to the CCMOpolicies and procedures.

**These deficiencies place the communities currently out of compliance with this order.**

| Colorado City Website Compliance | | | | |
|---|---|---|---|---|
| Metric | May 1, 2021 | November 1, 2021 | May 1, 2022 | November 1, 2022 |
| Contact information | X | X | X | Incomplete |
| Meetings posted | Incomplete | X | X | X |
| Minutes available | Incomplete | Incomplete | Incomplete | X |
| Applications | X | X | X | X |
| Ordinances/Policies | X | X | X | X |
| Police policies | Incomplete | X | X | Incomplete |
| Injunction language | X | X | X | X |

| Hildale Website Compliance | | | | |
|---|---|---|---|---|
| Metric | May 1, 2021 | November 1, 2021 | May 1, 2022 | November 1, 2022 |
| Contact information | X | X | X | X |
| Meetings posted | Incomplete | X | X | X |
| Minutes available | Incomplete | Incomplete | Incomplete | Incomplete |
| Applications | X | X | X | X |
| Ordinances/Policies | X | X | X | X |
| Police policies | Incomplete | X | X | Incomplete |
| Injunction language | X | X | X | X |

**Compliance with Mandatory Education & Training[8]**

Mandatory education and training stipulate that the communities are to provide elected, appointed and key personnel with annual training on the U.S. Constitution, the Fair Housing Act, and the orders found within this Injunction.

**Status**

The towns of Hildale, Utah, and Colorado City, Arizona, completed their Constitution Training on July 19, 2022. The Washington County Attorney's Office provided this training. Attendance and historical data from the previous two trainings are noted in the following table. Training on the Injunction and fair housing is scheduled for November 17, 2022. The Department of Justice will be in attendance at the meeting in November. **The towns currently find themselves in compliance with this requirement.**

| | Constitutional Training | | |
|---|---|---|---|
| Metric | June 22, 2020 | June 30, 2021 | July 19, 2022 |
| In-person training | 61 (video-COVID) | 55 | 55 |
| Positions vacant | - | 3 | 2 |
| Follow-up training | - | 8 | 10 |
| Total Trained | 61 | 66 | 67 |

**Compliance with Monitoring Duties[9]**

Monitoring duties stipulate the following responsibilities:

A. Conduct regular site visits, interviewing city officials and documents necessary to complete their assignment.

---

[8] United State of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief V. (24)

[9] United State of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief V. (29)

B. Review the handling of all applications or requests associated with utilities, permits, subdivisions, and other land-use applications.

C. Review all modifications to any ordinance, regulation, procedure, or policy affecting housing, zoning, planning, subdivision, building permits, licenses, rental taxes, and utility services and connections.

D. Review all complaints by residents or others associated with any of the above-noted items.

E. Review any changes proposed by the cities to building department policies, water service regulations, or culinary impact fees.

F. Monitor defendant cities' services, operations, and facilities associated with housing, utility services, building permits, subdivisions, land use, planning provisions, and police services related to any of the above.

G. Monitor councils, commissions, boards, committees, and departments for compliance with the Injunction items.

**Status**

During the previous six-month period, the Court Monitor performed the following oversight activities in accordance with the Injunction. The following table identifies the number of activities the Monitor has participated in for the previous two years.

| Monitoring Activities | | | | |
|---|---|---|---|---|
| **Metric** | **May 1, 2021** | **November 1, 2021** | **May 1, 2022** | **November 1, 2022** |
| **Public official engagements*** | 75 | 67 | 65 | 73 |
| **Application audits** | 13 | 12 | 10 | 12 |
| **Ordinance/Policy changes** | 1 | 3 | 2 | 3 |
| **Complaints** | 5 | 4 | 1 | 3 |
| **Operational review** | 19 | 25 | 16 | 18 |
| **Other monitor engagements** | 5 | 4 | 5 | 12 |
| **Meetings attended** | 35 | 28 | 25 | 24 |

*-This figure represents a cumulative total of all other monitoring activities.

A. **Public Official Engagements:** Court Monitor regularly attends meetings, visits city officials, reviews documents, or conducts business in or with these communities. This data represents the number of engagements involving audits, ordinance/policy changes, complaints, operational reviews, other monitoring efforts, and meetings attended.

B. **Application Audits:** An audit of a random sample of utility and building department applications is conducted regularly. These audits verify compliance with the orders of the Injunction. Although these audits include on-site visits, the Court Monitor also has administrative access to the city's online building permit and inspection program. This access allows the Monitor to review applications in real-time status. During this auditing period, no substantive deficiencies were identified in the records that were not reconciled with additional documentation. **Because of the transparency and auditing capability**

9

**of this online program, the Court Monitor is recommending that this system be used for all zoning and land use processes and approvals.**

C. **Ordinance/Policy Change:** Three significant ordinance or policy changes were reviewed during this reporting period.

   a. The communities revised their Intergovernmental Agreements (IGA) for utilities and the Marshal's Office. These agreements were reviewed for non-discriminatory language. Language modifications were recommended on the Utility IGA. The Department of Justice was also provided a copy of the Utility IGA for their input.

   b. The Court Monitor engaged in discussions between the city of Hildale and the UEP Trust regarding water rights. At the parties' request, the Monitor discussed ownership and transfer of these rights and how to ensure fair and non-discriminatory use of those rights.

   c. The communities recently approved a new "Water Capital Facilities Plan" in anticipation of a revised culinary water impact fee. The Monitor has received the "Hildale City and Town of Colorado City Culinary Water Impact Fee Facilities Plan, September 2022." The Monitor reviewed this document and recently provided a letter to the communities asking some clarifying questions. The Department of Justice will receive a copy of this plan for their review and input.

D. **Complaints:** Three complaints were received by citizens during this reporting period.

   a. A complaint was received from an applicant for a building permit who felt that the city had unduly delayed the approval of his permit. Although the complainant felt discriminated against, they could neither provide the name of a government or behavior that would support this claim. In reviewing the complaint, the Monitor detected no act of discrimination but did admonish Hildale City in the timeliness of their land use reviews, thereby keeping them compliant with the "timely

    response" clause of the Injunction.[10] The complaint was resolved with the issuance of the permit.

    b. A complaint was received by a member of the community regarding an agency, not within the jurisdictional oversight of the Monitor or the Injunction. The Monitor followed up on the complaint and clarified this with the complainant.

    c. Research was provided to the communities on the number and nature of previous complaints by citizens. This was requested so the cities could respond to a "request for information" from the Department of Justice.

**E. Operational Review:** This category refers to engagements between the Monitor and town officials or staff, the Department of Justice, the Marshal's office, the Police Consultant, other governmental agencies, and community organizations related to the Injunction or the role of the Monitor. During this past reporting period, the Court Monitor interacted with each of these agencies.

**F. Other Monitor Engagements:** This category refers to engagements not identified within the previous categories. Many of the engagements in this category include the Court Officers Open House and Stakeholder Engagement Meeting, which is discussed later in the Report.

**G. Meetings Attended:** These include city council meetings, planning commission meetings, utility board meetings, mandated trainings, and other meetings outlined within the Injunction.

**Public Involvement and Future Monitoring**

---

[10] United States of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief V. C.(4)(d)

11

**Community Status**

There have been several changes that the Court should be aware of that have occurred during this reporting period. These changes provide context to the environment and circumstances in which the Injunction continues to function.

In August, a primary election was held for the Colorado City Council. Four of the council seats were on the ballot. Two of the four incumbents chose not to re-run for their council seat. Due to the size of the community, Arizona law allows any candidate who receives more than fifty percent (50%) of the primary vote to be "deemed" elected, and not have to run in the general election. The primary vote returns gave four candidates a majority of votes, making them "deemed" and a general election unnecessary. This is the most significant changeover of council seats since imposition of the Injunction. Several members of the current city council, who have been on the council since the discrimination trial, either chose not to re-run for office or were defeated.

Additionally, in July, Mayor Joseph Allred resigned as Mayor of Colorado City. Mayor Allred was mayor of the community for many years and was a prominent figure in the discrimination trial in 2016.

These two events could change the political landscape and climate for the foreseeable future. The Court Monitor will work closely with the newly elected officials so that they understand the purpose of the Injunction, the progress that has been made, and the work left to accomplish. The court officers look forward to working with these new community representatives.

There have also been some renewed activity and communication from the Warren Jeff's family to members of the FLDS Church, encouraging renewed commitment to Mr. Jeffs and his teachings. Additionally, a raid was carried out by the Federal Bureau of Investigation on the home of the leader of a splinter group of the FLDS Church. Federal Agents were determining

12

the extent to which under-aged marriages were being performed and/or any interstate transportation of minors.

**Monitor Status**

In the May 1, 2022, Court Monitor Report, the Monitor identified several community engagements that would be taking place over this reporting period. The Court will recall that these activities were highlighted as being instrumental in empowering citizens in their own efforts to hold their local governments accountable. A knowledgeable and empowered citizenry will ultimately ensure the stability and sustainability of its government.

In April 2022, the court officers held their first public open house. This event was very successful and resulted in over 498 unique views of the online event, which included a review of the Court Injunction, what has been accomplished in the community, and where we are going.

On the heels of this event, the Court Monitor, along with the Police Consultant, held the first Stakeholder Engagement Meeting in July. This event gathered stakeholders from the community and placed them in a collaborative environment to discuss their collective vision of the future and their role in designing that future. In addition, these group members were provided opportunities to view the community from other's perspectives. This meeting consisted of groups that have historically had strained relationships and avoided interaction. This visioning process was successful and resulted in group members wanting to meet again next quarter. This Stakeholder Engagement meeting is scheduled for November 10. Comments from the meeting included expressions of appreciation for the willingness of the court officers to create an environment that would have been difficult to convene otherwise. In the near future and at the appropriate time, the Court Monitor will turn over the coordination and initiative to conduct these meetings to community members, hoping they continue to build and strengthen important relationships within the community. As mentioned, these two initiatives will be continued during the upcoming reporting period.

Additional work in the upcoming reporting period will include the Court Monitor working with the communities in establishing or clarifying the appeal process for citizens who may feel aggrieved due to government decisions, such as building, land-use, and utility decisions. As the citizens are provided with these appeal opportunities, their confidence in the rule of law and government decisions will be strengthened.

Also, during this reporting period, the Court Monitor will assist the communities in creating quantifiable and understandable data dashboards. These dashboards will provide both community indicators of compliance with the injunction, as well as greater clarity on government responsiveness and effectiveness.

The Court Monitor is constantly looking for independent measures of growth and progress within the community. One of the measures recently developed by a collective group of community stakeholders includes the Rapid Assessment, Response and Evaluation Report (RARE Report). This RARE Report not only provides important and changing demographic information but also looks at such indicators as the level of volunteer participation, community perception and hopes, and those things that community members feel are needed to grow. These indicators have many community and governmental trust elements embedded in the data. The Court Monitor will work with the administering group to isolate governmental trust data, establish a baseline, and observe these results over the remaining years of the Injunction. The Court Monitor feels that the information provided from this would be of keen interest to the Court and the remaining work of the Court's efforts.

As a final note to this Report, the court officers are excited to have representatives from the Department of Justice visit these communities. This site visit will take place during the week of November 14. The court officers have appreciated the relationship and support we have received from the DOJ and look forward to this time when more context can be provided to the work being done.

As always, the Court Monitor looks forward to the continued work with these communities in ensuring the bright future that many have so desperately hoped for. The Monitor thanks the Court and the communities for their continued trust and ongoing cooperation.

This report is provided electronically to:

To plaintiff:

    Corey Sanders
    United States Department of Justice
    Civil Rights Division
    950 Pennsylvania Ave, N.W.
    Washington, DC 20053

To Colorado City:

    Jeffrey C. Matura
    Graif Barrett & Matura P.C.
    1850 North Central Avenue, Ste. 500
    Phoenix, AZ 85004

    Town Manager
    Colorado City
    PO Box 70
    Colorado City, AZ 86021

To Hildale City:

    Shawn Guzman
    320 East Newel Ave
    P.O. Box 840490
    Hildale, UT 84784

    Mayor - Hildale City, Utah
    320 East Newel Ave
    PO Box 840490
    Hildale, UT 84784

DATED at Washington, Utah, this 1st day of November 2022.

_____

Roger Carter, DPA
Court Monitor