**UNITED STATES OF AMERICA vs. TOWN OF COLORADO CITY, ARIZONA, et al.**

**No. 3:12-cv-8123-HRH (Prescott Division)**

May 1, 2024

To: United States District Court for the District of Arizona

From: Roger Carter, Court Monitor

**Re: May 2024 Monitoring Report for the Cities of Colorado City, Arizona, and Hildale, Utah.**

This report is submitted in compliance with § V.C. (39) of the Judgement and Decree Granting Injunctive Relief ("Order" "Court Order"), requiring a written report every six months on injunction compliance by the Defendant Cities ("Cities" "Communities") and the activities of the Court Monitor ("Court Monitor" "Monitor").

This report will cover the period from November 1, 2023, to April 30, 2024. It will include a current compliance status on all the Order requirements, identify any obstacles to the Monitor's work, and provide general observations.

## Injunction Compliance

## Policing Act Injunction

**Compliance with the Policing Act[1]**

In consultation with and under the direction of the Police Consultant, the Colorado City Police Department (identified as CCMO in the Order, and hereafter in this document referred to as CCPD) shall implement and adhere to new hiring policies and procedures, adopt and adhere to new policies and procedures for internal affairs investigations, obtain and properly deploy bod-worn cameras, review all CCMO (CCPD) policies and update as needed, attend all Injunction

---

[1] United States of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief IV.

1

required trainings, and strengthen the relationship with the Washington County Sheriff's Office and Mohave County Sheriff.

**Status**

The towns of Hildale, Utah, and Colorado City, Arizona, are currently in compliance with the Policing Act orders outlined in the Injunction. The Court-appointed Police Consultant will provide a separate report to the Court outlining those compliance issues and any obstacles that may have arisen during this reporting period. Additionally, The Police Consultant continues to assist the Monitor in auditing police records, dispatch reports, and camera footage.[2] This service has proved invaluable in not only providing strong oversight by the courts but also assisting the CCPD in improving their own accountability and highlighting areas of continued training and improvement. The Police Consultant provides the following summary of progress.

> *"The Chief continues to work on and enhance the department's relationships/partnerships with outside state, local, and federal agencies through combined training and other opportunities where they are able to work together. The CCPD also continues to develop and enhance the relationships/partnerships and services they provide these communities. The trust, confidence, and transparency continue to grow in the above-listed areas from these efforts. The consultant continues to work with the Chief and Department staff on report writing being complete, accurate, and consistent with codes etc. This is all in an effort to enhance the completeness and accuracy of the overall service/product provided to the community members. The CCPD continues to enjoy being fully staffed at this point. The City Manager is continuing the efforts and process for CCPD to be part of the Arizona retirement system, which will provide this critical benefit to the employees and help attract future Officers." (sic).*

**Fair Housing Act Injunction**

---

[2] United States of America v. Town of Colorado City, Arizona, et al. Order, Court Monitor, and Police Consulting Report. May 2, 2022.

**Compliance with Approval of Subdivision Plat[3]**

Approval of Subdivision Plat stipulates that the town of Colorado City was to work with UEP Trust to create a final subdivision plat and file it with the State of Arizona.

**Status**

The towns of Hildale, Utah, and Colorado City, Arizona, completed this requirement of the Injunction on September 27, 2017. **The Communities are in compliance with this requirement of the Injunction.**

**Compliance with the Adoption of Building Department Policies and Procedures[4]**

Approval of Building Department Policies and Procedures stipulates that the communities are to develop objective, uniform, non-discriminatory policies and procedures per stipulations set out in the Injunction to govern the building department and its functions.

**Status**

The towns of Hildale, Utah, and Colorado City, Arizona, completed this requirement of the Injunction on August 16, 2017. **The Communities are in compliance with this requirement of the Injunction.**

**Compliance with Amendments to Water Service Regulations[5]**

Approval of Building Department Policies and Procedures stipulates that the Cities should repeal outdated water ordinances and create new ordinances in accordance with stipulations set out in the Injunction.

**Status**

---

[3] United States of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief V. (2)
[4] United States of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief V. (3)
[5] United States of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief V. (9)

The towns of Hildale, Utah, and Colorado City, Arizona, completed this requirement of the Injunction on September 12, 2017. **The Communities are in compliance with this requirement of the Injunction.**

**Compliance with Culinary Water Impact Fee[6]**

The Culinary Water Impact Fee stipulates that the communities must have an engineering firm confirm the validity of the "then" culinary water impact fee. This requirement also mandates that any future change to the fee would require approval by the United States and the Court Monitor.

**Status**

In the previous monitoring report, dated November 1st, 2023, the court monitor noted that the towns of Hildale, Utah, and Colorado City, Arizona, had not fulfilled the requirements for completing their culinary impact fee study within the 5-year period stipulated by both the Injunction and Arizona State law. Since that report, the Monitor, in coordination with the Communities and the Court, has developed a revised adoption schedule.[7] The Court accepted this revised schedule on February 6, 2024.[8] This new schedule required the communities to complete, by the end of April, the impact fee analysis, engage in legislative deliberation, and provide public hearings for the new culinary water impact fee.

On April 15, The Colorado City Council adopted the revised impact fee schedule and rate. On April 10, the Hilldale city council adopted the revised impact fee schedule and rate. Because of the necessary waiting period before implementation, as established by each state

---

[6] United States of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief V. (14)
[7] Docket No. 1221
[8] Docket No. 1222

statute, Hildale's impact fee will go into effect on July 10, 2024. Colorado City's new impact fee will go into effect on June 28, 2024.

**Both communities' adoption of this new culinary water impact analysis and fee schedule now puts them in compliance with the Injunction's requirement.**

Compliance with Websites and Public Notice[9]

Websites and public notice stipulate that the communities should post on their website the following information:

A. Contact information for every elected, appointed, and department official

B. Notice of all upcoming meeting agenda(s) for councils, commissions, and utility board. Furthermore, all minutes are to be posted once adopted.

C. Web links to applications for building permits, utility connections or transfers, subdivision applications, and public records requests.

D. Web link to all ordinances, regulations, procedures, and policies, including building department.

E. Web link to Marshall Office's policies and procedures.

F. Injunction language and contact information for the Court Monitor.

**Status**

**The Cities are currently in compliance with the Order's requirements for their websites and public notices.** The Monitor encourages the cities to stay vigilant in posting meeting minutes to comply with the Order and satisfy state law requirements.

---

[9] United States of America v. Town of Colorado City, Arizona, et al. Judgment and Decree Granting Injunctive Relief, V. C. (22)

5

| Colorado City Website Compliance | | | | |
|---|---|---|---|---|
| Metric | November 1, 2022 | May 1, 2023 | November 1, 2023 | May 1, 2024 |
| Contact information | Incomplete | Incomplete | X | X |
| Meetings posted | X | X | X | X |
| Minutes available | X | Incomplete | X | X |
| Applications | X | X | X | X |
| Ordinances/Policies | X | X | X | X |
| Police policies | Incomplete | X | X | X |
| Injunction language | X | X | X | X |

| Hildale Website Compliance | | | | |
|---|---|---|---|---|
| Metric | November 1, 2022 | May 1, 2023 | November 1, 2023 | May 1, 2024 |
| Contact information | X | X | X | X |
| Meetings posted | X | X | X | X |
| Minutes available | Incomplete | Incomplete | X | X |
| Applications | X | X | X | X |
| Ordinances/Policies | X | X | X | X |
| Police policies | Incomplete | Incomplete | X | X |
| Injunction language | X | X | X | X |

**Compliance with Mandatory Education & Training[10]**

Mandatory education and training stipulates that the communities are to provide elected, appointed, and key personnel with annual training on the U.S. Constitution, the Fair Housing Act, and the orders found within this Injunction.

**Status**

---

[10] United States of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief V. (24)

In December, the towns of Hildale, Utah, and Colorado City, Arizona, completed the final training needed during this reporting period. Fair Housing Training was conducted by the Southwest Fair Housing Council. Attendance and historical data from previous trainings are noted in the following table. Constitutional training is scheduled for June and will be reported in the November 2024 Monitor Report. **The towns currently find themselves in compliance with this requirement.**

| Fair Housing Training | | | |
|---|---|---|---|
| **Metric** | **December 1, 2021** | **November 17, 2022** | **December 7, 2023** |
| **In-person training** | 63 | 56 | 65 |
| **Positions vacant** | 5 | 11 | 0 |
| **Follow-up training** | 4 | 10 | 8 |
| **Total Trained** | 68 | 67 | 73 |

| Injunction Training | | | |
|---|---|---|---|
| **Date** | **December 1, 2021** | **November 17, 2022** | **October 2023** |
| **In-person training** | 63 | 56 | 53 |
| **Positions vacant** | 5 | 11 | 5 |
| **Follow-up training** | 4 | 10 | 18 |
| **Total Trained** | 68 | 66 | 71 |

| Constitutional Training | | | |
|---|---|---|---|
| Metric | June 30, 2021 | July 19, 2022 | July 18, 2023 |
| In-person training | 55 | 55 | 51 |
| Positions vacant | 3 | 2 | 5 |
| Follow-up training | 8 | 10 | 22 |
| Total Trained | 66 | 67 | 72 |

**Compliance with Monitoring Duties[11]**

Monitoring duties stipulate the following responsibilities:

A. Conduct regular site visits, interviewing city officials and documents necessary to carry out their assignment.

B. Review the handling of all applications or requests associated with utilities, permits, subdivisions, and other land-use applications.

C. Review all modifications to any ordinance, regulation, procedure, or policy affecting housing, zoning, planning, subdivision, building permits, licenses, rental taxes, and utility services and connections.

D. Review all complaints by residents or others associated with any of the above-noted items.

E. Review any changes proposed by the cities to building department policies, water service regulations, or culinary impact fees.

F. Monitor defendant cities' services, operations, and facilities associated with housing, utility services, building permits, subdivisions, land-use and planning provisions, and police services related to any of the above.

---

[11] United States of America v. Town of Colorado City, Arizona, et al. Judgement and Decree Granting Injunctive Relief V. (29)

G. Monitor councils, commissions, boards, committees, and departments for compliance with the Injunction items.

**Status**

During the previous six months, the Court Monitor performed the following oversight in accordance with the Injunction. The following table identifies the number of activities the Monitor participated in for the previous two years.

| Monitoring Activities | | | | |
|---|---|---|---|---|
| **Metric** | **November 1, 2022** | **May 1, 2023** | **November 1, 2023** | **May 1, 2024** |
| **Public official engagements*** | 73 | 62 | 78 | 62 |
| **Application audits** | 12 | 10 | 13 | 9 |
| **Ordinance/Policy changes** | 3 | 5 | 2 | 4 |
| **Complaints** | 3 | 2 | 3 | 3 |
| **Operational review** | 18 | 12 | 17 | 13 |
| **Other monitor engagements** | 12 | 4 | 18 | 4 |
| **Meetings attended** | 24 | 29 | 25 | 29 |

*-This figure represents a cumulative total of all other monitoring activities.

A. **Public Official Engagements:** The Court Monitor regularly attends meetings, visits with city officials, reviews documents, and conducts business in or with these communities. This data represents the number of engagements involving audits, ordinance/policy changes, complaints, operational reviews, other monitoring efforts, and meetings attended.

B. **Application Audits:** A random sample of utility and building department audits is conducted regularly. Both sets of audits include on-site visits, but the Court Monitor has administrative access to the city's building permit and inspection program through their

program "City Inspect." This allows the Monitor to review applications in real-time status. Any deficiencies identified within the records audits have not been substantive and have been rectified with additional documentation. Although the cities still need to fully implement software for zoning and land-use applications, this remains a priority.

C. **Ordinance/Policy Change:** Three significant ordinance/policy changes/development agreements were reviewed during this reporting period.

   a. The Monitor worked with the communities on the culinary water impact ordinance.

   b. The Monitor reviewed the proposed water rate study.

   c. The Monitor reviewed proposed zoning language and land-use process compliance.

D. **Complaints:** Three complaints were received by citizens or staff during this reporting period.

   a. In the previous monitoring report, it was noted that several employees filed a complaint regarding disparate treatment by Colorado City's Human Resource Department. **Although the case has not fully concluded, there is no showing of disparate employee treatment.** Through the investigation, the Monitor identified several human resource mistakes and errors. However, these mistakes are not directed at any particular protected class of individuals. The Monitor is preparing his final report to present to the City, identifying areas of improvement to avoid future concerns or complaints. This report will be completed by July.

   b. A citizen complained about unfair treatment and targeting by the Colorado City Police Department. The complainant was involved in a domestic dispute and

claimed that the police officers were harassing and inappropriately exercising their authority against him. The Monitor reviewed video evidence presented by the complainant. Furthermore, the Monitor asked the Police Consultant to review police department reports and bodycam footage of the incidents. **There was no indication from any of the evidence provided to substantiate any of the citizen's claims.**

   c. The Monitor received a series of complaints by several employees complaining that a town official was behaving in a harassing and discriminatory manner against them and their families. **This investigation is currently ongoing.**

E. **Operational Review:** This category refers to engagements between the Monitor and town officials or staff, the Department of Justice, the Police Department, the Police Consultant, other governmental agencies, and community organizations. During this past reporting period, the Court Monitor interacted with many, if not all, of these agencies.

F. **Other Monitor Engagements:** This category refers to engagements not identified in previous categories.

G. **Meetings Attended:** These include city council meetings, planning commission meetings, utility board meetings, mandated training, and other meetings outlined within the Injunction.

## Community Snapshot

Having provided a report on compliance with the injunction orders, the Monitor offers the following snapshot of the areas of needed effort and community progress.

**Sustainment Period**

The Court Order governing the towns of Colorado City and Hildale had two distinct periods directing how the Communities were to perform for the Court. In the first two years, the Court ordered concrete actions to be taken by the towns. These communities were required to "attain" identified outcomes by specific dates. These outcomes included changes to their policies, practices, and governance. This portion of the Order could be referred to as the "attainment" period.

The second period required the Communities to "sustain" compliance with what was ordered in their attainment period. This period could be referred to as the "sustainment" period. This sustainment period constitutes the remaining years of the Court Order. This sustainment period is equally as important as the initial Court requirements. Its purpose is to demonstrate that the Town can correct and sustain the desired outcomes, thereby providing confidence to the Court that permanent changes can be expected in the future.

At times, this may not be fully understood by the communities, creating frustration as to why the Injunction continues to be necessary. The Monitor would note that the slow prod of the sustainment period has produced some of the most significant community benefits. These years of sustainment have allowed these communities to apply the principles of fair housing, appropriate policing activities, and Constitutionally protected rights and privileges to its citizens. Governing is never easy and is even more complicated as communities, such as Hildale and Colorado City, govern themselves out of the challenges of the past. The Monitor notes two specific examples from the last reporting period that demonstrate this fact.

**Employee Concerns**

In the last two reporting periods, the monitor noted his engagement in several complaints filed by government employees. Although some of these investigations continue, one noteworthy element of these complaints is that for the first time, employees of these organizations have felt both empowered and protected in publicly expressing concerns or disagreements with town officials. Historically, city employees, as well as citizens, were not allowed to openly or even privately express their disagreement with their employer or government without the fear of some form of reprisal. The Monitor is pleased with the growing confidence in the right of free expression being demonstrated within the government organizations and community. The Court Injunction has provided the protective cocoon necessary to ensure that protected rights are not violated, resulting in citizens growing confidence in their representative power and voice.

**Community Growth**

One of the most visible demonstrations of the progress of the community is in its residential and commercial growth. Historically, Hildale and Colorado City chose a policy of isolation. They discouraged their citizens from interacting with the outside world and made efforts to inhibit outside engagement in their community. However, the most recent town officials have taken a different approach to how they want their community to be viewed by others. Both towns have actively engaged with their regional and state governments. These towns are making an effort to create an image that is welcoming to old and new residents alike. They are also developing policies and strategies to attract business and outside investment into the area. This new approach to outreach is best summed up in the new Hildale Town slogan, "Welcome home!" Colorado City has also adopted a new logo and slogan, which includes the guiding principles of "customer service, equality, family, friendly, happiness, health, honesty,

moral standards, peace, prosperity, respect, and a safe environment." The towns are working hard to keep the narrative of the past from defining their future.

**Stakeholder Engagement Meetings**

The Court will remember that a series of stakeholder engagement meetings were conducted some time ago. After about a year's hiatus of such gatherings, the Monitor has been asked-including by town officials, to engage again in these events. It is the Monitor's feelings that the towns are working hard to unify the stratified community cultures. These officials and citizens are looking at the Court's continued presence as a way to keep the community focused on having as strong a community as possible for the time when court oversight will be complete.

**Conclusion**

The Court Monitor encourages the towns to stay vigilant in all aspects of the Injunction and not take for granted the seemingly simple requirements of its oversight. Through this diligent committed effort, town leaders will exemplify trustworthiness in their leadership responsibilities. Being trustworthy gives citizens a foundation to grant trust to those representative leaders. Through this process, the community will be strengthened, grow, and prosper in the ways many have hoped for.

As always, the Court Monitor looks forward to the continued work with these communities to ensure their bright future. The Monitor thanks the Court and the communities for their continued trust and ongoing cooperation.

This report is provided electronically to:

To plaintiff:

    Corey Sanders
    United States Department of Justice
    Civil Rights Division
    950 Pennsylvania Ave, N.W.
    Washington, DC 20053

To Colorado City:

    Jeffrey C. Matura
    Graif Barrett & Matura P.C.
    1850 North Central Avenue, Ste. 500
    Phoenix, AZ 85004

    Town Manager
    Colorado City
    PO Box 70
    Colorado City, AZ 86021

To Hildale City:

    Shawn Guzman
    320 East Newel Ave
    P.O. Box 840490
    Hildale, UT 84784

    Mayor - Hildale City, Utah
    320 East Newel Ave
    PO Box 840490
    Hildale, UT 84784

DATED at Washington, Utah, this 1st day of May 2024.

_____

Roger Carter, DPA
Court Monitor